UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE INSURANCE COMPANY OF THE STATE :
OF PENNSYLVANIA, :
: 1:12-cv-06494-DLC
                Plaintiff, :
:
vs. :
:
ARGONAUT INSURANCE COMPANY, :
:
                Defendant. :
:
------------------------------------------------------------x

## DECLARATION OF PATRICK DICAPRIO IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Patrick DiCaprio, submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am a Senior Claims Examiner with American International Group, Inc. ("AIG"), the ultimate parent company of Plaintiff The Insurance Company of the State of Pennsylvania ("ICSOP"). During the period of 2007 to 2011, I was the individual with primary responsibility for handling the asbestos claims tendered to ICSOP by Kaiser Cement and Gypsum Corporation ("Kaiser") which are the subject of this reinsurance coverage action.

2. The information set forth in this affidavit in support of Plaintiff's Motion for Partial Summary Judgment is based upon personal knowledge and/or a review of the files in my possession.

3. Plaintiff ICSOP is a Pennsylvania insurance company that maintains its principal place of business at 175 Water Street, 18th Floor, New York, New York, 10038. ICSOP is an affiliate of the American International Group.

4. Defendant Argonaut is an Illinois insurance company that maintains its principal place of business at 10101 Reunion Place, Suite 500, San Antonio, Texas, 78216.

5. Truck Insurance Exchange ("Truck") provided comprehensive general liability insurance to Kaiser through a primary insurance policy incepting on January 1, 1974, and with limits of $500,000 per occurrence and no aggregate limit (the "1974 Truck Policy").

6. ICSOP—through the California office of its underwriting manager CV Starr—issued an excess umbrella policy to Kaiser bearing policy no. 4174-5841 (the "Excess Policy"), incepting on January 1, 1974. The Excess Policy attached immediately above the 1974 Truck Policy.

7. CV Starr, as ICSOP's underwriting manager, had the authority to bind risks on ICSOP paper out of its California office without any further authorization from ICSOP personnel, and did so when issuing the Excess Policy.

8. The Excess Policy provides coverage of $5,000,000 per occurrence excess of the 1974 Truck Policy with no general aggregate limit.

9. By 2001, Truck notified ICSOP and other excess carriers that its primary limits were exhausted, and brought an action against Kaiser in California state court seeking a declaration that it owed no further obligation to provide coverage for Kaiser's asbestos claims under its primary policies.

10. In 2002, Kaiser filed a cross-complaint asserting counter claims against its excess insurers—including ICSOP and certain London market insurers (the "London Market Insurers")—seeking a declaration that the excess insurers were obligated to defend and indemnify Kaiser for the asbestos bodily injury claims once primary coverage was exhausted.

11. In 2005, the trial court issued a ruling adopting the "underlying cause test"

...
...
...

as the proper method for determining the number of occurrences under the Truck primary policies, and finding that the asbestos bodily injuries for which Kaiser is legally liable did not, as a matter of law, arise from a single occurrence.

12. In 2006, upon its own motion for reconsideration, the trial court reversed itself and found that Truck and Kaiser had intended to treat all asbestos bodily injury claims as a single occurrence under the policies.

13. The excess insurers appealed, and, in 2007, the Court of Appeal, Second District, reversed the trial court, finding that the plain language of the policies did not support the conclusion that Kaiser's design, manufacture, and distribution of asbestos products was an "occurrence," but rather the relevant "occurrence" was injurious exposure to asbestos products.

14. Following the 2007 appellate decision, Truck moved for a determination of the number of "occurrences" at issue and, in January 2008, the trial court found that for purposes of further proceedings in the case, each asbestos bodily injury claim shall be deemed to have been caused by a separate and distinct occurrence within the meaning of the Truck policies.

15. Pursuant to California precedent allowing an insured to target a single year of primary coverage within the exposure period to pay "all sums" due to a continuous injury claim such as asbestos, Kaiser selected the 1974 policy year, and, therefore, targeted the 1974 Truck Policy (which had no applicable aggregate limit).

16. Kaiser then moved for an order declaring that, if an asbestos bodily injury claim alleged against Kaiser involves exposure during the 1974 Truck Policy period, and Kaiser selects that year to respond, then the Excess Policy—and, if necessary, any excess policies directly above it—become liable for that claim once Truck has paid and exhausted its $500,000 per-occurrence limit for that claim, and Kaiser has paid its deductible.

17. ICSOP opposed Kaiser's motion, arguing that, under principles of "horizontal exhaustion," an excess insurer is not required to indemnify an insured before the limits of all applicable primary policies in the entire exposure period are exhausted—not just the limits of the underlying primary policy in the selected year.

18. In June 2008, the trial court issued a coverage ruling, agreeing with Kaiser's argument that the "stacking" of primary policy limits was inappropriate and that Truck was liable for only one per occurrence limit on each claim. Accordingly, the trial court held that once Truck exhausted its $500,000 per occurrence limit under the 1974 Truck Policy, coverage under the Excess Policy would attach.

19. Following the June 2008 coverage ruling, Kaiser, ICSOP and the London Market Insurers entered into a mediation, eventually resulting in a comprehensive settlement agreement executed on July 30, 2009 (the "Settlement") setting forth an interim funding arrangement subject to reallocation based on the outcome of an intended appeal. The Settlement acknowledged that ICSOP intended to obtain appellate review of the June 2008 ruling upon entry of an appealable order.

20. In connection with the mediation, Kaiser, for the first time, provided a list of specific asbestos claims for which it had paid in excess of the $500,000 limit of the 1974 Truck Policy.

21. Pursuant to the Settlement, ▉ and the ▉ agreed to indemnify ▉ for a specified percentage of past and future asbestos bodily injury claims to the extent that the amount paid by Kaiser and/or Truck to resolve the claims exceeds the 1974 Truck Policy primary limit, subject to reimbursement depending on the outcome of the appeal.

22. In February 2010, the trial court entered judgment for Kaiser and against

ICSOP on Kaiser's cross-complaint, and ICSOP and the London Market Insurers thereafter filed a timely appeal.

23. The Settlement pursuant to which ICSOP has paid claims for which it now seeks reimbursement under the Facultative Certificate is governed by California law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 16th day of May, 2013.

_____
PATRICK DICAPRIO