UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE INSURANCE COMPANY OF THE STATE  :
OF PENNSYLVANIA,                    :
                                    :   1:12-cv-06494-DLC
               Plaintiff,          :
                                    :
      vs.                           :
                                    :
ARGONAUT INSURANCE COMPANY,         :
                                    :
               Defendant.          :
                                    :
                                    :
                                    :
------------------------------------------------------------x

## PLAINTIFF'S STATEMENT OF UNCONTESTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff The Insurance Company of the State of Pennsylvania ("ICSOP"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, respectfully submits the following statement of material facts as to which there is no genuine issue to be tried in support of its motion for partial summary judgment against Defendant Argonaut Insurance Company ("Argonaut") dismissing Argonaut's late notice affirmative defense.

**THE PARTIES**

1. Plaintiff ICSOP is a Pennsylvania insurance company that maintains its principal place of business at 175 Water Street, 18th Floor, New York, New York, 10038. ICSOP is an affiliate of the American International Group. *See* Declaration of Patrick DiCaprio, dated May 16, 2013 ("DiCaprio Decl.") ¶ 3.

2. Defendant Argonaut is an Illinois insurance company that maintains its

principal place of business at 10101 Reunion Place, Suite 500, San Antonio, Texas, 78216. *See* DiCaprio Decl. ¶ 4.

**THE EXCESS POLICY**

3. Truck Insurance Exchange ("Truck") provided comprehensive general liability insurance to Kaiser Cement and Gypsun Corporation ("Kaiser") through a primary insurance policy incepting on January 1, 1974, and with limits of $500,000 per occurrence and no aggregate limit (the "1974 Truck Policy"). *Kaiser Cement & Gypsum Corp. v. Insurance Co. of the State of Pa.*, 155 Cal. Rptr. 3d 283, 286 (Cal. Ct. App. 2013).

4. ICSOP, through the California office of its underwriting manager CV Starr, issued an excess umbrella policy to Kaiser attaching immediately above the 1974 Truck Policy under policy no. 4174-5841 (the "Excess Policy"), incepting on January 1, 1974. *See* Declaration of Andrew S. Amer, Esq., dated May 16, 2013 ("Amer Decl.") Ex. 2; DiCaprio Decl. ¶ 6.

5. The Excess Policy provided coverage of $5,000,000 per occurrence excess of the 1974 Truck Policy with no general aggregate limit. *See* Amer Decl., Ex. 2; DiCaprio Decl. ¶ 8.

6. CV Starr, as ICSOP's underwriting manager, had authority to bind risks on ICSOP paper out of its California office without any further authorization from ICSOP personnel. Consistent with this authority, CV Starr issued the Excess Policy to Kaiser without review or further authorization from ICSOP personnel. *See* Amer Decl., Ex. 1 at 157:5-12, 158:17-159:2; DiCaprio Decl. ¶ 7.

**THE REINSURANCE CONTRACT**

7. Argonaut agreed to reinsure ICSOP for a portion of the losses paid to

3

Kaiser under the Excess Policy pursuant to Facultative Certificate DX-0693-A (the "Fac Cert"), which was effective January 1, 1974 until cancelled by agreement of the parties effective May 1, 1975. *See* Amer Decl., Ex. 3.

8. The Fac Cert was underwritten by Argonaut out of its then home office in Menlo Park, California and delivered through the California office of reinsurance broker Guy Carpenter to C.V. Starr's California office. *See* Amer Decl., Ex. 1 at 157:5-159:2.

9. Consistent with its authority as underwriting manager for ICSOP, CV Starr negotiated and accepted the Fac Cert without review or further approval from ICSOP personnel. *See id.*

10. Pursuant to the Fac Cert, Argonaut agreed to provide reinsurance coverage in the amount of $1,000,000 part of $5,000,000 per occurrence, or a 20% share of the Excess Policy, in exchange for a proportionate share of the premium. *See* Amer Decl., Ex. 3.

11. The Fac Cert expressly provides that the "liability of [Argonaut] . . . shall follow that of [ICSOP]," and that "[u]pon receipt of a definitive statement of loss, [Argonaut] shall promptly pay its proportion of such loss." *See* Amer Decl., Ex. 3.

12. The Fac Cert further provided that ICSOP "shall notify [Argonaut] of any occurrence which in [ICSOP's] estimate of the value of the injuries or damages sought, without regard to liability, might result in judgment in an amount sufficient to involve this certificate of reinsurance. [ICSOP] shall also notify [Argonaut] promptly of any occurrences in respect of which [ICSOP] has created a loss reserve equal to or greater than fifty (50) percent of [ICSOP's] retention specified specified in Item 3 of the Declarations; or, if this reinsurance applies on a contributing excess basis, when notice of claim is received by [ICSOP]. . . ." *Id.*

**THE CALIFORNIA COVERAGE LITIGATION**

13. From 1944 through the 1970's, Kaiser manufactured a variety of asbestos products, including joint compounds, finishing compounds, fibreboard and plastic cements. *See Kaiser*, 155 Cal. Rptr. 3d at 286.

14. Beginning in the early 1980s, numerous plaintiffs began filing suits against Kaiser alleging bodily injury as a result of asbestos exposure. Kaiser tendered these claims to its primary insurers, including Truck, for indemnification and defense. *Id.*

15. By 2001, Truck notified ICSOP and other excess carriers that its primary limits were exhausted, and brought an action against Kaiser in California state court seeking a declaration that it owed no further obligation to provide coverage for Kaiser's asbestos claims under its primary policies (the "California Coverage Litigation"). *See id.* at 286-287; DiCaprio Decl. ¶ 9.

16. In 2002, Kaiser filed a cross-complaint asserting counterclaims against its excess insurers, including ICSOP and certain London market insurers (the "London Market Insurers"), seeking a declaration that the excess insurers were obligated to defend and indemnify Kaiser for the asbestos bodily injury claims once primary coverage was exhausted. *See Kaiser*, 155 Cal. Rptr. 3d at 287; DiCaprio Decl. ¶ 10.

17. In 2005, the trial court issued a ruling adopting the "underlying cause test" as the proper method for determining the number of occurrences under the Truck primary policies, and finding that the asbestos bodily injuries for which Kaiser is legally liable did not, as a matter of law, arise from a single occurrence. *See Truck Ins. Exchange v. Kaiser Cement and Gypsum Corp.*, No. BC249550, 2006 WL 5838335 (Sup. Ct. Cal. Dec. 13, 2006); DiCaprio Decl. ¶ 11.

18.     In 2006, upon its own motion for reconsideration, the trial court reversed itself and found that Truck and Kaiser had intended to treat all asbestos bodily injury claims as a single occurrence under the policies. *See Kaiser*, 155 Cal. Rptr. 3d at 288; DiCaprio Decl. ¶ 12.

19.     The excess insurers appealed, and, in 2007, the Court of Appeal, Second District, reversed the trial court, finding that the plain language of the policies did not support the conclusion that Kaiser's design, manufacture, and distribution of asbestos products was an "occurrence," but rather the relevant "occurrence" was injurious exposure to asbestos products. *See Kaiser*, 155 Cal. Rptr. 3d at 288; DiCaprio Decl. ¶ 13.

20.     Following the 2007 appellate decision, Truck moved for a determination of the number of "occurrences" at issue and, in January 2008, the trial court found that for purposes of further proceedings in the case, each asbestos bodily injury claim shall be deemed to have been caused by a separate and distinct occurrence within the meaning of the Truck policies. *Kaiser*, 155 Cal. Rptr. 3d at 289; DiCaprio Decl. ¶ 14.

21.     Pursuant to California precedent allowing an insured to target a single year of primary coverage within the exposure period to pay "all sums" due to a continuous injury claim such as asbestos, Kaiser selected the 1974 policy year, and, therefore, targeted the 1974 Truck Policy (which had no applicable aggregate limit). *See Kaiser*, 155 Cal. Rptr. 3d at 289; DiCaprio Decl. ¶ 15.

22.     Kaiser then moved for an order declaring that, if an asbestos bodily injury claim alleged against Kaiser involves exposure during the 1974 Truck Policy period, and Kaiser selects that year to respond, then the Excess Policy—and, if necessary, any excess policies directly above it—become liable for that claim once Truck has paid and exhausted its $500,000 per-occurrence limit for that claim, and Kaiser has paid its deductible. *See Kaiser*, 155 Cal. Rptr.

3d at 289; DiCaprio Decl. ¶ 16.

23. ICSOP opposed Kaiser's motion, arguing that, under principles of "horizontal exhaustion," an excess insurer is not required to indemnify an insured before the limits of all applicable primary policies in the entire exposure period are exhausted—not just the limits of the underlying primary policy in the selected year. *See Kaiser*, 155 Cal. Rptr. 3d at 290; DiCaprio Decl. ¶ 17.

24. In June 2008, the trial court agreed with Kaiser's argument that the "stacking" of primary policy limits was inappropriate and that Truck was liable for only one per occurrence limit on each claim under all of its primary policies. The trial court therefore held that once Truck exhausted its $500,000 per occurrence limit under the 1974 Truck Policy, coverage under the Excess Policy would attach. *See Kaiser*, 155 Cal. Rptr. 3d at 290; DiCaprio Decl. ¶ 18.

25. Following the June 2008 coverage ruling, Kaiser, ICSOP and the London Market Insurers entered into a mediation, eventually resulting in a comprehensive settlement agreement executed on July 30, 2009 (the "Settlement"). The Settlement acknowledged that ICSOP intended to obtain appellate review of the June 2008 ruling upon entry of an appealable order. *See* DiCaprio Decl. ¶ 19.

26. The Settlement set forth an interim funding arrangement subject to reallocation based on the outcome of the eventual appeal. *See id.*

27. In February 2010, the trial court entered judgment for Kaiser and against ICSOP on Kaiser's cross-complaint and ICSOP timely appealed. *See* DiCaprio Decl. ¶ 22.

**ICSOP PROVIDES NOTICE TO ARGONAUT**

28. On June 3, 2009, ICSOP sent Argonaut a notice of loss under the Fac Cert

Case 1:12-cv-06494-DLC   Document 23   Filed 06/12/13   Page 7 of 7

7

with respect to the potential loss under the Excess Policy for Kaiser asbestos claims. *See* Amer Decl., Ex. 4.

29. During the latter half of 2009, ICSOP sent Argonaut updated loss advices and itemized claims billings for all unsettled balances under the Fac Cert paid by ICSOP under the Settlement. *See, e.g.,* Amer Decl., Exs. 5 - 11.

30. In April 2010, Argonaut conducted an on-site audit of ICSOP's claim files for numerous risks, including Kaiser. As part of this audit, Argonaut requested and received numerous documents related to the California Coverage Litigation, including the Settlement. *See* Amer Decl. Ex. 1 at 180:15-22 and Ex. 13.

31. In December 2009, Argonaut advised ICSOP that it owed no obligation to pay the Kaiser losses under the Fac Cert based upon, *inter alia*, a late notice defense. *See* Amer Decl. Ex. 16.

Dated: May 17, 2013
      New York, New York

SIMPSON THACHER & BARTLETT LLP

By: _____
    Andrew S. Amer
    Rae C. Adams

425 Lexington Avenue
New York, N.Y. 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Plaintiff The Insurance Company of the State of Pennsylvania*