UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

THE INSURANCE COMPANY OF THE STATE  :
OF PENNSYLVANIA,

                            :

                  Plaintiff,       :

                            :      12 Civ. 6494 (DLC)

       vs.                         :

                            :

ARGONAUT INSURANCE COMPANY,     :

                            :

                  Defendant.    :

                            :

------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HOGAN LOVELLS US LLP
    Sean Thomas Keely
    Benjamin J.O. Lewis
    Pooja Boisture
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Defendant*
*Argonaut Insurance Company*

New York, New York
May 17, 2013

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 2

    A.  AIG's Insurance Of Kaiser And Argonaut's Facultative Reinsurance ................. 2

    B.  AIG Received Notice Of Claim on The Reinsured Policy By 1989, But AIG Did Not Give Argonaut Notice ........................................................ 4

    C.  Kaiser Joined AIG In A Coverage Action, But AIG Did Not Give Argonaut Notice ............................................................................... 5

    D.  Despite Inherent Conflicts, AIG Litigated Significant Issues In The Coverage Action Without Providing Any Notice To Argonaut ........................ 6

    E.  After Adverse Court Decisions, AIG Decided To Settle With Kaiser ................. 8

    F.  AIG's Late Notice Of The Kaiser Claim To Argonaut .................................. 9

    G.  Without Notice Of The Kaiser Claim, Argonaut Commuted A Substantial Portion Of Its Own Reinsurance Protection ............................. 12

ARGUMENT ..................................................................................................... 14

  I.  APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT ...................... 14

  II.  THE LAW APPLICABLE TO LATE NOTICE ............................................... 15

  III.  ARGONAUT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ICSOP'S LATE NOTICE WAS A MATERIAL BREACH OF THE FACULTATIVE CERTIFICATE THAT PREJUDICED ARGONAUT ....................... 17

    A.  ICSOP's Late Notice To Argonaut Breached The Facultative Certificate .......... 17

    B.  Argonaut Suffered Substantial Prejudice As A Result Of ICSOP's Breach ........ 20

        1.  Argonaut Suffered Substantial Prejudice By AIG's "Inherent Conflicts" In Handling The Claim ............................................. 21

        2.  Argonaut Suffered Substantial Prejudice By The Commutation Of Its Retrocession Without Notice Of The Claim From ICSOP ...................... 24

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...................................................................................................14

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...................................................................................................14

Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.,
    979 F.2d 268 (2d Cir. 1992)..............................................................................16, 21

Fed. Ins. Co. v. Estate of Gould,
    No. 10 Civ. 1160 (RJS), 2011 WL 4552381 (S.D.N.Y. Sept. 28, 2011).................15

G-I Holdings, Inc. v. Baron & Budd,
    179 F. Supp. 2d 233 (S.D.N.Y. 2001)......................................................................15

Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,
    374 F.3d 56 (2d Cir. 2004)........................................................................................14

Ins. Co. of Ireland, Ltd. v. Mead Reinsurance Corp.,
    No. 88 CIV. 8779 (PKL), 1994 WL 605987 (S.D.N.Y. Nov. 4, 1994)............23, 24

Ins. Co. of State of Pa. v. Associated Int'l Ins. Co. (ICSOP),
    922 F.2d 516 (9th Cir. 1990) ...................................................................................16

Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.,
    363 F.3d 137 (2d Cir. 2004)...............................................................................15, 17

Nat'l Union Fire Ins. Co. v. Gen. Star Indem. Co.,
    216 F.App'x 273 (3d Cir. 2007) ..............................................................................23

Olin Corp. v. Ins. Co. of N. Am.,
    966 F.2d 718 (2d Cir. 1992)......................................................................................20

Park Place Entm't Corp. v. Transcon. Ins. Co.,
    225 F. Supp. 2d 406 (S.D.N.Y. 2002)......................................................................15

Travelers Cas. and Sur. Co. v. Dormitory Auth.,
    No. 07 Civ. 6915 (DLC), 2008 WL 2567784 (S.D.N.Y. June 25, 2008) ..........19, 20

Unigard Sec. Ins. Co. v. N. River Ins. Co.,
    79 N.Y.2d 576, 594 N.E.2d 571, 584 N.Y.S.2d 290 (1992)...............16, 20, 21, 22

*Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.*,
    4 F.3d 1049 (2d Cir. 1993) ............................................................................................... passim

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000) ...................................................................................................... 14

**RULES**

Fed. R. Civ. P. 56 ............................................................................................................................. 1, 14

**OTHER AUTHORITIES**

Barry R. Ostrager & Mary Kay Vyskocil, *Modern Reinsurance Law and Practice* § 8 at
    8-3 (2d ed. 2000) .................................................................................................................... 21

George J. Couch, 19 *Couch on Insurance* § 80:71 at 681 (2d ed. 1983) ....................................... 21

J. Burak Melchione and J. Foster, *Late Notice of Reinsurance Claims*,
    29 Tort & Ins. L.J. 773 (1994) ................................................................................................ 24

Defendant Argonaut Insurance Company ("Argonaut") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the complaint filed by plaintiff The Insurance Company of the State of Pennsylvania ("ICSOP") based upon ICSOP's material breach of its contractual obligation to provide Argonaut with prompt notice of the claim at issue.

## PRELIMINARY STATEMENT

This motion is about late notice under a reinsurance contract – notice that was extremely late and substantially prejudicial.

ICSOP's insured, Kaiser Cement Corporation ("Kaiser"), had been the target of thousands of asbestos injury claims since the early 1980s.  Kaiser had purchased numerous insurance policies, including more than a dozen from AIG member companies, including ICSOP. The policy at issue in this case was issued by ICSOP in 1974, and ICSOP reinsured a portion of the policy with Argonaut under the terms of a facultative reinsurance certificate.  The certificate required ICSOP to give Argonaut prompt notice whenever ICSOP received notice of a claim.

By the late 1980s, Kaiser's asbestos liabilities had grown to such an extent that it put its umbrella and excess insurers on notice.  The record is clear that ICSOP received notice of the Kaiser claim on the reinsured policy by 1989.  Internal AIG memoranda during the 1990s also confirm that ICSOP had received notice of the claim and was maintaining claim files relating to the reinsured policy.  But ICSOP did not give Argonaut notice of the claim in the 1980s or 1990s.  Even after Kaiser sued ICSOP in a coverage action in California in 2002, ICSOP proceeded to defend that action without providing any notice to Argonaut.

The defense of that coverage action was hobbled by inherent conflicts due to the fact that AIG had one counsel defend the case on behalf of multiple AIG member companies that had issued multiple policies.  The conflicts – ███████████████ – arose from the fact that

1

the provisions of most of the AIG policies were different from those in the 1974 ICSOP policy. Most of the AIG policies contained aggregate limits of liability. But the 1974 ICSOP policy did not; its limit would apply multiple times to multiple occurrences. This difference meant that what was good for AIG as a whole could be very bad for the 1974 ICSOP policy and, therefore, for Argonaut. After receiving adverse decisions on critical issues in the coverage action, AIG negotiated a settlement with Kaiser in 2009 resulting in the ███████ policy paying ██████ ████████ – but without any losses being born by ████████████ ICSOP did not provide notice of the Kaiser claim to Argonaut until 2009; this first notice was a bill.

Argonaut is entitled to summary judgment on its defense of late notice because there is no genuine question of material fact that ICSOP breached the facultative certificate and that breach was material. **First,** the facultative certificate required ICSOP to give prompt notice of the claim, and it is well settled that a delay of years such as this is unreasonable as a matter of law. ICSOP can offer no valid excuse for this delay. **Second,** the breach was material because it caused substantial prejudice to Argonaut. Delaying notice deprived Argonaut of the ability to assess the claim and protect itself from the "inherent conflicts" that worked against the reinsured 1974 ICSOP policy. In addition, during the many years ICSOP delayed in providing notice, Argonaut commuted (*i.e.,* released) nearly a quarter of the reinsurance Argonaut itself would have had for the Kaiser claim under the 1974 ICSOP policy, meaning Argonaut's net liability is now substantially higher than it otherwise would have been.

Accordingly, Argonaut requests dismissal of the complaint with prejudice.

## FACTUAL BACKGROUND

### A.   AIG's Insurance Of Kaiser And Argonaut's Facultative Reinsurance

The Kaiser and its predecessors manufactured products that contained asbestos. *See* Compl. (Docket No. 1, Ex. A) ¶ 19. ICSOP was, and is, a member company in the American

2

International Group ("AIG").  *Id.* ¶ 4.  Kaiser purchased insurance coverage from various insurance companies during the period from 1953 through 1987, including primary, umbrella, and excess insurance policies.  Ex. 27 at ICSOP0007339.[1]  Among the policies purchased by Kaiser was a policy from ICSOP bearing number 4174-5841, which provided coverage for the period from January 1, 1974 through January 1, 1977 (the "1974 ICSOP Policy").  *Id.* at 0007340.  Kaiser had a primary insurance policy for the same period issued by Truck Insurance Exchange ("Truck") with a limit of $500,000 per occurrence.  The 1974 ICSOP Policy then provided "umbrella" coverage above the $500,000 Truck primary limit up to a limit of $5 million per occurrence.  *Id.*  Neither the Truck primary policy nor the 1974 ICSOP Policy contained an aggregate limit.  *See* Compl. ¶ 14.  They would thus face exposure up to their full limits for each and every occurrence.

The 1974 ICSOP Policy was not the only policy issued to Kaiser by ICSOP or, indeed, by the AIG member companies.  AIG issued more than a dozen policies to Kaiser through various member companies.  *See* Ex. 27 at ICSOP0007339 – 7441.  These policies provided coverage at various layers; some of them provided coverage at the same umbrella layer as the 1974 ICSOP Policy but in prior or subsequent years.  One of them contained only per occurrence limits, like the 1974 ICSOP Policy, but most of them contained aggregate limits.  *Id.*

ICSOP issued its policies to Kaiser through an entity called C.V. Starr & Co. ("C.V. Starr"), which was an AIG company that acted as underwriting manager for ICSOP.  *See* Ex. 10 at ICSOP0105076.  On behalf of ICSOP, C.V. Starr obtained facultative reinsurance for the 1974 ICSOP Policy from Argonaut.  Argonaut issued certificate DX-693-A, agreeing to reinsure $1 million part of the $5 million limit of the 1974 ICSOP Policy, *i.e.*, 20% (the "Facultative

---

[1]   Citations to "Ex. __ " refer to the exhibits annexed to the Declaration of Sean Thomas Keely, dated May 17, 2013.

Certificate"). Ex. 5.[2]

In the Facultative Certificate, ICSOP and Argonaut agreed as follows:

> The Company [*i.e.*, ICSOP] shall notify the Reinsurer promptly of any occurrence which in the Company's estimate of the value of injuries or damages sought, without regard to liability, might result in judgment in an amount sufficient to involve this certificate of reinsurance. ***The Company shall also notify the Reinsurer promptly . . ., if this reinsurance applies on a contributing excess basis, when notice of claim is received by the Company.***

*Id.* (Condition C) at ARG00000373 (emphasis supplied). The Facultative Certificate applied on a contributing excess basis. *Id.* at ARG00000372.

## B.   AIG Received Notice Of Claim on The Reinsured Policy By 1989, But AIG Did Not Give Argonaut Notice

Since the early 1980s, Kaiser had been sued in thousands of lawsuits alleging bodily injury and property damage resulting from its asbestos-containing products. Ex. 27 at ICSOP0007339; Compl. ¶ 20. The asbestos claims against Kaiser were initially handled by Truck, as Kaiser's lead primary insurer. *Id.* By the late 1980s, however, Truck and Kaiser began to involve Kaiser's other insurers, including ICSOP. In 1988, for example, a meeting was convened among representatives of Kaiser, Truck, and a number of insurance carriers. Ex. 7. An AIG representative attended the meeting on behalf of AIG's primary and excess member companies and subsequently wrote an internal memo to file saying, "For those AIG Companies with excess coverage (see attached list) my recommendations are that files be created and reservation of rights be sent out immediately." *Id.* at ICSOP0031171. The attached list included the 1974 ICSOP Policy. *Id.*

---

[2]   "There are two basic types of reinsurance – facultative and treaty. In facultative reinsurance, a ceding insurer purchases reinsurance for part, or all, of a single policy. Treaty reinsurance covers specified classes of a ceding insurer's policies." *Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.*, 4 F.3d 1049, 1053-54 (2d Cir. 1993).

By 1989, AIG had received notice of claim under the 1974 ICSOP Policy and had established a claim file for it. In an internal memo to file at the C.V. Starr claims office dated March 28, 1989, Bart Tesoriero recorded that he had reviewed "the various files for Kaiser Cement & Gypsum." Ex. 8 at ICSOP0077033. The "listing of open asbestos claims" attached to the memo included a claim number for the 1974 ICSOP Policy. *Id.* at ICSOP0077035. Mr. Tesoriero noted, "My preliminary evaluation would be that in those periods where we are excess of $500,000 in underlying coverage we may face a very real possibility of some impairment." *Id.* at ICSOP0077034. As explained above, the 1974 ICSOP Policy was one of those where AIG was excess of $500,000 in underlying coverage. Mr. Tesoriero also noted, "[N]o reinsurance notifications have been sent by this office." *Id.* at ICSOP0077033.

In 1991, an internal AIG memo regarding a "Key Account Summary" of Kaiser claims confirmed: "AIG related companies have been put on notice for excess coverage." Ex. 9.

By 1996, AIG had determined to open another claim file for the 1974 ICSOP Policy. *See Id.* Ex. 10. The case number created, 170-016800, was the "master" claim file for the 1974 ICSOP Policy. *See* Ex. 1 (DiCaprio Dep.) at 281-282, 303-304. The opening of a case file reflected that "someone provided notice under that policy." *Id.* at 305. The case file includes a copy of the 1974 ICSOP Policy. Ex. 10 at ICSOP0105071 – 105087. Included with the copy of the policy was a confirmation from C.V. Starr reflecting details of the reinsurance coverage from Argonaut under the Facultative Certificate. *Id.* at ICSOP0105086.

AIG did not provide notice of the claim to Argonaut in 1989, 1991 or 1996.

**C.    Kaiser Joined AIG In A Coverage Action, But AIG Did Not Give Argonaut Notice**

Truck continued to handle the Kaiser asbestos claims into the early 2000s with contribution from other primary carriers, including National Union. *See* Ex. 11 at ICSOP0075173. By early 2002, Truck's counsel advised AIG's counsel on the Kaiser claims,

Lynberg & Watkins, that Truck intended to file suit against Kaiser to obtain a finding that Truck had exhausted its coverage and had no further obligation for the Kaiser asbestos claims. As the AIG claim handler at the time reported internally, "Truck's counsel has indicated that our excess policies will definitely be brought into this action between Truck and Kaiser." *Id.* at ICSOP0075174. As expected, AIG was formally brought into the suit in April 2002 when Kaiser filed a cross-complaint against its excess insurers in the action in California seeking judgment of coverage under the excess policies, including the 1974 ICSOP Policy. Ex. 12.

In August 2002, AIG opened yet another claim file for the 1974 ICSOP Policy, designating this one with the claim number 170-032752 as a new "master" claim file. Ex. 13.[3] Notwithstanding receipt of the cross-complaint and the opening of a new master file, AIG did not provide notice of the Kaiser claim to Argonaut in 2002.

**D.   Despite Inherent Conflicts, AIG Litigated Significant Issues In The Coverage Action Without Providing Any Notice To Argonaut**

In late 2004, Truck filed a summary judgment motion regarding the number of occurrences represented by the asbestos claims against Kaiser. Ex. 27 at ICSOP0007341. Specifically, Truck took the position that all of the asbestos claims represented a single occurrence arising out of Kaiser's decision to manufacture asbestos products and that Truck's policy limits were, therefore, exhausted by the single occurrence. Ex. 14 at ARG00001206. The Truck motion was a significant event in the coverage action because the determination of the number of occurrences would have a dramatic effect on the liability of the various insurers involved in the coverage action. Certain London-based insurers (the "London Market Insurers"),

---

[3]   AIG's corporate witness on notice, who is a reinsurance director at AIG, testified that claim 170-032752 is the current master file number that exists today in AIG's systems, *see* Ex. 3 (Magnotta Dep.) at 123-124, and that there was a prior master file number that had been in existence from 1996. *Id.* at 23-24. As explained above, AIG had opened claim 170-016800 as the master file for the 1974 ICSOP Policy in 1996.

which had also issued excess coverage, took the lead in opposing Truck's motion. *Id.*

Initially, AIG sat on the sidelines. This was because AIG – which through its different companies had issued many policies with varying coverage provisions – had "inherent conflicts". AIG's counsel at Lynberg & Watkins (who handled the case on behalf of *all* the AIG companies) explained to AIG's claim handler (who handled the claims on behalf of *all* the AIG companies):



Ex. 14 at ARG00001206 – 1207 (emphasis in original by Lynberg & Watkins). AIG's counsel advised that ███████████████████████████████████████ *Id.* at ARG00001217. Nevertheless, AIG took no position on the motion.

The trial court initially denied Truck's motion in May 2005, concluding that the asbestos claim "gave rise to more than one occurrence." *Id.* at ARG00001207. In October 2005, however, the court decided *sua sponte* to reconsider its multiple-occurrence ruling. This time, as Lynberg & Watkins reported, ████████████████████████████████████████ ████████████████████████████████████████ *Id.* In January 2006, the trial judge granted summary judgment in favor of Truck, holding the claims were a single-occurrence and that Truck's primary policies had been exhausted. Ex. 15.

Later that year, in ███████, AIG ██████ its indemnity reserve on the master file for the 1974 ICSOP Policy from a ███████████████████████ Ex. 26; Ex. 1 (DiCaprio Dep.) at 146-147. Despite the court decisions and the reserve ███████, AIG did not provide notice to Argonaut.

**E.      After Adverse Court Decisions, AIG Decided To Settle With Kaiser**

The London Market Insurers appealed the trial court's single-occurrence decision and finding of exhaustion.  In a January 2007 decision, the appellate court reversed and remanded to the trial court, finding "that the occurrence was a claimant's injurious exposure to asbestos" and suggesting that each claimant represented a separate occurrence.   Ex. 27 at ICSOP0007341. Kaiser filed an amended cross-complaint seeking a declaration that the Truck primary policy and the 1974 ICSOP Policy were obligated to respond to all asbestos claims triggering coverage for the 1974 policy period, regardless of whether the claims also triggered other policy periods. Kaiser sought "reimbursement from ICSOP for monies paid in excess of Truck's primary limits of $500,000." *Id.* at ICSOP0007342.

Because the policy did not contain aggregate limits, a finding in favor of Kaiser on this issue would expose the 1974 ICSOP Policy – and Argonaut – to potentially unlimited liability. Indeed, at the time Kaiser filed the cross-complaint, Kaiser sought approximately $15,000,000 from ICSOP – notwithstanding the $5 million policy occurrence limit – because the losses arose from 43 separate claimants. *Id.* at ICSOP0007343.  On June 30, 2008, the trial court ruled in favor of Kaiser and against ICSOP, finding that "upon exhaustion of the 1974-1975 Truck policy limit of $500,000 by settlement or judgment for any one covered claim/occurrence, the 1974-1975 ICSOP policy must pay the balance of indemnity over $500,000."   Ex. 16 at ICSOP0007543.  AIG's counsel noted that ███████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████  *Id.*  AIG did not ██████████████████ ████ for the 1974 ICSOP Policy or provide notice to Argonaut.

By March 2009, "there were 56 [asbestos claims] exceeding $500,000 and Kaiser sought approximately $24,400,000 from ICSOP, along with statutory interest of $3,500,000 and an

unknown amount of attorneys fees." Ex. 27 at ICSOP0007343.  As recorded in an internal AIG Case Status Report, "the fact remained that ICSOP had taken no action regarding the [asbestos claims] upon Truck's claimed exhaustion of limits such that a finding of breach of contract appeared likely." *Id*.  When the trial court proposed mediation, ICSOP agreed. *Id*.

In the middle of ▮▮▮▮▮▮▮ the claim handler at AIG managing the Kaiser account submitted an Executive Claim Summary seeking authority to ▮▮▮▮▮ the reserve on the master claim file.  Ex. 18.  The indemnity reserve was ▮▮▮▮▮ from ▮▮▮▮▮ to ▮▮▮▮▮ on or about ▮▮▮▮▮  Ex. 26; Ex. 1 (DiCaprio Dep.) at 146-149.

On April 21 and 22, 2009, an AIG representative participated in a mediation involving Kaiser, Truck, and the London Market Insurers.  Ex. 19; Ex. 1 (DiCaprio Dep.) at 215-216.  The result of the mediation was an agreement in principle for ▮▮▮▮▮ to pay ▮▮▮▮▮ to resolve Kaiser's demand for amounts due on asbestos claims already settled by Kaiser through March 31, 2009.  ▮▮▮ agreed to accept ▮ of that amount in payments from August 2009 through January 2010, and the parties agreed that ▮▮▮▮▮ would be funded if the trial court's June 2008 coverage decision was affirmed on appeal.  ▮▮▮▮ also agreed to pay ▮▮▮▮▮▮ ▮▮▮▮▮ on pending or future asbestos claims.  The ▮▮▮▮▮▮ agreed to fund ▮▮ of the settlement amount for the past claims and ▮▮ of any amounts paid on pending and future claims.  The parties agreed to entry of judgment on the June 2008 coverage decision so that ICSOP could pursue an appeal.  Ex. 27 at ICSOP0007343 – 7344.

The settlement was agreed in principle at the end of April 2009 and a formal settlement agreement was signed in July 2009.  Ex. 1 (DiCaprio Dep.) at 143.

**F.    AIG's Late Notice Of The Kaiser Claim To Argonaut**

Argonaut had long had difficulties with AIG reporting claims late – indeed, frequently not reporting claims until after AIG had already settled and made payments on them – and

9

Argonaut attempted over the years to address the issue with AIG. *See* Ex. 2 (Hollender Dep.) at 61-62, 123-125; Ex. 4 (Stuhr Dep.) at 95-96. For example, in 2008, Chris Hollender of Argonaut asked reinsurance executives at AIG if AIG would give Argonaut access to certain "ground-up studies" on AIG's asbestos exposures that AIG had reported were prepared by consultants at Milliman. The request was an attempt to address AIG's persistent late notice of asbestos claims:

> While we've heard over the past year that AIG has been discussing internally ways to improve reinsurance reporting, it has yet to come to fruition. It would seem to me that by providing access to these studies, we can move beyond where we are now. As I mentioned, we are simply trying to get a handle on Argonaut's potential liabilities so that it can be in the best position to make informed financial decisions.
>
> Over the past several years, Argonaut has been forced to add a substantial amount in reserves as a result of continued deterioration involving its assumed reinsurance runoff operation, and our reinsurance of AIG has been a significant contributing factor. AIG's inability to report losses in a timely fashion has caused financial issues for Argonaut, and, unless the situation improves, has the potential to cause significant harm to Argonaut in the future.

Ex. 17 at ARG00003660. Irwin Nirenberg of AIG responded to the email proposing to arrange a conference call with Argonaut, *id.*, but AIG never agreed to provide Argonaut with access to the studies. Ex. 2 (Hollender Dep.) at 152-153.

Nor did AIG provide Argonaut with notice of the Kaiser claim in 2008. AIG provided its first notice to Argonaut regarding the Kaiser claim in April 2009. *See* Ex. 20. The notice was sent by AIG's broker, Guy Carpenter, with a caption of "Initial Loss Advice". *Id.* at ICSOP0000032. While the notice related to the 1974 ICSOP Policy, it did not relate to the Facultative Certificate. Instead, the Initial Loss Advice referred to a different contract, an excess of loss reinsurance treaty on which Argonaut participated that covered policies issued by ICSOP in 1974, including the 1974 ICSOP Policy. Ex. 2 (Hollender Dep.) at 43-44.

Nadine Stuhr of Argonaut wrote to Linda Sefranka in the reinsurance department at AIG on April 3, 2009. Ms. Stuhr attached a copy of the Initial Loss Advice and advised that the "broker has reported the initial loss to Argonaut with a reserve recommendation of over ███████ but no supporting loss information was provided." Ex. 20 at ICSOP0000031. She asked AIG to provide copies of any internal reports to summarize the loss as well as copies of the applicable policies. *Id.* Ms. Sefranka responded on April 27, attaching a copy of the 1974 ICSOP Policy and a "Status Report," dated April 22, 2009. Ex. 21. The Status Report contained a single line regarding the coverage action in California: "There is an active Declaratory Judgment action in which all coverage issues are being litigated." *Id.* at ICSOP0000043. Notably, the Status Report was dated the same date that AIG concluded the mediation and agreed to the settlement in principle, but it said nothing about the prior adverse decisions in the coverage action and nothing about AIG's negotiation and settlement.

In June 2009, Argonaut received a copy of a "Reinsurance Notice of Loss" regarding the Facultative Certificate, which came "without any cover sheet or supporting documentation." Ex. 22; Ex. 25. On July 9, 2009, the broker emailed Argonaut an "Initial Notice of Loss & Payment Request," formally advising Argonaut for the first time of the Kaiser claim under the Facultative Certificate. Ex. 23. The first notice also came with a billing for payment. *Id.*

Argonaut had actually identified a potential exposure on the Facultative Certificate shortly before AIG provided notice on the certificate. Following Argonaut's receipt of the Initial Loss Advice on the excess of loss treaties, Argonaut identified in its own records that it had issued the Facultative Certificate also covering the 1974 ICSOP Policy. By early May 2009, Argonaut had identified the certificate and, even though AIG had not yet provided notice of any claim on the certificate, Argonaut determined to provide notice to its own reinsurers (called

11

"retrocessionaires") of the potential for a claim. Ex. 4 (Stuhr Dep.) at 35; Ex. 2 (Hollender Dep.) at 65-66. Asked at his deposition why the decision was made to notify retrocessionaires even though Argonaut had not yet received specific notice under the Facultative Certificate, Chris Hollender of Argonaut explained, "Just because notice is such an important issue." *Id.* at 67.

Ms. Stuhr of Argonaut raised AIG's late notice of the claim (under both the Facultative Certificate and the excess of loss treaty) immediately in June 2009 and again in July and August 2009. *See* Ex. 24 at ICSOP0065819 – 65821; Ex. 25. On August 3, 2009, Barbara Obecny of AIG sent an email to AIG's broker purporting to address "the late notice issue" on the Facultative Certificate. Ex. 26. She stated that the reserve ███████ on the Kaiser claim up to ███████ in ███████ should have triggered a notice to Argonaut at that time. "However a review of the reinsurance layoff indicates that until 5/1/2009 no facultative reinsurance was on the layoff in SCI." *Id.*[4] Her reference to "SCI" was to a computer system used by AIG's reinsurance department since 2003, which generated notices of claims to reinsurers. A predecessor system called "LMS" was in place since the late 1980s and operated on the same basis as SCI with respect to generating notices. Ex. 3 (Magnotta Dep.) at 80.

Chris Magnotta, a reinsurance director at AIG, testified that in reviewing the Kaiser master claim file in April 2009 he made a request for reinsurance layoff information for the 1974 ICSOP Policy. Seeing the information, he recognized that the Argonaut facultative certificate was not identified as part of the reinsurance in SCI. *Id.* at 93-94.

**G.     Without Notice Of The Kaiser Claim, Argonaut Commuted A Substantial Portion Of Its Own Reinsurance Protection**

Just as AIG had purchased reinsurance from Argonaut covering the 1974 ICSOP Policy,

---

[4]     The reference to "the layoff" means information regarding the reinsurance AIG had for the 1974 ICSOP Policy. *See* Ex. 3 (Magnotta Dep.) at 13. A ceding company "lays off" a portion of its risk to reinsurers.

Argonaut had its own reinsurance (also called "retrocession") to cover losses on the policy. Argonaut had entered into a retrocession contract referred to as Treaty X. Ex. 2 (Hollender Dep.) at 63-64. Treaty X applied on a quota share basis, meaning that the retrocessionaires would accept their percentage of losses on any policy ceded to the treaty. *Id.* That would include losses under the Facultative Certificate. Ex. 2 (Hollender Dep.) at 62-65.

But in the decades that AIG failed to give notice of the Kaiser claim to Argonaut, Argonaut had agreed to commute with ▉▉▉▉ of the retrocessionaires that participated on Treaty X. *See* Ex. 2 (Hollender Dep.) at 200-202.[5] A commutation is an agreement in which a reinsured agrees to release its reinsurer from liability for all current and future claims in exchange for a single payment. As Chris Hollender of Argonaut testified, if Argonaut had been given timely notice of the Kaiser claim, those commutations could have been avoided or Argonaut would have increased its demand before giving its retrocessionaires a release on Treaty X. *Id.* at 207-209. Argonaut determined a price to charge for a commutation by reviewing the paid balances due from the retrocessionaire and the case reserves for claims that reinsureds had notified to Argonaut. *Id.* at 206. Based on the inventory of paid claims and case reserves for noticed claims, Argonaut would attempt to develop a figure for IBNR (*i.e.*, claims that are Incurred But Not Reported). *Id.* The figure used for IBNR was not "just picking out a number out of a hat", but instead "was really grounded on looking at claims that are open and going year by year." *Id.* at 231-233.

Argonaut did not insure Kaiser directly and did not reinsure any company that insured

---

[5]  From memory, Mr. Hollender testified at deposition that Argonaut had commuted ▉▉▉▉▉▉▉▉ of its retrocession from Treaty X between 2001 and 2009. The exact figure is ▉▉▉▉, which can be calculated by comparing the commutation agreements identified by Mr. Hollender during his deposition to the percentage participations identified for each of those retrocessionaires on Treaty X. *Compare* Ex. 2 (Hollender Dep.) at 220-221, 233-254 *with* Ex. 6.

Kaiser other than AIG.  *See Id.* at 219-220, 80-81.  Accordingly, exposure to Kaiser was not something Argonaut did or could account for in commutation negotiations prior to receiving notice from AIG in 2009.  And that exposure was significant; the Kaiser claim as ceded by ICSOP under the Facultative Certificate is the largest facultative claim that Mr. Hollender had ever seen in Argonaut's book of business.  *Id.* at 210-211.

## ARGUMENT

### I.  APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment only if it concludes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the case, and it is genuine if based on the evidence provided a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of proving that there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323.

If the moving party meets its burden, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  To carry its burden, the opposing party "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'"  *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d Cir. 2004) (quoting *Anderson*, 477 U.S. at 248).

In this case, Argonaut is entitled to summary judgment on its defense of late notice because there is no dispute of material fact regarding ICSOP's breach of the notice provision in the Facultative Certificate and the materiality of that breach resulting in prejudice to Argonaut.

14

## II.   THE LAW APPLICABLE TO LATE NOTICE

A preliminary question for the Court is the law applicable to Argonaut's late notice defense.  As alleged in ICSOP's complaint, ICSOP is a Pennsylvania company with its principal place of business in New York.  *See* Compl. ¶ 4.  Argonaut is an Illinois company with its principal place of business in Texas.  *Id.* ¶ 5.  The Facultative Certificate was originally issued by Argonaut in California to the broker for ICSOP and C.V. Starr in California.  *See* Ex. 5. Accordingly, while the initial presumption should be that New York law applies because ICSOP brought this action in New York, one might consider California law applicable.  However, because there is no substantive difference in the law of New York and California as relevant to late notice in this case, the Court need not perform a choice of law analysis.

A federal court sitting in diversity applies the choice of law rules of the forum state.  *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co. (IBM)*, 363 F.3d 137, 143 (2d Cir. 2004).  Under New York choice of law rules, where there is no substantive conflict between the laws of two different jurisdictions with an interest in the case, no choice of law analysis is necessary.  *Id.* at 143-44 (finding no conflict between New York and California laws regarding insurer's duty to defend). Determining whether there is any conflict between the laws of two jurisdictions is the first step in cases involving potential choice of law issues.  *Park Place Entm't Corp. v. Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 408 (S.D.N.Y. 2002) ("If the party advocating a choice of law analysis fails to demonstrate an actual conflict between New York and another state's laws, no choice of law analysis need be undertaken.") (citing *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223, 613 N.E.2d 936, 937, 597 N.Y.S.2d 904, 905 (1993)); *see also Fed. Ins. Co. v. Estate of Gould*, No. 10 Civ. 1160 (RJS), 2011 WL 4552381, at *4 (S.D.N.Y. Sept. 28, 2011).  A conflict between laws exists "[w]here the applicable law from each jurisdiction provides different substantive rules." *IBM*, 363 F.3d at 143 (internal quotation marks omitted); *G-I Holdings, Inc. v. Baron &*

15

*Budd*, 179 F. Supp. 2d 233, 249 (S.D.N.Y. 2001) ("Laws are in material conflict if the differences in the laws have a significant possible effect on the outcome of the trial.") (internal quotation marks omitted).

In this case, there is no need for a choice of law analysis because there is no conflict between New York and California law regarding the standards applicable to a defense of late notice on a reinsurance contract. Both states hold that a reinsurer asserting late notice as a defense can avoid liability on its contract by establishing that the contract was breached by the timing of the notice and that the breach was material such that reinsurer was prejudiced as a result of the breach. *See Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 79 N.Y.2d 576, 594 N.E.2d 571, 584 N.Y.S.2d 290 (1992); *Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993); *Ins. Co. of State of Pa. v. Associated Int'l Ins. Co. (ICSOP)*, 922 F.2d 516, 524-25 (9th Cir. 1990).[6]

Notably, the California Supreme Court has never rendered any decision regarding the standard for assessing a late notice defense in the reinsurance context. For that reason, the Ninth Circuit used its judgment to predict what the California Supreme Court might do. *See ICSOP*, 922 F.2d at 520-21. In making its prediction, the Ninth Circuit also noted, "It is understood that 'well-reasoned decisions from other jurisdictions' may also be considered"; the court therefore considered decisions from New York among many other states. *Id.* at 520 (citation omitted). Research has revealed no decision on late notice in the reinsurance context by any California

---

[6] A reinsurer may also prevail on a late notice defense without showing prejudice if the reinsurer can show that the failure of the reinsured to provide timely notice was the result of bad faith or gross negligence. *See Unigard*, 4 F.3d at 1069; *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 281 (2d Cir. 1992). Based upon instructions from the Court at the preliminary conference, this alternative prong of the late notice defense was not the subject of the initial phase of discovery; the Court directed discovery and motions in this phase only on the issues of late notice and prejudice. *See* Docket No. 9.

state appellate court since the decision in *ICSOP*.

Where, as here, there is no conflict of law and no choice of law analysis is needed, New York courts are free to apply New York law. *IBM*, 363 F.3d at 143. Accordingly, and particularly because there is so little authority in California regarding late notice in the reinsurance context, the Court should apply New York law in this case.

### III. ARGONAUT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ICSOP'S LATE NOTICE WAS A MATERIAL BREACH OF THE FACULTATIVE CERTIFICATE THAT PREJUDICED ARGONAUT

Argonaut is entitled to summary judgment on its defense of late notice because the record establishes that (a) ICSOP breached the Facultative Certificate by failing to notify Argonaut of the Kaiser claim for years after required to do so under the Facultative Certificate; and (b) ICSOP's breach was material as Argonaut suffered substantial prejudice, including not only the deprivation of Argonaut's contractual right to protect itself by associating in the handling and settlement of the underlying claim but also the loss of its ability to recover significant sums from its own retrocessionaires. In these circumstances, ICSOP's material breach relieves Argonaut from any obligation under the Facultative Certificate and the complaint should be dismissed.

#### A. ICSOP's Late Notice To Argonaut Breached The Facultative Certificate

The Facultative Certificate was written on a contributing excess basis, meaning that Argonaut's liability would attach at the same time that ICSOP's liability attached for any loss on the reinsured 1974 ICSOP Policy. In accordance with the nature of that relationship, the Facultative Certificate expressly required ICSOP to notify Argonaut promptly "when notice of claim is received by the Company [*i.e.*, by ICSOP]." Ex. 5. There is no genuine dispute of fact that ICSOP failed to do that in this case. Thus, the Court can and should determine as a matter of law that ICSOP breached the notice provision in the Facultative Certificate. *See Constitution Reinsurance Corp. v. Stonewall Ins. Co.* (*Constitution Re*), 980 F. Supp. 124, 130 (S.D.N.Y.

17

1997) (whether notice was given in a reasonable time may be determined as a question of law when the facts bearing on the delay in notice are not in dispute and the insured has not offered a valid excuse for the delay).

The undisputed facts establish that ICSOP received notice of claim concerning the 1974 ICSOP Policy by 1989 and certainly no later than 1996. Claims files were established for the claims made by Kaiser against the various policies issued by AIG, including the 1974 ICSOP Policy, as of March 1989. Ex. 8 at ICSOP0077035. The AIG claim handler at the time noted the exposure to policies at the layer of the 1974 ICSOP Policy and even noted that reinsurance notifications had not yet been sent. *Id.* at ICSOP0077033. In 1991, an internal AIG memo confirmed in undeniably express language that AIG had received notice: "AIG related companies have been put on notice for excess coverage." Ex. 9. And by 1996, AIG had established a "master" claim file for the reinsured 1974 ICSOP Policy, reflecting that AIG had been "provided notice under that policy." Ex. 10; Ex. 1 (DiCaprio Dep.) at 305.

Nor can it be disputed that ICSOP did not provide notice to Argonaut under the Facultative Certificate until June 2009 at the earliest. *See supra* at 11-12. Even if ICSOP were to attempt to rely on its notice to Argonaut on the excess of loss treaties rather than on the Facultative Certificate, Argonaut did not receive notice of the Kaiser claim under those treaties until the Initial Loss Advice from AIG's broker arrived in April 2009. *Id.*

Thus, the record establishes that ICSOP delayed 20 years in providing notice of the Kaiser claim to Argonaut. It is well settled that delays much shorter than this are unreasonable and breach prompt notice provisions such as that in the Facultative Certificate. "Courts applying New York law routinely have found delays of less than ten months to be unreasonable as a matter of law." *Constitution Re*, 980 F. Supp. at 130 (collecting cases finding delays of under 10

18

months unreasonable, and concluding that 26-month delay constituted late notice as a matter of law); *see also Unigard*, 4 F.3d at 1053 (finding 5-month delay breached prompt notice provision); *Travelers Cas. and Sur. Co. v. Dormitory Auth.*, No. 07 Civ. 6915 (DLC), 2008 WL 2567784, at *5 (S.D.N.Y. June 25, 2008) (finding seven-month delay in notice unreasonable as a matter of law).

Nor can ICSOP avoid a decision as a matter of law finding its notice untimely by attempting to argue an excuse for the delay. The only excuse ICSOP has offered is that it failed to record the existence of the Argonaut reinsurance in the computer system it used for notice. Nothing prevented ICSOP from providing prompt notice. AIG's reinsurance director testified that he recognized that the Argonaut facultative certificate was not identified in the SCI system as soon as he reviewed AIG's reinsurance layoff information for the 1974 ICSOP Policy. *Id.* at 93-94. A copy of the layoff information and evidence of the Facultative Certificate were included in the very master file that AIG opened on the claim back in 1996. Ex. 10.

On these facts, ICSOP cannot establish any "valid excuse" for its late notice. This Court has granted summary judgment on late notice in the direct insurance context rejecting a similar excuse. *See Travelers Cas.*, 2008 WL 2567784, at *5. There, Travelers as a subrogee of a policyholder named Trataros sought to recover from another of the policyholder's insurers, U.S. Fire. *Id.* at *2. U.S. Fire moved to dismiss on the grounds of late notice. Travelers suggested that the failure to give timely notice of the claim to U.S. Fire should be excused because Trataros had previously gone out of business "and thus Travelers (Trataros's 'attorney in fact') had difficulty locating the policy or, indeed, even determining who had issued potentially relevant policies to Trataros during the course of the Project." *Id.* at *6. This Court rejected that excuse, stating that "under New York law 'a lack of knowledge of an insurance policy does not excuse a

delay in notification.'" *Id.* (quoting *Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir. 1992)). As the Second Circuit explained, "[I]t is the responsibility of the insured, not the insurance company, to keep track of which carriers have provided it with liability insurance." *Olin Corp.*, 966 F.2d at 725 (quoted in *Travelers Cas.*, at *6).

Similarly here, ICSOP's own alleged lack of knowledge of the Argonaut reinsurance – more accurately, its failure to look in its own file at the evidence of the certificate and relevant reinsurance layoff – is not a valid excuse for its unreasonable decades-long delayed notification. As a matter of law, ICSOP breached the notice provision in the Facultative Certificate.

### B.    Argonaut Suffered Substantial Prejudice As A Result Of ICSOP's Breach

The Court should also determine as a matter of law that ICSOP's breach of the notice provision was material, because Argonaut suffered substantial prejudice as a result of the breach. In announcing the prejudice rule, the New York Court of Appeals in *Unigard* made clear that it was not intended to be uniquely onerous. Instead, the Court explained that the "no prejudice" rule for late notice in the direct insurance context was a limited exception to an "established rule[] of contract law" that "ordinarily one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice". *Unigard*, 79 N.Y.2d at 581, 594 N.E.2d at 573, 584 N.Y.S.2d at 292. Thus, the prejudice rule for reinsurance contracts is a manifestation of the standard rule of contract law that a breach must be material to relieve the non-breaching party of its obligations.

In *Unigard*, the reinsurer argued that its "right to associate" with its ceding company regarding the claim made prompt notice necessary and that, by itself, the loss of that right because of late notice gave rise to a presumption of prejudice – essentially, that late notice gives rise *per se* to a presumption of prejudice. The Court rejected that argument, but made clear that late notice for reinsurers remains a viable defense:

> This is not to suggest that a reinsurer may never assert late notice
> as a ground for avoiding its obligations under a reinsurance
> contract. All we hold here is that the reinsurer must demonstrate
> how it was prejudicial and may not rely on the presumption of
> prejudice that applies in the late notice disputes between primary
> insurers and their insureds.

*Id.* at 584, 594 N.E.2d at 575, 584 N.Y.S.2d at 294. Subsequent courts applying the prejudice rule have also recognized the critical importance of prompt notice to reinsurers. *See Unigard*, 4 F.3d at 1066 ("[B]ecause information regarding risks lies with the ceding insurer, the reinsurance market depends upon a high level of good faith to ensure prompt and full disclosure."); *Christiania*, 979 F.2d at 278 ("[b]eing an insurance company, the reinsured is held to a high degree of compliance with policy provisions which require prompt notice to the reinsurer when a loss occurs which may potentially be within policy coverage.") (quoting George J. Couch, 19 *Couch on Insurance* § 80:71 at 681 (2d ed. 1983)).

The determination of what constitutes prejudice sufficient to establish a material breach must be made in the context of the purpose of notice under the Facultative Certificate. As the Second Circuit explained, "Prompt notice provisions in reinsurance are designed to: (i) apprise the reinsurer of potential liabilities to enable it to set reserves; (ii) enable the reinsurer to associate in the defense and control of underlying claims; and (iii) assist the reinsurer in determining whether and at what price to renew reinsurance coverage." *Unigard*, 4 F.3d at 1065. *See also* Barry R. Ostrager & Mary Kay Vyskocil, *Modern Reinsurance Law and Practice* § 8 at 8-3 (2d ed. 2000).

1.   Argonaut Suffered Substantial Prejudice By AIG's "Inherent Conflicts" In Handling The Claim

The standard announced by the New York Court of Appeals in *Unigard* does not foreclose consideration of the right to associate as part of the prejudice that can support a late notice defense. Instead, in *Unigard* the reinsurer's only argument was that the loss of the right

21

was prejudicial "in and of itself." *Unigard*, 4 F.3d at 1069. The courts refused to consider the loss of a right to associate as prejudice "in and of itself" because "the interests of a reinsurer and the ceding primary insurer with respect to a pending claim are generally identical." *Unigard*, 79 N.Y.2d at 583, 594 N.E.2d at 574, 584 N.Y.S.2d at 293; *see also Unigard*, 4 F.3d at 1068.

But in this case, the interests of Argonaut as the reinsurer and ICSOP as the primary ceding insurer were not identical. This was because of the ███████████████████████ ████████████████████ when reporting on the strategy for responding to Truck's summary judgment motion. The interests of the 1974 ICSOP Policy (and thus of Argonaut) differed substantially from the interests of the other AIG policies. This was because, ████████████ ████████████████████ most of the policies contained aggregate limits but the 1974 ICSOP Policy did not. That fundamental difference in policy provisions meant that a coverage position that would be beneficial to most of the AIG policies (that all of the asbestos claims were multiple occurrences) would also dramatically increase the exposure to the 1974 ICSOP Policy. Rather than considering solely the interests of the reinsured 1974 ICSOP Policy (or giving notice to Argonaut so that it could consider the interests of that reinsured policy), AIG had a single firm handle the case to look after the interests of AIG as a whole rather than the individual policies.

These inherent conflicts were not speculative. It led to AIG first taking no position on Tuck's motion and then actually opposing the motion seeking a finding that the asbestos claims arose from one occurrence – a finding that, ███████████████████████, would likely have been the most favorable for the 1974 ICSOP Policy without an aggregate limit. The positions taken ultimately led to findings by the courts that the claims were multiple occurrences and that all of those multiple occurrences could be presented to the 1974 year where the policies had no aggregate limits, resulting in liability for Argonaut well in excess of the reinsured policy's single

occurrence limit. AIG's failure to give Argonaut notice of the claim made it impossible for Argonaut to consider these issues and protect the interests of the 1974 ICSOP Policy *vis-a-vis* the interests of the other AIG policies that Argonaut did not reinsure.

The record shows no evidence of any settlement discussions until the judge proposed mediation *after* the adverse rulings. The prejudice from lack of notice was further exacerbated by the failure to give Argonaut notice prior to the time AIG finally negotiated its settlement in principle with Kaiser, Truck, and the London Market Insurers. While ███ negotiated an agreement from the ███████████████████████████████, it failed to obtain contribution from the policies of any other insurers whose policies were triggered by the asbestos claims – including, most notably, the other policies issued by ICSOP and the other AIG member companies. Indeed, it appears that contribution from those policies was not even considered. *See* Ex. 1 (DiCaprio Dep.) at 117-120. This kept the liability with ████████████ ████████ and away from the other involved AIG policies. Thus, AIG's late notice not only deprived Argonaut the ability to pursue earlier settlement discussions but also to ensure that there was equitable contribution as part of the settlement. *See Nat'l Union Fire Ins. Co. v. Gen. Star Indem. Co.*, 216 F.App'x 273, 281 (3d Cir. 2007) (affirming decision under California law granting summary judgment to excess insurer on late notice defense finding substantial prejudice where late notice "deprived [excess insurer] of any opportunity to assess whether [primary insurer's] failure to explore settlement was reasonable and prevented [excess insurer] from participating in, and perhaps effecting, a better outcome."); *Ins. Co. of Ireland, Ltd. v. Mead Reinsurance Corp.*, No. 88 CIV. 8779 (PKL), 1994 WL 605987, at *8 (S.D.N.Y. Nov. 4, 1994) (explaining that foreclosing opportunity of reinsurer to assist in settlement negotiations could constitute prejudice).

The inherent conflicts presented by AIG's management of the claims made Argonaut's ability to associate critical, and AIG's late notice made deprivation of that right substantially prejudicial in this case.

2.   Argonaut Suffered Substantial Prejudice By The Commutation Of Its Retrocession Without Notice Of The Claim From ICSOP

The record also establishes that Argonaut suffered substantial prejudice as a result of the loss of a substantial portion of its retrocession through commutations in the period after ICSOP was required to provide Argonaut with notice.  As the Second Circuit explained, one of the purposes of requiring prompt notice under reinsurance agreements is to permit the reinsurer to establish proper reserves for claims.  *Unigard*, 4 F.3d at 1065.  Such proper reserving is critical to a reinsurer when it comes to considering whether to commute with its own retrocessionaires and at what price.  The claims advised by a reinsured to its reinsurer will directly influence the price at which the reinsurer will agree to commute with its retrocessionaires.  For this reason, the economic effect of a commutation of a reinsurer's own retrocession for a claim falls squarely within the type of prejudice contemplated by the prejudice requirement.  *See Ins. Co. of Ireland*, 1994 WL 605987, at *8 ("A reinsurer would be harmed if it was under-reserved as a result of its ignorance of an imminent liability.  It would equally be injured if it was unable to secure its own reinsurance."); Janet Burak Melchione & James H. Foster, *Late Notice of Reinsurance Claims*, 29 Tort & Ins. L.J. 773, 792 (1994) ("Because commutations are priced, at least in part, on the basis of current reserves, a reinsurer may be able to demonstrate prejudice if it commuted a contract at an inadequate price because the ceding company's late notice left the reinsurer with no, or understated, reserves.").

Here the record establishes that, in the many years between the time ICSOP was obligated to provide notice and the time ICSOP finally did provide notice, Argonaut commuted

██████████ of its available retrocession for the Kaiser claim.  Because of ICSOP's late notice, Argonaut concluded those commutations without being able to consider the effect of the Kaiser claim – the single largest facultative reinsurance claim in Argonaut's entire book.  That prejudice is tangible, economic, and substantial.

Accordingly, ICSOP's breach of its obligation to provide prompt notice was (and continues to be) material, and Argonaut should therefore be relieved of any obligation to indemnify ICSOP under the Facultative Certificate.

## CONCLUSION

For the reasons set forth herein, Argonaut respectfully requests that the Court enter summary judgment dismissing the complaint with prejudice.

New York, New York
May 17, 2013

Respectfully Submitted,

By: _____
     Sean Thomas Keely
     Benjamin J.O. Lewis
     Pooja Boisture
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
sean.keely@hoganlovells.com
ben.lewis@hoganlovells.com
pooja.boisture@hoganlovells.com

*Attorneys for Defendant*
*Argonaut Insurance Company*

25