UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

THE INSURANCE COMPANY OF THE STATE   :
OF PENNSYLVANIA,   :
  :
  :   1:12-cv-06494-DLC
            Plaintiff,   :
  :
          vs.   :
  :
ARGONAUT INSURANCE COMPANY,   :
  :
           Defendant.   :
  :
  :
  :
  :

-----------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Plaintiff The Insurance
Company of the State of Pennsylvania*

Andrew S. Amer,
Rae C. Adams,
    *Counsel.*

# Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................ 1

COUNTERSTATEMENT OF FACTS .................................................................... 4

    A.  ICSOP Maintains An Automated System For Providing Notice To Reinsuers ............... 4

    B.  ICSOP Miscodes the Reinsurance Coverage For The Excess Policy ............................. 6

    C.  ICSOP Sends Earlier Notices Of Kaiser Asbestos Claims To Argonaut Under Another Reinsurance Contract ............................................................................... 7

ARGUMENT .......................................................................................................... 9

I.   THE PARTIES' REINSURANCE CONTRACT IS GOVERNED BY CALIFORNIA LAW ............................................................................................ 9

    A.  There Is A Clear Conflict Between The Laws Of California And New York Regarding The Elements Of A Late Notice Defense Under A Reinsurance Contract ............................................................................................................. 9

    B.  Under New York's Choice-of-Law Rules, California Law Applies to the Parties' Reinsurance Contract ............................................................................ 12

II.  ARGONAUT HAS NOT SATISFIED ITS HEAVY BURDEN OF ESTABLISHING ACTUAL AND SUBSTANTIAL PREJUDICE AS REQUIRED UNDER CALIFORNIA LAW ..................................................... 12

    A.  Argonaut Has Suffered No Prejudice From ICSOP's Conduct In The California Coverage Litigation ............................................................................ 13

    B.  Argonaut Has Suffered No Prejudice From ICSOP's Settlement ................... 17

    C.  Any Claimed Prejudice With Respect To Commutations Is Legally Irrelevant and, by Argonaut's Own Admission, "Pure Speculation" ............................... 19

III.  GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER ARGONAUT RECEIVED EARLIER CONSTRUCTIVE NOTICE OF THE KAISER LOSS ............. 24

CONCLUSION ...................................................................................................... 25

## Cases

*AIU Inc. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052 (SJS), 2013 WL 1195258 (S.D.N.Y. Mar. 25, 2013).................................................................................................................. 10

*Bolinger v. Nat'l Fire Ins. Co.*, 25 Cal.2d 399 (1944) ................................................. 10

*Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414 (2d Cir. 2001) ................................. 9, 12

*California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1 (1985) .................... 24, 25

*Campbell v. Allstate Ins. Co.*, 60 Cal. 2d 303 (1963) ................................................. 10

*Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268 (2d Cir. 1992)............................................................................................................. 10

*Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865 (1978) ............................................... 10

*Doe v. Life Ins. Co. of North Am.*, 737 F. Supp. 2d 1033 (C.D. Cal. 2010) .................... 13

*Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278 (2d Cir. 1981) ................................. 10

*Fireman's Fund Ins. Co. v. Superior Ct.*, 233 Cal. App. 3d 1138 ................................. 15

*Folksamerica Reinsurance Co. v. Republic Ins. Co.*, 182 Fed. Appx. 63 (2d Cir. 2006)............ 12

*Ins. Co. of Ireland, Ltd. v. Mead Reinsurance Corp.*, No. 88 Civ. 8779 (PKL), 1994 WL 605987 (S.D.N.Y. Nov. 4, 1994) ............................................................................... 11, 19

*Ins. Co. of the State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516 (9th Cir. 1990).......... passim

*London Market Insurers v. Superior Ct.*, 146 Cal. App. 4th 648 (2007)........................ 16

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Gen. Star Indem. Co.*, 216 Fed. Appx. 273 (3d Cir. 2007) ................................................................................................... 19

*Northwestern Title Sec. Co. v. Flack*, 6 Cal.App.3d 134 (1970) ................................. 17

*OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal. App. 4th 183 (2009) .......... 11

*Pacific Employers Ins. Co. v. Superior Court*, 221 Cal. App. 3d 1348 (1990) .................... 10

*Pacific Mut. Life Ins. Co. v. Pacific Sur. Co.*, 69 Cal. App. 730 (1924)........................ 15

*Roofing Consultants v. Scottsdale Ins. Co.*, 273 A.D.2d 933 (4th Dep't 2000) ................ 12

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715 (Cal. Ct. App. 1993)......... 11, 13

*Steadfast Ins. Co. v. Dobbas*, No. CIVS05-0632FCD JFM, 2006 WL 89512 (E.D. Cal. Jan. 11, 2006) ......................................................................................... 16, 17, 19, 23

*Travelers Cas. & Sur. Co. v. Gerling Global Reins. Corp. of Am.*, 419 F.3d 181 (2d Cir. 2005)........................................................................................................................ 14

*Travelers Cas. and Sur. Co. v. Dormitory Auth.*, No. 07 Civ. 6915 (DLC), 2008 WL 4861910 (S.D.N.Y. Nov. 5, 2008) ......................................................................... 9, 12

*Truck Ins. Exch. v. Cement*, No. BC249550, 2006 WL 5838335 (Jan. 10, 2006) ....................... 16

*Twin City Fire Ins. Co., Inc. v. Mitsubishi Motors Credit of Am., Inc.*, No. SA CV 04-43-GLT (MLGx), 2005 WL 5980994 (C.D. Cal. Feb. 22, 2005)........................................... 11, 13

*Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993) .................. 10, 12

**Statutes**

Cal. Civ. Code. § 19........................................................................................................ 11

**Other Authorities**

Cal. Prac. Guide Ins. Lit. Ch. 7B-D, § 7:615 (Rutter 2012) ........................................................ 12

Plaintiff The Insurance Company of the State of Pennsylvania ("ICSOP"), by and through its undersigned attorneys, respectfully submits this Memorandum of Law, along with the Declarations of Andrew S. Amer, Esq. (the "Amer Opp. Decl.") and Chris Magnotta (the "Magnotta Decl.") in opposition to the motion of defendant Argonaut Insurance Company ("Argonaut") for summary judgment premised upon alleged late notice.

## PRELIMINARY STATEMENT

Argonaut contends that ICSOP should have provided notice more than two decades ago -- before coverage rulings in the California Coverage Litigation suggested that the Excess Policy might be obligated to pay Kaiser asbestos losses and before Kaiser tendered to ICSOP specific asbestos claims involving amounts in excess of the $500,000 limit of the underlying primary policy.[1]  At a minimum, there are issues of fact concerning whether Argonaut received constructive notice of the Kaiser asbestos claims in either 2000 or 2002 under another reinsurance contract between ICSOP and Argonaut sufficient to satisfy ICSOP's notice obligation under the Fac Cert.  However, the Court need not delve into these disputed factual issues to dispose of Argonaut's motion because Argonaut fails to meet its heavy burden of establishing the requisite actual and substantial prejudice arising from any purported delay in ICSOP's notice.  Absent such a showing, Argonaut's late notice defense fails regardless of whether ICSOP's notice is deemed late.

Argonaut seeks to avoid application of the strict notice-prejudice rule under California law by arguing that there is no real conflict between California and New York law concerning a late notice defense.  Argonaut is wrong.  As set forth in ICSOP's brief in support of its motion for partial summary judgment, the prejudice requirement under California law is far

---

[1]    The defined terms in this opposition brief are the same as those used in ICSOP's opening brief in support of its motion for partial summary judgment.

more stringent than under New York law.  Because there is an actual conflict between the laws

of California and New York about the standard applicable to a reinsurer's late notice defense, the

Court must conduct a choice of law analysis, and in doing so should apply California law

because the Fac Cert was negotiated, issued and bound in California to cover a California risk.

Argonaut maintains that it has been prejudiced in three ways as a result of the alleged

delay in ICSOP's notice, none of which survives minimal scrutiny.

First, Argonaut argues that ICSOP failed to adequately protect the interests of the

Excess Policy due to an "inherent conflict" and therefore Argonaut was prejudiced by the loss of

its opportunity to associate in the California Coverage Litigation defense to ensure that the

interests of the Excess Policy were pursued.  As a threshold matter, any suggestion that Argonaut

would have associated in the defense had it received earlier notice is pure speculation at best;

Argonaut's 30(b)(6) witness on prejudice, Chris Hollender, testified that he knows of no prior

instance where Argonaut exercised that right under its facultative certificates.  He also testified

that the position taken by ICSOP in the California Coverage Litigation was correct and he was

unable to articulate any different position Argonaut would have suggested be taken.  In any

event, Argonaut was not in a position to dictate what position ICSOP should take in the coverage

litigation because as a matter of reinsurance law, ICSOP's good faith coverage determinations

are binding on Argonaut under the "follow the fortunes" doctrine; as a reinsurer, Argonaut has

no right to direct ICSOP's coverage positions or settlement strategy.  Accordingly, there is no

basis to conclude that any contrary position Argonaut would have theoretically suggested would

have been adopted by ICSOP.  Finally, the coverage position Argonaut now claims it would have

pursued to protect the interests of the Excess Policy was strenuously advanced by another party

and was ultimately rejected by the California appellate court. Accordingly, there was no prejudice because the outcome would have been no different.

Second, Argonaut contends it was prejudiced by the lost opportunity to participate in settlement negotiations. Mr. Hollender's deposition testimony also undermines any suggestion that Argonaut would have achieved any better settlement terms; he was unable to articulate what different outcome in the settlement Argonaut would have tried to achieve. Nor is there any reason to conclude that other insurers would have been willing to agree to contribute to the funding arrangement set forth in the Settlement when the court rulings in the California Coverage Litigation placed the funding obligation squarely on ICSOP's shoulders. Under California law, Argonaut's pure speculation as to what it might have achieved in settlement negotiations is insufficient to establish the requisite prejudice.

Third, Argonaut maintains that it has suffered prejudice as a result of commutations it has entered into with its retrocessionaires prior to receiving notice from ICSOP. Under California law, this type of "collateral matter" cannot give rise to actual and substantial prejudice. *Ins. Co. of the State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 525 (9th Cir. 1990). In any event, Argonaut's argument fails to establish that it suffered any "loss" with respect to the commutations because it has not proffered any evidence showing that if it had received earlier notice it would have either decided against entering into the commutations or would have successfully negotiated a better price. Nor has Argonaut shown that the compensation it did receive from its retrocessionaires to cover future losses (known as "IBNR") plus accrued investment income is less than what it otherwise would have collected absent the commutations. Finally, Argonaut cannot establish actual and substantial prejudice based on the

commutations *arising from* late notice because the earliest date ICSOP was arguably required to give notice was late 2002, *after* Argonaut had already entered into most of the commutations.

Because there is no evidence upon which a reasonable jury could find that Argonaut suffered any prejudice arising from ICSOP's notice – much less "actual and substantial" prejudice as required by California law – Argonaut's motion for summary judgment should be denied in its entirety.

Finally, putting aside the issue of prejudice, Argonaut's motion should still be denied because there are genuine issues of material fact that preclude the Court from finding on summary judgment that ICSOP's notice was late.  ICSOP has proffered evidence that Argonaut received notice of the Kaiser asbestos claims from ICSOP in 2002 (and possibly as early as 2000) under another reinsurance contract between the parties, which would constitute constructive notice under the Fac Cert as a matter of California law.  Argonaut denies receiving this earlier notice.  Assuming the Court does not dispose of Argonaut's late notice defense based on Argonaut's failure to show the requisite prejudice, the dispute over whether Argonaut received earlier notice must be resolved at trial, not on summary judgment.

## COUNTERSTATEMENT OF FACTS

For the sake of brevity, ICSOP incorporates by reference herein the Statement of Facts set forth in its brief submitted in support of its motion for partial summary judgment. ICSOP provides below those additional facts necessary for the Court's consideration of ICSOP's opposition to Argonaut's summary judgment motion.

**A.      ICSOP Maintains An Automated System For Providing Notice To Reinsurers**

During the relevant period, ICSOP had in place an automated system for providing notice to its reinsurers.  From the 1980s through August 2003, the automated system was known as "LMS."  Since August 2003, ICSOP has used an automated system known as

"SCI." For present purposes, both systems function in the same manner. Magnotta Decl. ¶ 4. When ICSOP issues a direct insurance policy, the underwriter (here, CV Starr) completes a "layoff sheet" showing all of the applicable reinsurance for that policy, both treaty and facultative.[2] The layoff sheet is then coded into the automated system to create a "reinsurance rule" for the policy. The reinsurance rule contains information for each reinsurance contract identifying the reinsurer, the type of reinsurance (treaty or facultative), the layer in which the reinsurance applies, the reinsurer's percentage share and the manner in which the reinsurance applies (either "excess of loss" or "quota share").[3] Magnotta Decl. ¶ 5.

For an excess of loss reinsurance contract, the automated system is programmed to generate a notice to the reinsurance broker (or reinsurer for non-brokered business) once ICSOP's reserve reaches 50% of the contract's attachment point. Where the reinsurance contract is written on a quota share basis (as was the case here[4]), the system is programed to generate a notice to the reinsurance broker (or reinsurer for non-brokered business) as soon as a claim file is opened. Magnotta Decl. ¶¶ 6-7.

Based on the way the automated system was designed and intended to operate, LMS should have generated a notice to the reinsurance broker (Guy Carpenter) with respect to Kaiser's asbestos claims under the Fac Cert when ICSOP established the first asbestos claim file

---

[2]    Treaty reinsurance is a form of reinsurance in which all risks falling within the terms of the treaty are reinsured in accordance with treaty terms; under facultative reinsurance, the ceding company negotiates an individual reinsurance agreement for every policy it will reinsure, and the reinsurer is not obligated to accept each submission. *See* Amer Opp. Decl., Ex. 2.

[3]    Excess of loss insurance indemnifies the cedent for the portion of loss exceeding its retention; with quota share reinsurance, the cedent cedes a certain percentage of every risk it insures from the first dollar of loss. *See* Amer Opp. Decl., Ex. 2.

[4]    For practical purposes, there is no distinction between quota share and "contributing excess," the basis on which the Fac Cert was written as indicated in the declarations. Magnotta Decl. ¶ 7.

for Kaiser under the Excess Policy. As explained below, that did not occur because of a coding error unique to the circumstances of the reinsurance layoff for the Excess Policy.[5]

## B.     ICSOP Miscodes the Reinsurance Coverage For The Excess Policy

Argonaut originally issued the Fac Cert for a three-year period coinciding with the term of the Excess Policy, from January 1, 1974 to January 1, 1977. In accordance with this original placement, the layoff sheet for the Excess Policy effective January 1, 1974 listed the Fac Cert issued by Argonaut as one of the applicable reinsurance contracts. However, by endorsement, the Fac Cert was cancelled effect May 1, 1975, at which point the coverage provided by Argonaut was replaced by a facultative certificate issued by another reinsurer, North American Managers, Inc. ("N.A.M."). When this occurred, CV Starr prepared a new layoff sheet effective May 1, 1975 listing the N.A.M. facultative certificate in place of the Argonaut Fac Cert. Magnotta Decl. ¶¶ 8-9 and Ex. 1.

Notwithstanding the existence of two separate layoff sheets – one effective January 1, 1974 listing the Fac Cert and one effective May 1, 1975 listing the N.A.M. certificate – the reinsurance rule created in LMS for the Excess Policy was based solely on the later layoff sheet listing only the N.A.M. certificate. This was clearly an oversight; the Fac Cert was in effect from January 1, 1974 through May 1, 1975 and the N.A.M. certificate did not become effective until May 1, 1975, so both certificates should have been coded into the reinsurance rules. Instead, ICSOP incorrectly coded in LMS the N.A.M. certificate as applying for the entire three-year policy period without any indication of Argonaut's Fac Cert. Magnotta Decl. ¶ 13.

---

[5]     Argonaut makes the sweeping, conclusory assertion that ICSOP and its affiliates "frequently" provided late notice of claims, but offers no documentary proof to support that assertion. Argonaut Opening Br. at 9-10. Although not relevant to Argonaut's motion, it is certainly an assertion ICSOP vigorously disputes.

Because of this coding error, when the current master file for Kaiser asbestos claims was opened in August 2002 coincident with Kaiser naming ICSOP as a defendant in the California Coverage Litigation, the LMS system generated a notice of loss to N.A.M., but not to Argonaut.  Magnotta Decl. ¶ 12 and Ex. 3.  The coding error remained undiscovered until April 2009, when Chris Magnotta, a Reinsurance Director for AIG (ICSOP's parent company), obtained the original layoff sheet for the Excess Policy and compared it to the reinsurance rule in the automated system and noticed that the Argonaut Fac Cert was not included.  He asked that the Fac Cert be added to the reinsurance rule on April 29, 2009, which caused the system to generate and send a notice dated June 3, 2009 to Guy Carpenter addressed to Argonaut under the Fac Cert with respect to the Kaiser asbestos claims. Magnotta Decl. ¶¶ 10-11 and Ex. 2; Amer Opp. Decl., Ex. 5 and Ex. 6.

## C.   ICSOP Sends Earlier Notices Of Kaiser Asbestos Claims To Argonaut Under Another Reinsurance Contract

In addition to providing reinsurance to ICSOP for the Excess Policy under the Fac Cert, Argonaut also reinsured the Excess Policy under a reinsurance treaty known as the Miscellaneous Special Business Treaty ("MSB Treaty").  Pursuant to the MSB Treaty, Argonaut and other reinsurers agreed to provide quota share reinsurance in varying percentages with respect to certain policies issued by CV Starr, including the Excess Policy.  Because the MSB Treaty was written on a quota share basis, the automated system was programmed to generate notice to the MSB Treaty reinsurers as soon as ICSOP set up a claim file for any reinsured policy.  Magnotta Decl. ¶ 14.

Unlike the situation with the Fac Cert, the MSB Treaty was included in the reinsurance rule in LMS for the Excess Policy.  A review of the system records shows there were at least two early notices generated by the automated system and sent to Guy Carpenter for

distribution to the MBS Treaty reinsurers relating to Kaiser asbestos claims under the Excess

Policy: a notice dated April 24, 2000 and another dated April 16, 2002. Magnotta Decl. ¶ 15 and

Exs. 4-5.  Although Argonaut's document production did not include copies of these notices, as

discussed below the evidence strongly suggests that Argonaut received at least the second notice.

   With respect to notices and bills sent by ICSOP to Guy Carpenter under the MSB

Treaty between April 1999 and September 2001 (including the April 24, 2000 notice), those

notices and bills were being withheld from reinsurers by Guy Carpenter because they contained

an error in the treaty participation share that required correction.  Unfortunately, before the error

was corrected by ICSOP, Guy Carpenter's offices at Two World Trade Center were destroyed in

the 9/11 terrorist attack and all of those records were lost.[6]  In a memo from Guy Carpenter to

the MSB Treaty participants dated June 16, 2003, the MSB Treaty participants were: (i) advised

that the notices and bills being withheld pending correction had been lost in the World Trade

Center attack; and (ii) provided with "AIG's summaries by insured for the period of January

1993 through January 2003" and "Guy Carpenter's summary of proofs for each insured that was

previously bill to all [reinsurers]."  Magnotta Decl. ¶ 16 and Ex. 6.

   With respect to the April 16, 2002 notice, which was sent to Guy Carpenter's San

Francisco office several months after the 9/11 attacks, there is no evidence in Guy Carpenter's

files suggesting that the notice was destroyed or otherwise was not forwarded on to the MSB

Treaty participants, including Argonaut.

   After receiving at least the April 16, 2002 notice under the MSB Treaty, Argonaut

would have had ample opportunity to review the Kaiser asbestos files at ICSOP's offices during

---

[6]   The April 24, 2000 notice was addressed to Guy Carpenter at Two World Trade Center.
Magnotta Decl., Ex. 4.

one of its annual audits if it had requested to do so.  Amer Opp. Decl., Ex. 3 at 117:25-118:10,

Ex. 4 at 87:3-88:11.

## ARGUMENT

### I.    THE PARTIES' REINSURANCE CONTRACT IS GOVERNED BY CALIFORNIA LAW

#### A.    There Is A Clear Conflict Between The Laws Of California And New York Regarding The Elements Of A Late Notice Defense Under A Reinsurance Contract

As set forth in Point I.A. of ICSOP's opening brief in support of its motion for

partial summary judgment (incorporated by reference herein), the Court must first determine

"[u]nder New York's choice-of-law rules, . . . 'whether there is an actual conflict between the

laws invoked by the parties.'" *Travelers Cas. and Sur. Co. v. Dormitory Auth.*, No. 07 Civ. 6915

(DLC), 2008 WL 4861910, *2 (S.D.N.Y. Nov. 5, 2008) (Cote., J.) (*citing Booking v. Gen. Star*

*Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001)).  Argonaut contends that "there is no conflict

between New York and California law regarding the standards applicable to a defense of late

notice on a reinsurance contract," and therefore concludes the Court should apply New York law.

Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Argonaut's

Opening Br.") at 16-17.

Argonaut's contention is wrong as evidenced by Argonaut's own admission in

footnote 6 of its opening brief, in which Argonaut acknowledges that the Second Circuit has

interpreted New York law to allow a reinsurer to "prevail on a late notice defense *without*

*showing prejudice* if the reinsurer can show that the failure of the reinsured to provide timely

notice was the result of bad faith or gross negligence."[7]  Argonaut Opening Br. at 16, n.6

(emphasis added) (*citing Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049 (2d Cir.

---

[7]    Argonaut purports to reserve the right to support its late notice defense based on this alternative
prong of New York law in the next phase of this case (if necessary). Argonaut Opening Br. at 16,
n.6.

1993) and *Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268 (2d Cir.

1992)); *see also* Memorandum of Law in Support of Plaintiff's Motion for Partial Summary

Judgment ("ICSOP Opening Br.") at 13-14.

      In contrast to New York law, California law does not recognize any bad faith or

gross negligence exception to a reinsurer's obligation to prove prejudice. Rather, under

California law, "in order to avoid liability on the basis of a breach of the notice clause, [a

reinsurer] must establish actual and substantial prejudice." *Ins. Co. of the State of Pa. v.

Associated Int'l Ins. Co.*, 922 F.2d 516, 523 (9th Cir. 1990) ("*Associated*") (*citing Campbell v.

Allstate Ins. Co.*, 60 Cal. 2d 303, 305-06 (1963), *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865,

882 (1978), and *Pacific Employers Ins. Co. v. Superior Court*, 221 Cal. App. 3d 1348, 1357

(1990)). The Ninth Circuit's decision in *Associated* is binding on this court under the Second

Circuit's opinion in *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278 (2d Cir. 1981), which holds

that when a circuit court sitting in diversity "has essayed its own prediction of the course of state

law on a question of first impression" in a state in its jurisdiction, "the federal courts of other

circuits should defer to that holding, perhaps always . . . ." *Id.* at 283; *see also AIU Inc. Co. v.

TIG Ins. Co.*, No. 07 Civ. 7052 (SJS), 2013 WL 1195258, at *10 (S.D.N.Y. Mar. 25, 2013)

(Stein, J.) (S.D.N.Y. March 25, 2013) (holding *Factors* bound court to apply Seventh Circuit

case interpreting Illinois law on late notice in reinsurance context).

      Moreover, the bar for proving prejudice under California law is exceedingly high

because of "California's strong public policy against 'technical forfeitures.'" *Associated*, 922

F.2d at 524 (*quoting Bolinger v. Nat'l Fire Ins. Co.*, 25 Cal.2d 399, 405 (1944)). A reinsurer

asserting late notice "must show actual prejudice, not the mere possibility of prejudice. . . .

[P]rejudice does not arise merely because a delayed or late notice has denied the insurance

company the ability to contemporaneously investigate the claim or interview witnesses . . . [or] the opportunity to make an early settlement of the claim." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 761 (Cal. Ct. App. 1993) (citations omitted).   To satisfy its "heavy burden" under California law, *see Associated*, 922 F.2d at 524, a reinsurer "must demonstrate that it was prejudiced in the handling of an underlying claim in one of two ways: (1) it would have settled the claim for less, or (2) it would have taken steps to reduce or eliminate Defendant's liability." *Twin City Fire Ins. Co., Inc. v. Mitsubishi Motors Credit of Am., Inc.*, No. SA CV 04-43-GLT (MLGx), 2005 WL 5980994, at *1 (C.D. Cal. Feb. 22, 2005).   Collateral matters, such as the inability of a reinsurer to collect from one of its retrocessionaires due to delay in notice, are insufficient to establish the requisite prejudice under California law. *Associated*, 922 F.2d at 524.   Courts applying New York law do not appear to impose as heavy a burden on reinsurers. *See, e.g., Ins. Co. of Ireland, Ltd. v. Mead Reinsurance Corp.*, No. 88 Civ. 8779 (PKL), 1994 WL 605987, at *8 (S.D.N.Y. Nov. 4, 1994) (finding lost opportunity of reinsurer to assist in settlement negotiations, post timely reserves and secure retrocessional coverage could constitute prejudice).

Finally, there is a material difference between California and New York law with respect to the doctrine of constructive notice.   Pursuant to California statute and precedent, notice under an insurance policy "can be either formal or constructive." *See OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal. App. 4th 183, 200 (2009); Cal. Civ. Code § 19; Cal. Prac. Guide Ins. Lit. Ch. 7B-D, § 7:615 (Rutter 2012).   In contrast, the concept of constructive notice does not apply in the insurance context under New York law.   The general rule in New York is that "[n]either notice provided by another insured nor the insurer's actual knowledge of the claim satisfies the contractual obligation of an insured to give timely notice." *See Roofing*

*Consultants v. Scottsdale Ins. Co.*, 273 A.D.2d 933 (4th Dep't 2000); *see also Unigard,* 4 F.3d at 1066 (holding notice provided to reinsurer under treaties did not satisfy reinsured's notice obligation under separate facultative certificates); *Folksamerica Reinsurance Co. v. Republic Ins. Co.*, 182 Fed. Appx. 63, 64 (2d Cir. 2006) (*citing Unigard* and "reject[ing] the treaty-certificate notice as a basis for upholding the facultative-certificate judgments").

Accordingly, there is a clear conflict between the laws of California and New York requiring this Court to apply New York's choice-of-law rules governing disputes involving insurance contracts. *See generally Travelers*, 2008 WL 4861910, *2 (Cote, J.) (holding conflict existed on late notice law where one jurisdiction required prejudice and the other did not).

**B.  Under New York's Choice-of-Law Rules, California Law Applies to the Parties' Reinsurance Contract**

As set forth more fully in ICSOP's opening brief in support of its motion for partial summary judgment, an analysis under New York's choice-of-law rules leads to only one conclusion: California law governs the Fac Cert, a reinsurance contract underwritten by Argonaut in California, issued through a California-based broker and delivered to ICSOP's California-based managing underwriter and reinsuring a policy governed by California law and covering a California risk. *See* ICSOP Opening Br. at Point I.B. Argonaut does not, and cannot, point to any factor under New York's "grouping of contacts" test that would weigh in favor of applying New York law. Accordingly, the Court should apply California law. *See Booking*, 254 F.3d at 423.

**II.  ARGONAUT HAS NOT SATISFIED ITS HEAVY BURDEN OF ESTABLISHING ACTUAL AND SUBSTANTIAL PREJUDICE AS REQUIRED UNDER CALIFORNIA LAW**

As discussed above, "California case law place[s] a heavy burden on an insurer seeking to defend on the ground of breach of the notice clause." *See Associated*, 922 F.2d at 524

(citations omitted); *see also Doe v. Life Ins. Co. of North Am.*, 737 F. Supp. 2d 1033, 1043 (C.D. Cal. 2010) ("Prejudice is hard to show under the rule."). In order to satisfy this "heavy burden," a reinsurer "must demonstrate it was prejudiced in the handling of an underlying claim in one of two ways: (1) it would have settled the claim for less, or (2) it would have taken steps to reduce or eliminate Defendant's liability." *Twin City*, 2005 WL 5980994 at *1. Accordingly, "prejudice does not arise merely because a delayed or late notice has denied the insurance company . . . the opportunity to make an early settlement of the claim." *Shell Oil Co.*, 12 Cal. App. 4th at 761 (citations omitted). The reinsurer must demonstrate a "substantial likelihood that it could have either defeated the underlying claim against its insured, or settled the case for a smaller sum than that for which its insured ultimately settled the claim." *Associated*, 922 F.2d at 524. Argonaut has not met this heavy burden.

A.    **Argonaut Has Suffered No Prejudice From ICSOP's Conduct In The California Coverage Litigation**

Argonaut contends that there was an "inherent conflict" with respect to ICSOP's posture in the California Coverage Litigation because ICSOP's interests in the Excess Policy (which has no aggregate limit) "differed substantially" from ICSOP's interests in its other policies and those policies issued by its affiliates (which did have aggregate limits); according to Argonaut, the "inherent conflict" arose because the most beneficial coverage position under the Excess Policy was to treat all of Kaiser's asbestos claims as a single occurrence while the most beneficial coverage position under the other policies issued by ICSOP and its affiliates was to treat each asbestos claim as a separate occurrence. Argonaut Opening Br. at 22. Argonaut argues that it was prejudiced because the single law firm representing ICSOP and its affiliates, Lynberg & Watkins, was hobbled by this purported "inherent conflict" and ICSOP's delayed notice deprived Argonaut of an opportunity to associate in the defense of the coverage action in

order to "protect the interests" of the Excess Policy it reinsured.[8]  *Id.* at 23.  Argonaut's argument

is factually and legally devoid of merit for numerous reasons.

      First, Argonaut's suggestion that it suffered prejudice as a result of losing the

opportunity to associate in the defense of the California Coverage Litigation because it would

have sought to urge a different position on the "number of occurrences" issue to protect its

interests in the Excess Policy is undermined by the record.  Argonaut's Mr. Hollender testified

that the position taken by ICSOP in the California Coverage Litigation was "correct" and

Argonaut would not have suggested anything different.  Amer Opp. Decl., Ex. 3 at 164:14-

165:10 (emphasis added).  Moreover, Mr. Hollender acknowledged that he does not recall a

single instance in which Argonaut has exercised its right to associate in the defense of a claim

under one of its facultative certificates.  *Id.* at 143:22-144:2.

      Argonaut is not free to argue it has suffered prejudice based on some course of

conduct its lawyers now argue in a brief it would have taken if notice had been provided sooner

when its own 30(b)(6) witness on prejudice has testified that Argonaut would have done nothing

of the sort and had never before exercised its right to associate in the defense under a facultative

certificate.  Based on the evidence, Argonaut has failed to show that "it would have taken steps

---

[8]  To the extent that Argonaut suggests there was something improper in having a single law firm represent ICSOP and its affiliates in the California Coverage Litigation with respect to all of their policies, Argonaut's position should be flatly rejected.  The proposition that an insurer should retain separate law firms to represent any "conflicting" interests it may have in multiple insurance policies has no supporting case law, would render complex coverage litigation unmanageable and would result in gross inefficiencies that would place an enormous burden on courts and litigants.  A reinsurer who reinsures only one of many policies issued by the reinsured assumes the risk that the reinsured may take coverage positions that are reasonable from the reinsured's broader perspective even though they are not favorable as to the specific reinsured policy.  *Cf. Travelers Cas. & Sur. Co. v. Gerling Global Reins. Corp. of Am.*, 419 F.3d 181, 191-92 (2d Cir. 2005) (a reinsured who chooses among multiple reasonable alternatives an allocation that maximizes its reinsurance recovery against a particular reinsurer does not act in bad faith).

to reduce or eliminate" ICSOP's liability under the Excess Policy if notice had been provided sooner. *See Twin City,* 2005 WL 5980994, at *1.

Second, under California law prejudice does not arise merely because a delay in notice has denied a reinsurer the opportunity to join in the underlying claim; the reinsurer must show that its intervention would have changed the outcome. *See Associated,* 922 F.2d at 524. Argonaut cannot make such a showing because ICSOP was not obligated to follow Argonaut's advice. While Argonaut has the right to "associate" with ICSOP, it has no right to dictate to ICSOP what coverage positions ICSOP should take vis-à-vis Kaiser. Indeed, it is Argonaut which is bound by the positions advanced by ICSOP under the well-settled doctrine of "follow the fortunes," pursuant to which a reinsurer may not second guess good faith coverage decisions by the reinsured. *See, e.g., Pacific Mut. Life Ins. Co. v. Pacific Sur. Co.,* 69 Cal. App. 730 (1924); *see also* ICSOP Opening Br. at 19. Moreover, under California law an insurer may act in bad faith if it allows its reinsurer to control its coverage decisions. *See Fireman's Fund Ins. Co. v. Superior Ct.,* 233 Cal. App. 3d 1138 (1991) (holding that communications between reinsurer and cedent may be relevant to an insured's bad faith claim if reinsurer exerted pressure on cedent). Accordingly, even if the record suggested that Argonaut would have sought to urge ICSOP to take a different position on the "number of occurrences" issue (which is not the case), ICSOP was not contractually obligated to accede to Argonaut's wishes and in fact was precluded by the duty of good faith it owed to Kaiser from doing so if it did not agree with Argonaut's position. Therefore, there is no basis to conclude that Argonaut's views would have had any impact on ICSOP's position taken in the California Coverage Litigation even if Argonaut would have (contrary to Mr. Hollender's testimony) sought to make its views known to ICSOP.

Third, Argonaut cannot show that any exercise of its right to associate would have achieved a better result because the position its lawyers now theorize it would have urged ICSOP to assert – that Kaiser's asbestos claims arose from one occurrence – was forcefully advanced by another party and was ultimately rejected by the appellate court. In its initial motion for summary adjudication, Truck argued that all asbestos bodily jury claims constituted a single occurrence. *See Truck Ins. Exch. v. Cement*, No. BC249550, 2006 WL 5838335 (Jan. 10, 2006). Though the trial court initially rejected this argument, on reconsideration in January 2006 it agreed with Truck that all asbestos injury claims constituted a single occurrence. *Id.* The London Market Insurers appealed the ruling, an appeal which Truck opposed, and in January 2007 the appellate court reversed the trial court and rejected the single occurrence theory. *See London Market Insurers v. Superior Ct.,* 146 Cal. App. 4th 648 (2007).

Because Argonaut's "interests" were strenuously advanced by Truck to no avail, Argonaut cannot credibly assert that its association would have made any difference in the outcome of the California Coverage Litigation. *See Associated*, 922 F.2d at 524; *Steadfast Ins. Co. v. Dobbas*, No. CIVS05-0632FCD JFM, 2006 WL 89512, at *3 (E.D. Cal. Jan. 11, 2006) (holding that "while plaintiffs present evidence of what they would have done if they had notice of the claim, plaintiffs do *not* present evidence that, if these steps had been taken, it was substantially likely that the arbitrator would have found for the insured . . . [or] settled for considerably less").

Accordingly, Argonaut has failed to meet its heavy burden of demonstrating prejudice from the purported "inherent conflict" and its alleged lost opportunity to associate in the defense.

**B.    Argonaut Has Suffered No Prejudice From ICSOP's Settlement**

Argonaut also asserts prejudice arising from its lost opportunity to participate in settlement negotiations, including a purported lost opportunity to pursue settlement prior to the date the adverse coverage rulings were issued. Argonaut's assertions are insufficient as a matter of law for two reasons.

First, "prejudice is not established . . . from the mere 'denial of the opportunity to make an early settlement of the claim.'" *Associated*, 922 F.2d at 524 (*quoting Northwestern Title Sec. Co. v. Flack*, 6 Cal.App.3d 134, 142-43, (1970)). Accordingly, Argonaut's complaint that it could have pursued earlier settlement discussions is insufficient to establish prejudice as a matter of law. *Id*. In any event, there is absolutely no evidence to suggest that Kaiser, Truck and ICSOP would have settled their coverage dispute prior to the court's critical coverage rulings on number of occurrences and stacking. Indeed, even after those rulings were issued the parties still were unable to achieve a final settlement through mediation; the settlement they reached is "interim" because it is contingent upon the outcome of ICSOP's appeal. Again, Argonaut's assertion that had it received notice sooner it could have successfully orchestrated an earlier, more beneficial settlement is pure speculation, not prejudice. *Steadfast*, 2006 WL 89512, at *4 ("the court [cannot] infer actual prejudice from the speculation of plaintiffs").

Second, under California law, the reinsurer must demonstrate "a substantial likelihood that it could have . . . settled the case for a smaller sum than that for which its [reinsured] ultimately settled the claim." *Associated*, 922 F.2d at 524. Argonaut maintains it suffered prejudice because it was purportedly deprived of the opportunity to "ensure that there was equitable contribution as part of the settlement" which would have lowered ICSOP's payment obligation. Argonaut Opening Br. at 23. As an initial matter, the equitable contribution

ICSOP obtained from the London Market Insurers under the Settlement was more than it was entitled to receive from them under the adverse court rulings, which was nothing. ICSOP Opening Br. at Point II.A. The London Market Insurers were nevertheless willing to contribute even though they were not obligated to under the court's rulings in exchange for the right to participate in the appeal. Amer Opp. Decl., Ex. 7. There is no evidence suggesting that Argonaut could have persuaded the London Market Insurers to contribute more than they did.

The same is true with respect to potential contribution from other insurers, including ICSOP's affiliates. The adverse coverage rulings placed the obligation to reimburse Kaiser for asbestos liability squarely on the shoulders of Truck and ICSOP and the 1974 policy year. There is no evidence to suggest that other insurers issuing policies in other years would have voluntarily agreed to contribute.[9] Argonaut's contention that it would have been able to "ensure that there was equitable contribution" is pure speculation that is undermined by the record. Even after reviewing the voluminous information from the California Coverage Litigation made available to Argonaut both before and through discovery, Mr. Hollender was unable to articulate what better settlement terms Argonaut could have achieved. Amer Opp. Decl., Ex. 3 at 173:10-174:4 (emphasis added).

Accordingly, the Court cannot infer prejudice from a purported lost opportunity to participate in settlement discussions based upon Argonaut's pure speculation – contrary to its own witness's testimony -- that it would have obtained greater contribution from other insurers, particularly in the absence of any obligation on their part to contribute anything under the court's

---

[9]     Argonaut suggests that ICSOP had somehow forfeited its right to seek contribution from other insurers and that ICSOP did not even consider this issue. Argonaut Opening Br. at 23. This is incorrect. As ICSOP advised Argonaut (twice), ICSOP decided to defer pursuing contribution claims against other insurers until after the appeal process was concluded, see Amer Opp. Decl., Ex. 7 and Ex. 8, and the Settlement did not in any way preclude ICSOP from seeking contribution.

coverage rulings. [10] *Steadfast*, 2006 WL 89512, at *4 ("the court [cannot] infer actual prejudice from the speculation of plaintiffs").

> **C.     Any Claimed Prejudice With Respect To Commutations Is Legally Irrelevant and, by Argonaut's Own Admission, "Pure Speculation"**

Argonaut asserts that prior to receiving notice from ICSOP in June 2009, it agreed to commute with a number of its retrocessionaires having a collective participation of ▮▮▮ on a retrocessional contract known as "Treaty X." Argonaut Opening Br. at 13.  Argonaut argues that is has suffered "tangible, economic, and substantial" prejudice because it was not "able to consider the effect of the Kaiser claim" when negotiating those commutations.  *Id.* at 25.

Argonaut's claim of prejudice based on commutations is legally irrelevant as a matter of California law.[11]  As articulated by the Ninth Circuit, "the only prejudice sufficient to allow an insurer to avoid liability based on late notice is found in those cases where the insurer actually demonstrated that there was a substantial likelihood that it could have either defeated the underlying claim against its insured, or settled the case for a smaller sum than that for which its insured ultimately settled the claim." *Associated*, 922 F.2d at 524.  In *Associated*, the reinsurer (like Argonaut here) claimed prejudice due to its inability to assert a claim against a retrocessionaire, which had become insolvent between the time it claimed notice should have

---

[10]     The two cases cited in support of Argonaut's argument are unavailing.  The first, *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Gen. Star Indem. Co.*, is an unpublished Third Circuit case interpreting California law.  216 Fed. Appx. 273 (3d Cir. 2007).  Actual prejudice existed in that case because the reinsurer was notified only weeks before the Pennsylvania Supreme Court denied its final appeal in the case, and the cedent refused to even engage in settlement discussions with the claimant.  See *id.* at 281.  The second case, *Ins. Co. of Ireland v. Mead Reinsurance Corp.*, is a New York federal case that does not apply California law.  1994 WL 605987.  The facts are inapposite as well; there, the reinsurers identified a specific instance of prejudice (namely, the cedent did not issue a reservation of rights letter to the claimant).  While the court cited cases holding that late notice may prejudice a reinsurer's right to associate, this precedent is not followed by courts applying California law.  See *Steadfast*, 2006 WL 89512, at *3.

[11]     Argonaut's reliance on cases applying New York law is misplaced.  California law, not New York law, applies to the Fac Cert.  *See supra*, at Point I.

been given and when notice was actually given. *Id.* at 525.  The Ninth Circuit rejected this argument, noting that the reinsurer "has cited no case, and we have found none, to support the proposition that such collateral matters may constitute prejudice so as to relieve an insurer from its liability under an insurance contract." *Id.*  Similarly, a reinsurer's independent business decision to commute a reinsurance contract with one of its retrocessionaires is a "collateral matter" irrelevant to the prejudice analysis in California. *Id.*

In any event, even if such "collateral matter" were deemed relevant, Argonaut's argument rests on several factual assumptions that are contradicted by the evidence in the record.

First, Argonaut asserts that if it had been given notice sooner, the commutations "could have been avoided." Argonaut Opening Br. at 13.  Mr. Hollender testified otherwise at his deposition.  When asked whether there was a commutation Argonaut contends it would not have entered into if it had received earlier notice, Mr. Hollender replied he was unaware of any that Argonaut would have avoided.  Amer Opp. Decl., Ex. 3 at 207:17-23.  He went on to explain that Argonaut was in the process of "shutting down" its assumed reinsurance book (of which the Fac Cert was a part) and therefore had "a lot of interest" in winding down its relationships with its retrocessionnaires through commutations. *Id.* at 207:17-208:12.  The evidence therefore undercuts, rather than supports, Argonaut's claim that any of the commutations would have been "avoided" if notice had been given sooner.

Second, Argonaut cannot establish that it suffered any actual and substantial prejudice with respect to commutations *arising from* any purported late notice because nearly all of the commutations were entered into before the earliest date ICSOP was arguably required to give notice.  Although Argonaut contends ICSOP should have given notice as early as 1989 (Argonaut Opening Br. at 18), there is no evidence suggesting at that time that ICSOP had

received tender of any asbestos claim from Kaiser under the Excess Policy[12] or had any reason to believe there was any occurrence that "might result in judgment in an amount sufficient to involve" the Fac Cert (Amer Opp. Decl., Ex. 1 at Condition C).   Arguably, the earliest date ICSOP was required to provide notice was when Kaiser brought ICSOP into the California Coverage Litigation by cross-claim in April 2002.  See *Associated*, 922 F.2d at 522 (holding underlying insured's cross-claim against reinsured was a claim within the meaning of the reinsurance contract for purposes of triggering reinsured's notice obligations).  As of that date, Argonaut had already executed most of the commutations.  Amer Opp. Decl., Ex. 3 at 220:9-16; 233:6-16; 234:19-235:10; 242:23-248:5; 250:18-22.

Third, Argonaut asserts that if it had been given notice sooner, it would have asked for a higher price before entering into the commutations.  Argonaut Opening Br. at 13. Mr. Hollender's testimony belies this assertion as well.  Mr. Hollender testified that the factors Argonaut takes into consideration in determining what price to charge for a commutation are the paid balances due from the retrocessionaire, the case reserves and the "IBNR [incurred but not reported] value on the business," which reflects potential exposure for unknown claims.[13]  Amer Opp. Decl., Ex. 3 at 206:6-207:2.  With respect to case reserves, Mr. Hollender conceded that it was unlikely Argonaut would have posted any case reserves prior to when ICSOP posted reserves even if it had received notice earlier.  *Id.* at 227:11-25 ("[A]s long as ICSOP had not posted a reserve, it's probably unlikely that we would have posted a reserve.").  And during the time that Argonaut was negotiating the commutations, Argonaut included IBNR in its pricing to

---

[12]  *See* Declaration of Patrick DiCaprio dated May 16, 2013 (submitted in support of ICSOP's partial summary judgment motion) at ¶ 20.

[13]  IBNR, which stands for "incurred but not reported," is a term in common use in the insurance industry, and reflects an estimate of the total amount owed by the insurer to all valid claimants who have had a covered loss but have not yet reported it. Amer Opp. Decl., Ex. 2.

cover the contingency of unknown claims such as the Kaiser asbestos losses. *Id.* at 217:16-218:2. Indeed, Mr. Hollender acknowledged that at the time the commutations were negotiated, Argonaut had a bulk IBNR reserve on its books for asbestos covering all unknown exposures (including Kaiser), and that for some of the commutations the IBNR factor was as much as ███ ███ times the case reserves. *Id.* at 216:23-217:4; 218:25-219:9. Finally, Mr. Hollender's testimony confirms that Argonaut's pricing would have been no different even if ICSOP had provided notice earlier. Mr. Hollender expressed doubt that Argonaut's commutation pricing would have been any different prior to 2003 if it had received notice from ICSOP about Kaiser asbestos claims given what he was seeing with major asbestos defendants in that time frame. *Id.* at 209:25-210:13. Notably, 11 of the 16 commutation agreements were executed prior to 2003. *Id.* at 220:9-16; 233:6-16; 234:19-235:10; 242:23-248:5; 250:18-22. And when asked if earlier notice would have affected Argonaut's negotiations over a specific commutation entered into in 2001, Mr. Hollender conceded "it would be pure speculating;" speaking more generally, he could not say how developments in the California Coverage Litigation "would have swayed any particular deal" with retrocessionaires. *Id.* at 225:19-226:19.

Fourth, even if – contrary to Mr. Hollender's testimony – Argonaut would have asked for a higher price, it is pure speculation to assume that the retrocessionnaires would have agreed to pay more than they did.[14] Indeed, it is highly doubtful that retrocessionnaires would have paid a higher price merely because Argonaut had received notice from ICSOP for the Kaiser risk, especially considering that Argonaut was already including an IBNR figure for

---

[14] Three of the retrocessionnaires were in liquidation *prior* to the date Argonaut entered into commutations with them. Amer Opp. Decl. at ¶¶ 10-14 and Exs. 9-13. With respect to those retrocessionnaires, there is certainly no basis to suggest Argonaut would have avoided commutation or could have obtained a better price because it was negotiating with a financially impaired entity represented by a liquidator.

unknown losses equal to many multiples of case reserves. *See, supra*, at 21-22. Argonaut's contention that it would have asked for a higher price and that the retrocessionaires would have paid that higher price is to pile speculation upon speculation, which falls woefully short of establishing actual and substantial prejudice as required under California law. *Steadfast*, 2006 WL 89512, at *4 ("the court [cannot] infer actual prejudice from the speculation of plaintiffs").

Fifth, Argonaut's prejudice argument necessarily assumes that, but for the commutations, Argonaut would now be in a better financial position with respect to recovery under Treaty X. There is no evidence in the record to support that assumption. Argonaut's position ignores the compensation it has already collected for IBNR from all of the retrocessionaires. Argonaut has offered no evidence suggesting that the IBNR it collected from the commutations, plus investment income over several years, is less than what Argonaut would have collected from these retrocessionaires under Treaty X absent commutation, including those which are now insolvent. [15]  *See* ICSOP Opening Br. at 21-22. Accordingly, Argonaut's suggestion that it is in a worse financial position because of the commutations is pure speculation, not actual and substantial prejudice. [16] *Associated*, 922 F.2d at 525 ("[T]here is no

---

[15]  Of the retrocessionaires with whom Argonaut commuted, four became insolvent prior to 2009, ███████████████████ became insolvent *after* Argonaut's Commutation. Amer Opp. Decl. at ¶ 12 and Ex. 10. As to ██████, absent the commutation, Argonaut would have been able to collect either nothing or a de minimus percentage through a claim in liquidation proceedings. Thus, it is certain that the present value of the amount Argonaut collected under the commutation with ██████ for IBNR is *more* than Argonaut would have collected from ██████ for the Kaiser claim under Treaty X in response to ICSOP's billings.

[16]  The fact that four retrocessionaires became insolvent prior to the date of ICSOP's first billing under the Fac Cert only serves to highlight the speculative nature of trying to determine what Argonaut might have done differently, if anything, in connection with the commutations and, more importantly, whether Argonaut would be worse off financially but for the commutations. It is precisely for this reason that California law does not deem such "collateral matters" as giving rise to actual and substantial prejudice. *Associated*, 922 F.2d at 524.

factual basis for concluding that [the reinsurer] suffered the alleged collateral losses, or that, had they been sustained, they would have resulted from the delayed notice.").

### III.   GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER ARGONAUT RECEIVED EARLIER CONSTRUCTIVE NOTICE OF THE KAISER LOSS

Putting aside Argonaut's failure to demonstrate actual and substantial prejudice, Argonaut's motion for summary judgment should be denied because genuine issues of material fact exist as to whether notice was late.  More specifically, the evidence submitted by ICSOP in opposition to Argonaut's motion raises a dispute as to whether Argonaut received constructive notice of Kaiser asbestos losses under the MSB Treaty in either 2000 or 2002 in satisfaction of ICSOP's notice obligation under the Fac Cert.

Under California law, a reinsured satisfies its notice obligations under a reinsurance contract if it provides constructive notice of the claim to its reinsurer under a different contract.  *See, supra,* at Point I.A.  The case of *California Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal. App. 3d 1 (1985), is instructive.   There, an insured sent its insurer a summons and complaint without a cover letter in an envelope bearing the return name and address of a different entity than the insured.  The court held that this was "a classic case of constructive notice" and that "the facts …were such as to put [the insurer] on notice of the contractual duty to make a further inquiry.  If he had made this further inquiry, he would have discovered that it was actually [the insured] who had tendered the summons and complaint for defense." *Id.* at 37.

Here, Argonaut reinsured the Excess Policy not only under the Fac Cert, but also under the MSB Treaty.  Based on documentation from ICSOP's automated system, notices were generated on the Kaiser asbestos claims for the reinsurers participating on the MSB Treaty (including Argonaut) in April of 2000 and April of 2002 and were forwarded to the broker Guy

Carpenter for distribution.  While Argonaut's witnesses do not recall receiving any Kaiser notice in 2000 or 2002, ICSOP has proffered copies of the notices, which raises a genuine issue of material fact as to whether one or both of the notices were received by Argonaut.[17]  To the extent a trier of fact finds that Argonaut received either notice, that would constitute constructive notice of the Kaiser asbestos claims under California law sufficient to satisfy ICSOP's notice obligation under the Fac Cert because the earliest date ICSOP was arguably required to give notice was in late 2002 (see, supra, at 21).  See *California Shoppers*, 175 Cal. App. 3d at 37.

## CONCLUSION

For the reasons set forth above, the Court should deny Argonaut's motion for summary judgment in its entirety, and grant such other and further relief deemed necessary and appropriate by the Court.

Dated:  June 7, 2013
　　　　New York, New York

SIMPSON THACHER & BARTLETT LLP

By: _____
Andrew S. Amer
Rae C. Adams

425 Lexington Avenue
New York, N.Y. 10017-3954
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Plaintiff The Insurance Company of the State of Pennsylvania*

---

[17] A memorandum from Guy Carpenter dated June 16, 2003 indicates that the April 2000 notice may have been retained at Guy Carpenter's offices at Two World Trade Center pending a correction to the information on the treaty participation share and then destroyed in the 9/11 terrorist attack. *See* Magnotta Decl., Ex. 6.  But the memorandum indicates that a summary of proofs was subsequently provided by Guy Carpenter, and there is no evidence suggesting a similar problem occurred with the April 2002 notice.