UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
THE INSURANCE COMPANY OF THE STATE   :
OF PENNSYLVANIA,                                  :

                         Plaintiff,         :   1:12-cv-06494-DLC
                                       :

           vs.                       :
                                     :

ARGONAUT INSURANCE COMPANY,     :
                                   :
                   Defendant.     :

                                   :
                                   :
-----------------------------------------------------------------x

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTESTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(b) of the Civil Rules of the United States District Court for the Southern District of New York, Plaintiff The Insurance Company of the State of Pennsylvania ("ICSOP") hereby responds to Defendant Argonaut Insurance Company's ("Argonaut") Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment.

### AIG's Insurance Of Kaiser And Argonaut's Facultative Reinsurance

1.      The Kaiser Cement Corporation and its predecessors ("Kaiser") manufactured products that contained asbestos. (Complaint (Docket No. 1, Ex. A) ¶ 19.)

**Response: Undisputed.**

2.      ICSOP was, and is, a member company in the American International Group ("AIG"). (Complaint (Docket No. 1, Ex. A) ¶ 4.)

      **Response: Undisputed.**

3.      Kaiser purchased insurance coverage from various insurance companies during the period from 1953 through 1987, including primary, umbrella, and excess insurance policies. (Ex. 27 at ICSOP0007339.)

      **Response: Undisputed.**

4.      Kaiser purchased a policy from ICSOP bearing number 4174-5841, providing coverage for the period from January 1, 1974 through January 1, 1977 (the "1974 ICSOP Policy"). (Ex. 27 at ICSOP0007340.)

      **Response: Undisputed.**

5.      Kaiser had a primary insurance policy for the same period issued by Truck Insurance Exchange ("Truck") with a limit of $500,000 per occurrence. The 1974 ICSOP Policy then provided "umbrella" coverage above the $500,000 Truck primary limit up to a limit of $5 million per occurrence. (Ex. 27 at ICSOP0007340.)

      **Response: Undisputed.**

6.      Neither the Truck primary policy nor the 1974 ICSOP Policy contained an aggregate limit. (Complaint ¶ 14.)

      **Response: Undisputed.**

7.      The AIG members companies issued more than a dozen policies to Kaiser. (Ex. 27 at ICSOP0007339 — 7441.)

      **Response: Undisputed.**

8.    The policies issued by the AIG member companies to Kaiser provided coverage at various layers; some of them provided coverage at the same umbrella layer as the 1974 ICSOP Policy but in prior or subsequent years. One of the other policies issued by AIG contained only per occurrence limits, like the 1974 ICSOP Policy, but most of the policies issued by AIG to Kaiser contained aggregate limits. (Ex. 27 at ICSOP0007339 — 7441.)

**Response:  Disputed in part.  It is undisputed that the AIG member companies issued to Kaiser policies at various layers and that ICSOP issued one policy at the same umbrella layer as the 1974 ICSOP Policy effective 1/30/71-1/1/74.  All AIG member company policies issued to Kaiser except for the 1974 ICSOP Policy either contained an aggregate limit or followed form to an underlying primary policy which contained an aggregate limit.**

9.    ICSOP issued its policies to Kaiser through an entity called C.V. Starr & Co. ("C.V. Starr").  C.V. Starr was an AIG company that acted as underwriting manager for ICSOP. (Ex. 10 at ICSOP0105076.)

**Response: Undisputed.**

10.    On behalf of ICSOP, C.V. Starr obtained facultative reinsurance for the 1974 ICSOP Policy from Argonaut.  Argonaut issued certificate DX-693-A, agreeing to reinsure $1 million part of the $5 million limit of the 1974 ICSOP Policy, *i.e.,* 20% (the "Facultative Certificate").  (Ex. 5.)

**Response: Undisputed.**

11.    In the Facultative Certificate, ICSOP and Argonaut agreed as follows:

> The Company [*i.e.,* ICSOP] shall notify the Reinsurer promptly of any occurrence which in the Company's estimate of the value of injuries or damages sought, without regard to liability, might result in judgment in an amount sufficient to involve this certificate of reinsurance. The Company shall also notify the Reinsurer promptly of any occurrence in respect of which the Company has created a loss reserve equal to or greater than fifty (50) percent of the Company's retention specified in Item 3 of the Declarations; or, if this reinsurance applies on a contributing excess basis, when notice of claim is received by the Company.

(Ex. 5 (Condition C) at ARG00000373.)

>   **Response: Undisputed.**

12.     The Facultative Certificate applied on a contributing excess basis. (Ex. 5 at ARG00000372.)

>   **Response: Undisputed.**

13.     Since the early 1980s, Kaiser had been sued in thousands of lawsuits alleging bodily injury and property damage resulting from its asbestos-containing products. (Ex. 27 at ICSOP0007339; Complaint ¶ 20.)

>   **Response: Undisputed.**

14.     The asbestos claims against Kaiser were initially handled by Truck, as Kaiser's lead primary insurer. (Ex. 27 at ICSOP0007339.)

>   **Response: Undisputed.**

15.     By the late 1980s, Truck and Kaiser began to involve Kaiser's other insurers, including ICSOP. (Ex. 7)

>   **Response: Disputed as to the word "involve" and the inclusion of ICSOP.   It is undisputed that by the late 1980s, Truck was seeking contribution from Kaiser's other primary insurers (which did not include ICSOP).**

16.     In 1988 a meeting was convened among representatives of Kaiser, Truck, and a number of insurance carriers.   Alicia Arencibia was an AIG representative who attended the meeting on behalf of AIG's primary and excess member companies.  (Ex. 7.)

**Response: Disputed.  Ms. Arencibia attended the meeting on behalf of AIG member company National Union Fire, not ICSOP.[1]**

17.     Following the meeting with representatives for Kaiser, Truck, and other insurance carriers, Alicia Arencibia wrote an internal memo to file, dated August 8, 1988, saying, "For those AIG Companies with excess coverage (see attached list) my recommendations are that files be created and reservation of rights be sent out immediately." (Ex. 7 at ICSOP0031171.) The list attached to the memo to file included the 1974 ICSOP Policy. *(Id.)*

**Response: Undisputed.**

18.     By 1989, AIG had received notice of claim under the 1974 ICSOP Policy and had established a claim file for it. (Ex. 8)

**Response: Disputed.   AIG did not receive notice of claim under the 1974 ICSOP Policy in 1989.[2]**

19.     Bart Tesoriero worked in the claims office for C.V. Starr. (Ex. 8.)  In an internal memo to file at the C.V. Starr claims office, dated March 28, 1989, he recorded that he had reviewed "the various files for Kaiser Cement & Gypsum." (Ex. 8 at ICSOP0077033.) The "listing of open asbestos claims" attached to the memo included a claim number for the 1974 ICSOP

---

[1]     Keely Decl., Ex. 7 at ICSOP003170.

[2]     DiCaprio Decl. ¶ 20.

Policy. *(Id.* at ICSOP0077035.)

      **Response: Undisputed.**

20.     In his memo of March 28, 1989, Mr. Tesoriero noted, "My preliminary evaluation would be that in those periods where we are excess of $500,000 in underlying coverage we may face a very real possibility of some impairment." (Ex. 8 at ICSOP0077034.)

      **Response: Undisputed.**

21.     Mr. Tesoriero also stated, "In reviewing our files, I note that no reinsurance notifications have been sent by this office." (Ex. 8 at ICSOP0077033.)

      **Response: Undisputed.**

22.     An internal AIG memo dated September 30, 1991 from the Toxic Tort Department to Management regarding a "Key Account Summary" of Kaiser claims stated, "AIG related companies have been put on notice for excess coverage." (Ex. 9.)

      **Response: Undisputed, but ICSOP notes that the memorandum was sent from the Toxic Tort Claims Department.[3]**

23.     On or about July 25, 1996, AIG opened a claim file under the case number 170-016800 relating to claims against the 1974 ICSOP Policy. (Ex. 10 at ICSOP0105088.)

      **Response: Undisputed.**

24.     Case number 170-016800 was the "master" claim file for the 1974 ICSOP Policy from 1996 until at least 2002. (Ex. 1 (DiCaprio Dep.) at 281-282, 303-304.)

      **Response: Undisputed.**

---

[3]     Keely Decl., Ex. 9 at ICSOP0031002.

25.     The physical claim file for case number 170-016800 contained a copy of the 1974 ICSOP Policy. (Ex. 10.)

> **Response: Undisputed.**

26.     Included with the copy of the 1974 ICSOP Policy in the file was a confirmation from C.V. Starr reflecting details of the reinsurance coverage from Argonaut under the Facultative Certificate. (Ex. 10 at ICSOP0105086.)

> **Response: Undisputed, but ICSOP notes that the reinsurance layoff sheet in the file was effective 5/1/75 and did not list the Facultative Certificate, which had been cancelled as of 5/1/75 and replaced with a facultative certificate issued by North American Managers, Inc.[4]**

27.     Under AIG's claims practices, filling out a case creation sheet to open a claim file means that someone provided notice under the policy that is the subject of the claim file. (Ex. 1 (DiCaprio Dep.). at 305.)

> **Response: Undisputed, but ICSOP notes that opening a claim file meant notice under the policy, not notice of a claim tendered under the policy.**

28.     Truck continued to handle the Kaiser asbestos claims into the early 2000s with contribution from other primary carriers, including National Union. (Ex. 11 at ICSOP0075173 — 75174.)

> **Response: Undisputed.**

29.     By early 2002, Truck's counsel advised AIG's counsel on the Kaiser claims,

---

[4]      Keely Decl., Ex. 10 at ICSOP0105072.

Lynberg & Watkins, that Truck intended to file suit against Kaiser to obtain a finding that Truck had exhausted its coverage and had no further obligation for the Kaiser asbestos claims. (Ex. 11 at ICSOP0075174.)

> **Response: Undisputed.**

30.     In February 2002, Simon Yoon was the claims handler at AIG handling the Kaiser account. (Ex. 11)  On February 11, 2002, Mr. Yoon stated in an internal Format Report, "Truck's counsel has indicated that our excess policies will definitely be brought into this action between Truck and Kaiser." (Ex. 11 at ICSOP0075174.)

> **Response: Undisputed.**

31.     On or about April 8, 2002, Kaiser filed a cross-complaint against its excess insurers in the Superior Court of the State of California seeking judgment of coverage under excess policies issued to it (the "Coverage Action"). (Ex. 12.)  ICSOP was named in the cross-complaint as cross-defendant, and the 1974 ICSOP Policy was identified as an excess policy at issue in the cross-complaint. *(Id.)*

> **Response: Undisputed.**

32.     On or about August 20, 2002, Simon Yoon opened a claim file under the case number 170-032752 relating to claims against the 1974 ICSOP Policy. (Ex. 13)

> **Response: Undisputed, but ICSOP notes that August 20, 2002 was the date Mr. Yoon completed the LMS Case Creation Worksheet, not the date that the claim file was opened in LMS.**

33.     Claim number 170-032752 was designated as a new "master" claim file. (Ex. 3 (Magnotta Dep.) at 123-124.)

**Response**: **Undisputed.**

34.    In late 2004, Truck filed a summary judgment motion regarding the number of occurrences represented by the asbestos claims against Kaiser. (Ex. 27 at ICSOP0007341.)

**Response**: **Undisputed.**

35.    In its summary judgment motion, Truck took the position that all of the asbestos claims represented a single occurrence arising out of Kaiser's decision to manufacture asbestos products and that Truck's policy limits were, therefore, exhausted by the single occurrence. (Ex. 14 at ARG00001206.)

**Response**: **Undisputed.**

36.    Certain London-based insurers (the "London Market Insurers"), which had also issued excess coverage, took the lead in opposing Truck's motion. (Ex. 14 at ARG00001206.)

**Response**: **Undisputed.**

37.    The firm of Lynberg & Watkins represented the AIG member companies in the Coverage Action against Kaiser and Truck. (Ex. 14.)

**Response**: **Undisputed.**

38.    AIG took no position on Truck's motion for summary judgment. (Ex. 14)

**Response**: **Undisputed.**

39.    In a letter to Tanja Fagan of AIG, dated December 12, 2005, AIG's counsel at Lynberg & Watkins explained the reason that AIG took no position as follows:





(Ex. 14 at ARG00001206 — 1207.)

      **Response**: **Undisputed.**

40.     AIG's counsel at Lynberg & Watkins advised AIG in December 2005, ████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████ *(Id.* at ARG00001217.)

      **Response**: **Undisputed.**

41.     The trial court in the Coverage Action denied Truck's motion in May 2005, concluding that the asbestos claim "gave rise to more than one occurrence." (Ex 14 at ARG00001207.)

      **Response**: **Undisputed.**

42.     In October 2005, the trial court decided *sua sponte* to reconsider its multiple-occurrence ruling. (Ex 14 at ARG00001207.)

      **Response**: **Undisputed.**

43.     Lynberg & Watkins reported to AIG that, in connection with the trial court's reconsideration of its prior decision, ██████████████████████████

███████████████████████████████████████████████(Ex 14 at ARG00001207.)

      **Response**: **Undisputed.**

44.     On or about January 10, 2006, the trial court issued a ruling and order, finding

that all asbestos claims against Kaiser arose out of a single occurrence and granting summary

judgment in favor of Truck that Truck's primary policies had been exhausted. (Ex. 15.)

> **Response: Undisputed.**

45.    On or about August 17, 2006, AIG ███████ its indemnity reserve on the master

file for the 1974 ICSOP Policy from a ████████████████████(Ex. 26; Ex.

1 (DiCaprio Dep.) at 146-147.)

> **Response: Disputed in part.  The reserve was** ████████ **to** █████████[5]

46.    The London Market Insurers appealed the trial court's single-occurrence decision

and finding of exhaustion. In a January 2007 decision, the appellate court reversed and remanded

to the trial court, finding "that the occurrence was a claimant's injurious exposure to asbestos"

and suggesting that each claimant represented a separate occurrence. (Ex. 27 at ICSOP0007341.)

> **Response: Undisputed.**

47.    Kaiser filed an amended cross-complaint seeking a declaration that the Truck

primary policy and the 1974 ICSOP Policy were obligated to respond to all asbestos claims

triggering coverage for the 1974 policy period, regardless of whether the claims also triggered

other policy periods.  Kaiser sought "reimbursement from ICSOP for monies paid in excess of

Truck's primary limits of $500,000." (Ex. 27 at ICSOP0007342.)

> **Response: Undisputed.**

48.    At the time Kaiser filed its cross-complaint, there were 43 asbestos claimants

whose damages exceeded ███████, and Kaiser sought approximately $15,000,000 from ICSOP.

---

[5]    Keely Decl., Ex. 26 at 2.

(Ex. 27 at ICSOP0007343.)

      **Response: Undisputed, but ICSOP notes that Kaiser did not identify these claims to ICSOP until several years later in the context of the mediation.**[6]

      49.    As AIG's counsel at Lynberg & Watkins reported, on June 30, 2008, the trial court issued a ruling in favor of Kaiser and against ICSOP, finding that "upon exhaustion of the 19741975 Truck policy limit of $500,000 by settlement or judgment for any one covered claim/occurrence, the 1974-1975 ICSOP policy must pay the balance of indemnity over $500,000." (Ex. 16 at ICSOP0007543.)

      **Response: Undisputed.**

      50.    According to Lynberg & Watkins, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Ex. 16 at ICSOP0007543.)

      **Response: Undisputed.**

      51.    By March 2009, "there were 56 [asbestos claims] exceeding $500,000 and Kaiser sought approximately $24,400,000 from ICSOP, along with statutory interest of $3,500,000 and an unknown amount of attorneys fees." (Ex. 27 at ICSOP0007343.)

      **Response: Undisputed.**

      52.    An internal AIG Case Status Report, dated July 30, 2010, states, "[T]he fact remained that ICSOP had taken no action regarding the [asbestos claims] upon Truck's claimed exhaustion of limits such that a finding of breach of contract appeared likely." (Ex. 27 at

---

[6]    See DiCaprio Decl. ¶ 20.

ICSOP0007343.)

**Response: ICSOP does not dispute that the quoted sentence appears in the AIG Case Status Report, but notes that the sentence is being taken out of context and its meaning is thereby being distorted. ICSOP refers the Court to the entire passage for a correct understanding of the meaning of this sentence, which is preceded by a statement that in ICSOP's view no claim had actually been presented by Kaiser under the 1974 ICSOP Policy triggering ICSOP's coverage obligation. In context, the sentence quoted is merely an acknowledgement that notwithstanding ICSOP's view, the court would likely find that ICSOP's obligation had been triggered.[7]**

53.     When the trial court in the Coverage Action proposed mediation, ICSOP agreed to mediate. (Ex. 27 at ICSOP0007343.)

**Response: Disputed in part. The AIG Case Status Report states merely that "ICSOP was receptive to mediation when proposed by the court."[8]**

54.     On or about ▮▮▮▮▮, Patrick DiCaprio, the claim handler at AIG managing the Kaiser account, submitted an Executive Claim Summary seeking authority to ▮▮▮▮ the reserve on the master claim file for the 1974 ICSOP Policy. (Ex. 18.) The indemnity reserve on the master claim file for the 1974 ICSOP Policy was ▮▮▮▮ from ▮▮▮▮ to ▮▮▮▮ on or about ▮▮▮▮▮. (Ex. 26; Ex. 1 (DiCaprio Dep.) at 146-149.)

**Response: Disputed in part. The reserve was ▮▮▮▮ from ▮▮▮▮ to**

---

[7]     Keely Decl., Ex. 27 at ICSOP0007343.

[8]     Keely Decl., Ex. 27 at ICSOP0007343.

█████████

55.     On April 21 and 22, 2009, Ron Ryan of AIG participated in a mediation involving Kaiser, Truck, and the London Market Insurers. (Ex. 19; Ex. 1 (DiCaprio Dep.) at 215-216.)

             **Response: Undisputed.**

56.     The result of the mediation was an agreement in principle for ████ to pay ████ ████ to resolve Kaiser's demand for amounts due on asbestos claims already settled by Kaiser through March 31, 2009. Kaiser agreed to accept ████ of that amount in payments from August 2009 through January 2010, and the parties agreed that the ██████ would be funded if the trial court's June 2008 coverage decision was affirmed on appeal. █████ also agreed to pay amounts in excess of ██████ on pending or future asbestos claims. The ███████████ agreed to fund ████ of the settlement amount for the past claims and ████ of any amounts paid on pending and future claims. The parties agreed to entry of judgment on the June 2008 coverage decision so that ICSOP could pursue an appeal. (Ex. 27 at ICSOP0007343 — 7344.)

             **Response: Undisputed.**

57.     The settlement among ICSOP, Kaiser, and London Market Insurers was agreed in principle at the end of April 2009 and a formal settlement agreement was signed in July 2009. (Ex. 1 (DiCaprio Dep.) at 143.)

             **Response: Undisputed, but ICSOP notes that the cited page in support does not reference when the agreement in principle was reached.**

---

[9]     Keely Decl., Ex. 26 at 2.

58.    For a number of years prior to 2009, Argonaut had difficulties with AIG reporting claims late, and Argonaut attempted over the years to address the issue with AIG. (Ex. 2 (Hollender Dep.) at 61-62, 123-125; Ex. 4 (Stuhr Dep.) at 95-96.)

**Response: Disputed.  ISCOP disputes that it was "reporting claims late," but does not dispute that Argonaut has previously discussed with AIG the timing of AIG's notice under other reinsurance contracts with respect to other claims, and notes that the other reinsurance contracts that were the subject of that discussion were written on an excess of loss basis where AIG's automated system is designed to provide notice when AIG's reserve reaches 50% of the attachment point.[10]**

59.    In 2008, Chris Hollender of Argonaut asked reinsurance executives at AIG if AIG would give Argonaut access to certain "ground-up studies" on AIG's asbestos exposures that AIG had reported were prepared by consultants at Milliman. (Ex. 17)

**Response: Undisputed.**

60.    Mr. Hollender stated in an email to the Irwin Nirenberg and Chris Magnotta of AIG:

> While we've heard over the past year that AIG has been discussing internally ways to improve reinsurance reporting, it has yet to come to fruition. It would seem to me that by providing access to these studies, we can move beyond where we are now. As I mentioned, we are simply trying to get a handle on Argonaut's potential liabilities so that it can be in the best position to make informed financial decisions.
>
> Over the past several years, Argonaut has been forced to add a

---

[10]    Amer Opp. Decl., Ex. 3 at 127:13-24, 134:8-135:9.

> substantial amount in reserves as a result of continued deterioration involving its assumed reinsurance runoff operation, and our reinsurance of AIG has been a significant contributing factor. AIG's inability to report losses in a timely fashion has caused financial issues for Argonaut, and, unless the situation improves, has the potential to cause significant harm to Argonaut in the future.

(Ex. 17 at ARG00003660.) Irwin Nirenberg of AIG responded to the email proposing to arrange a conference call with Argonaut. *(Id.)*

**Response: Undisputed.**

61.    AIG never agreed to provide Argonaut with access to the Milliman studies. (Ex. 2 (Hollender Dep.) at 152-153.)

**Response: Undisputed, but ICSOP notes that the requested studies are internal confidential and proprietary work product that would not provide a level of detail that would be meaningful to any individual reinsurer, including Argonaut, and are not the type of documentation typically provided by an insurer to its reinsurer as a matter of industry custom and practice.**

62.    Argonaut received its first notice of the Kaiser claim from AIG in April 2009. (Ex. 20; Ex. 2 (Hollender Dep.) at 43-44.)

**Response: Disputed.   Argonaut received earlier notices of the Kaiser Claim under the Miscellaneous Special Business Treaty in or about April 2000 and/or April 2002.[11]**

63.    The notice received in April 2009 was sent by AIG's broker, Guy Carpenter, with

---

[11]    Magnotta Decl. ¶ 15 and Exs. 4-5.

a caption of "Initial Loss Advice." (Ex. 20 at ICSOP0000032.)

   **Response: Undisputed.**

  64. The Initial Loss Advice received by Argonaut in April 2009 did not refer to the Facultative Certificate. It referred to an excess of loss reinsurance treaty on which Argonaut participated that covered policies issued by ICSOP in 1974, including the 1974 ICSOP Policy. (Ex. 2 (Hollender Dep.) at 43-44.)

   **Response: Undisputed.**

  65. Nadine Stuhr of Argonaut wrote to Linda Sefranka in the reinsurance department at AIG on April 3, 2009. Ms. Stuhr attached a copy of the Initial Loss Advice and advised that the "broker has reported the initial loss to Argonaut with a reserve recommendation of over ███████ but no supporting loss information was provided." She asked AIG to provide copies of any internal reports to summarize the loss as well as copies of the applicable policies. (Ex. 20 at ICSOP0000031.)

   **Response: Undisputed.**

  66. Ms. Sefranka responded to Ms. Stuhr on April 27, attaching a copy of the 1974 ICSOP Policy and a "Status Report," dated April 22, 2009. (Ex. 21.) In a section entitled "Declaratory Judgment," the only thing that the Status Report reported was: "There is an active Declaratory Judgment action in which all coverage issues are being litigated." *(Id.* at ICSOP0000043.)

   **Response: Undisputed, but ICSOP notes that the Declaratory Judgment action referenced was a matter of public record.**

  67. The Status Report provided by AIG to Argonaut on April 27, 2009 did not

include any information regarding the court decisions in the Coverage Action or regarding AIG's negotiation and settlement in principle. (Ex. 21)

>**Response: Disputed. The Status Report advised Argonaut of the existence of the Declaratory Judgment action. The court's decisions were publicly available online.**[12]

68.     In June 2009, Argonaut received a copy of a "Reinsurance Notice of Loss" regarding the Facultative Certificate. (Ex. 22) That document was received by Argonaut "without any cover sheet or supporting documentation." (Ex. 22; Ex. 25.)

>**Response: Disputed in part. ICSOP cannot verify Ms. Stuhr's claim that the notice was received without any cover sheet or supporting documentation.**

69.     On July 9, 2009, ICSOP's broker at Guy Carpenter emailed Argonaut an "Initial Notice of Loss & Payment Request" relating to the Facultative Certificate. (Ex. 23.)

>**Response: Undisputed.**

70.     Following Argonaut's receipt of the Initial Loss Advice on the excess of loss treaties in April 2009, Argonaut identified in its own records that it had issued the Facultative Certificate also covering the 1974 ICSOP Policy. By early May 2009, Argonaut had identified the certificate. (Ex. 4 (Stuhr Dep.) at 35.)

>**Response: Undisputed.**

71.     Even though AIG had still not yet provided notice of any claim on the certificate by May 2009, Argonaut determined to provide notice to its retrocessionaires of the potential for a claim. (Ex. 2 (Hollender Dep.) at 65-66.)

---

[12]     Keely Decl., Ex. 21 at ICSOP0000043.

**Response: Undisputed, but ICSOP notes that Argonaut did not notify ICSOP that it had identified the Facultative Certificate or inquire of ICSOP why notice had not been provided under the Facultative Certificate at the same time notice was provided under the excess of loss treaties.[13]**

72.     Argonaut made the decision to notify its retrocessionaires, even though Argonaut had not yet received specific notice under the Facultative Certificate, "because notice is such an important issue." (Ex. 2 (Hollender Dep.) at 67.)

**Response: Disputed.**

73.     Ms. Stuhr of Argonaut raised AIG's late notice of the claim (under both the Facultative Certificate and the excess of loss treaty) in June 2009 and again in July and August 2009. (Ex. 24 at ICSOP0065819 — 65821; Ex. 25.)

**Response: Undisputed.**

74.     On August 3, 2009, Barbara Obecny of AIG sent an email to AIG's broker purporting to address "the late notice issue" on the Facultative Certificate. She stated that the reserve ▮▮▮▮ on the Kaiser claim up to ▮▮▮▮▮▮▮▮▮▮▮▮ should have triggered a notice to Argonaut at that time. "However a review of the reinsurance layoff indicates that until 5/1/2009 no facultative reinsurance was on the layoff in SCI." (Ex. 26.)

**Response: Undisputed as to what Ms. Obecny stated in her email, although ICSOP notes that based on the manner in which the automated system operated, had the Facultative Certificate been properly coded into the reinsurance rules in the system for the**

---

[13]     Amer Opp. Decl., Ex. 4 at 59:17-60:22.

**1974 ICSOP Policy, the system would have generated a notice to Argonaut under the certificate when the claim file was first created.**[14]

75.      "SCI" is a computer system used by AIG's reinsurance department since 2003, which generated notices of claims to reinsurers. A predecessor system called "LMS" was in place since the late 1980s and operated on the same basis as SCI with respect to generating notices. (Ex. 3 (Magnotta Dep.) at 80.)

      **Response: Undisputed.**

76.      Chris Magnotta, a reinsurance director at AIG, reviewed the Kaiser master claim file in April 2009 and made a request for reinsurance layoff information for the 1974 ICSOP Policy. Seeing the information, he recognized that the Argonaut facultative certificate was not identified as part of the reinsurance in SCI. (Ex. 3 (Magnotta Dep.) at 93-93.)

      **Response: Undisputed.**

77.      Argonaut had entered into a Special Participating Excess Reinsurance Agreement with a number of retrocessionaires. The retrocession agreement is referred to as "Treaty X." (Ex. 2 (Hollender Dep.) at 63-64; Ex. 6.)

      **Response: Undisputed.**

78.      Treaty X applied on a quota share basis, meaning that the retrocessionaires would accept their percentage of losses on any policy ceded to the treaty, including losses under the Facultative Certificate. (Ex. 2 (Hollender Dep.) at 62-65.)

      **Response: Undisputed.**

---

[14]      Magnotta Decl. ¶¶ 9-13.

79.     Between 2001 and 2009, Argonaut had agreed to commute with ███████ of the retrocessionaires that participated on Treaty X. (Ex. 2 (Hollender Dep.) at 200-202, 220-221, 233-254; Ex. 6.)

**Response: Disputed.   Between 2001 and 2009, Argonaut had agreed to commute with a number of retrocessionaires whose combined participation on Treaty X at the time Treaty X was bound totaled 23.139%, as opposed to "23.139% of the retrocessionaires" participating on Treaty X.   ICSOP also notes that certain of those retrocessionaires became insolvent prior to 2009, which may have effectively reduced their "bound" participation by operation of law, by order of a liquidation court, or otherwise.[15]**

80.     If Argonaut had been given timely notice of the Kaiser claim, those commutations could have been avoided or Argonaut would have increased its demand before giving its retrocessionaires a release on Treaty X. (Ex. 2 (Hollender Dep.) at 207-209.)

**Response: Disputed.**

81.     Argonaut determined a price to charge for a commutation by reviewing the paid balances due from the retrocessionaire and the case reserves for claims that reinsureds had notified to Argonaut. (Ex. 2 (Hollender Dep.) at 206.) Based on the inventory of paid claims and case reserves for noticed claims, Argonaut would attempt to develop a figure for IBNR *(i.e.,* claims that are Incurred But Not Reported). *(Id.)* The figure used for IBNR was not "just picking out a number out of a hat", but instead "was really grounded on looking at claims that are open and going year by year." *(Id.* at 231-233.)

---

[15]     Amer Opp. Decl. at ¶¶ 10-14.

**Response: Disputed.**

82.     Argonaut did not insure Kaiser directly and did not reinsure any company that insured Kaiser other than AIG. (Ex. 2 (Hollender Dep.) at 219-220, 80-81.)

**Response: Undisputed as to Mr. Hollender's testimony, but ICSOP cannot verify the veracity of his statement.**

83.     The Kaiser claim as ceded by ICSOP under the Facultative Certificate is the largest facultative claim that Chris Hollender, who has been at Argonaut since 1997, has ever seen in Argonaut's book of business.  (Ex. 2 (Hollender Dep.) at 210-211).

**Response: Undisputed as to Mr. Hollender's testimony, but ICSOP cannot verify the veracity of his statement.**

Dated: June 7, 2013
      New York, New York

                        SIMPSON THACHER & BARTLETT LLP

                        By: _____
                             Andrew S. Amer
                             Rae C. Adams

                        425 Lexington Avenue
                        New York, N.Y. 10017-3954
                        Telephone: (212) 455-2000
                        Facsimile:  (212) 455-2502

                        *Attorneys for Plaintiff The Insurance Company of the State of Pennsylvania*