UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE INSURANCE COMPANY OF THE STATE  :
OF PENNSYLVANIA,                                      :
                                                                    :
                           Plaintiff,                         :
                                                                    :          12 Civ. 6494 (DLC)
               vs.                                            :
                                                                    :
ARGONAUT INSURANCE COMPANY,       :
                                                                    :
                           Defendant.                     :
                                                                    :
------------------------------------------------------------x


# DEFENDANT'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT


HOGAN LOVELLS US LLP
    Sean Thomas Keely
    Benjamin J.O. Lewis
    Pooja Boisture
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Defendant*
*Argonaut Insurance Company*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 3

ARGUMENT .......................................................................................................................... 3

I.   APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT ...................... 3

II.  THERE IS NO SUBSTANTIVE CONFLICT BETWEEN THE LAW
     OF NEW YORK AND THE LAW OF CALIFORNIA REGARDING
     LATE NOTICE ............................................................................................................. 4

     A.   There Is No "Clear Conflict" Between The Laws Of New York And
          California Regarding The Elements Of A Late Notice Defense............................ 5

     B.   California Law Would Recognize Bad Faith Or Gross Negligence
          On The Part Of A Reinsured As A Basis To Support A Defense
          Of Late Notice.................................................................................................... 8

III. ICSOP'S MOTION MUST BE DENIED PENDING DISCOVERY
     REGARDING WHETHER IT HAS ACTED IN BAD FAITH OR
     WAS GROSSLY NEGLIGENT WITH RESPECT TO ITS NOTICE
     OBLIGATIONS ........................................................................................................... 12

IV.  ICSOP'S MOTION MUST BE DENIED BECAUSE ARGONAUT
     SUFFERED SUBSTANTIAL PREJUDICE AS A RESULT OF
     ICSOP'S LATE NOTICE ........................................................................................... 14

     A.   AIG's Inherent Conflicts In Handling And Settling The Kaiser
          Claim Substantially Prejudiced Argonaut............................................................. 15

     B.   Argonaut Suffered Substantial Prejudice Because It Commuted
          Its Own Retrocessional Protection Without Notice From ICSOP
          Of The Kaiser Liabilities ................................................................................... 22

CONCLUSION....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*AIU Ins. Co. v. TIG Ins. Co.*,
   No. 07 Civ. 7052 SHS, 2013 WL 1195258 (S.D.N.Y. Mar. 25, 2013) ...................................12

*Am. Home Assur. Co. v. Int'l Ins. Co.*,
   90 N.Y.2d 433, 684 N.E.2d 14 (1997)....................................................................................12

*Am. Home Assur. Co. v. Republic Ins. Co.*,
   984 F.2d 76 (2d Cir. 1993), *cert. denied*, 508 U.S. 973 (1993)..............................................13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................................4

*Argonaut Ins. Co. v. MacArthur Co.*,
   No. C 012–03878 WHA, 2002 WL 145400 (N.D. Cal. Jan 18, 2002)....................................19

*Atlantic Cas. Ins. Co. v. Value Waterproofing*,
   No. 11 Civ. 7565 DLC, 2013 WL 152854, at *7 (S.D.N.Y. Jan. 15, 2013)............................13

*Atlantic Mutual Ins. Co. v. CSX Lines, L.L.C.*,
   432 F.3d 428 (2d Cir. 2005)...................................................................................................4

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001)...................................................................................................4

*Casey v. Merck & Co., Inc.*,
   653 F.3d 95 (2d Cir. 2011)......................................................................................................6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................................................3, 14

*Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*,
   979 F.2d 268 (2d Cir. 1992)........................................................................................6, 8, 9, 11

*Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*,
   745 F. Supp. 150 (S.D.N.Y. 1990) ....................................................................................14,16

*Earle v. State Farm Fire & Cas. Co.*,
   935 F. Supp. 1076 (N.D. Cal. 1996) .................................................................................17, 19

*Ethicon, Inc., v. Aetna Cas. and Surety Co.*,
   805 F. Supp. 203 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1532 (2d Cir. 1993) ...............................19

*Executive Plaza, LLC v. Peerless Ins. Co.*,
   No. 12-1470-cv, 2013 WL 2249134 (2d Cir. May 23, 2013)...................................................8

*Factors Etc., Inc. v. Pro Arts, Inc.*,
   652 F.2d 278 (2d Cir. 1981)................................................................................6, 7

*Fireman's Fund Ins. Co. v. Nat'l Bank for Cooperatives*,
   849 F. Supp. 1347 (N.D. Cal. 1994) ......................................................................17

*Gerling Global Reinsurance Co.-U.S. Branch v. ACE Prop. & Cas. Ins. Co.*,
   42 F. App'x 522 (2d Cir. 2002) .............................................................................10

*Granite State Ins. Co. v. Clearwater Ins. Co.*,
   No. 09 Civ. 10607 (RKE), 2012 WL 1520851 (S.D.N.Y. Apr. 30, 2012) ...........9, 12

*Holmes v. Grubman*,
   568 F.3d 329 (2d Cir. 2009)....................................................................................8

*Ins. Co. of State of Pa. v. Associated Int'l Ins. Co. (ICSOP)*,
   922 F.2d 516, 524-25 (9th Cir. 1990) ..................................6, 12, 14, 16, 17, 22, 23

*Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co. (IBM)*,
   363 F.3d 137 (2d Cir. 2004)..................................................................5, 12, 14

*Kaytor v. Electric Boat Co.*,
   609 F.3d 537 (2d Cir. 2010)....................................................................................4

*Matter of Allstate Ins. Co. (Stolarz)*
   81 N.Y.2d 219, 223, 613 N.E.2d 936, 937, 597 N.Y.S.2d 904, 905 (1993)............5

*N.R.D.C., Inc. v. F.D.A.*,
   710 F.3d 71 (2d Cir. 2013)......................................................................................4

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Affiliated FM Ins. Co.*,
   974 F.2d 1343 (9th Cir. 1992) ..............................................................................13

*Nat'l Union Fire Ins. Co. v. Gen. Star Indem. Co.*,
   216 F. App'x 273 (3d Cir. 2007) ...........................................................................20

*Northwestern Title Sec. Co. v. Flack*,
   6 Cal. App. 3d 134 (1970) .....................................................................................17

*Park Place Entm't Corp. v. Transcon. Ins. Co.*,
   225 F. Supp. 2d 406 (S.D.N.Y. 2002).....................................................................5

*Peele v. Mattingly*,
   No. 06 Civ. 13423(LBS), 2007 WL 2509766 (S.D.N.Y. Sept. 5, 2007).................14

*Prashker v. U.S. Guar. Co.*,
   1 N.Y.2d 584, 154 N.Y.S.2d 910, 136 N.E.2d 871 (1956).....................................18

*Public Service Mutual Ins. Co. v. Goldfarb,*
    53 N.Y.2d 392, 442 N.Y.S.2d 422, 425 N.E.2d 810 (1981)....................................................18

*Purefoy v. Pacific Auto. Indem. Exchange,*
    5 Cal. 2d 81 (1935) ....................................................................................................................17

*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1989)....................................................................................................7, 8

*San Diego Fed. Credit Union v. Cumis Ins. Society, Inc.,*
    162 Cal. App. 3d 358 (1984), *superseded by statute,* Cal. Civ. Code § 2860 .........................18

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,*
    391 F.3d 77 (2d Cir. 2004)...........................................................................................................4

*Travelers Cas. and Sur. Co. v. Dormitory Auth.,*
    No. 07 Civ. 6915 (DLC), 2008 WL 4861910 (S.D.N.Y. Nov. 5, 2008)......................................7

*Unigard Sec. Ins. Co. v. N. River Ins. Co.,*
    79 N.Y.2d 576, 594 N.E.2d 571, 584 N.Y.S.2d 290 (1992)...........................................6, 8, 16

*Unigard Sec. Ins. Co. v. N. River Ins. Co.,*
    4 F.3d 1049 (2d Cir. 1993).......................................................................6, 9, 10, 11, 17

## STATUTES

Cal. Ct. R. 8.548............................................................................................................................9

Fed. R. Civ. P. 56(c) ......................................................................................................................4

Fed. R. Civ. P. Rule 56(d)............................................................................................................14

Federal Rule of Civil Procedure 56 ..........................................................................................3, 4

## OTHER AUTHORITIES

Graydon S. Staring, *The Law of Reinsurance Contracts in California in Relation to*
    *Anglo-American Common Law*, 23 U.S.F. L. Rev. 1, 7 (1988).........................................11, 12

Defendant Argonaut Insurance Company ("Argonaut") respectfully submits this memorandum of law in opposition to the motion by plaintiff The Insurance Company of the State of Pennsylvania ("ICSOP") seeking partial summary judgment to dismiss defenses asserted by Argonaut based upon ICSOP's late notice of the claim at issue.[1]

## PRELIMINARY STATEMENT

As the Court knows based on Argonaut's affirmative motion for summary judgment, this case involves decades of delay by ICSOP in providing notice to Argonaut of the underlying Kaiser claim. In its motion, ICSOP does not establish or even seek to establish that it complied with the requirements of the Facultative Certificate to provide prompt notice of the Kaiser claim. Instead, ICSOP contends that it is entitled to partial summary judgment because "Argonaut has not suffered any 'actual and substantial' prejudice as required under California law to succeed on a late notice defense." ICSOP Mot. at 1. As set forth below, ICSOP's motion is incorrect on the applicable law and the relevant facts and should be denied.

ICSOP acknowledges that a showing of prejudice is not required under New York law to sustain a late notice defense if the reinsured acted in bad faith or was grossly negligent with respect to its notice obligations. In order to avoid that standard, ICSOP argues that California law conflicts with New York law and that under a choice of law analysis California law should apply. In fact, no California state or federal court has ever considered, let alone rejected, this bad faith/gross negligence standard as a basis for a late notice defense. In this situation, the Court

---

[1] Capitalized terms not otherwise defined herein have the meanings defined in Defendant's Memorandum of Law in Support of Motion for Summary Judgment. Citations to "Argonaut Mot." refer to Defendant's Memorandum of Law in Support of Motion for Summary Judgment. Citations to "Keely Decl. Ex. __" refer to the exhibits annexed to the Declaration of Sean Thomas Keely, dated May 17, 2013. Citations to "Keely Opp. Decl. Ex. __" refer to exhibits annexed to the Declaration of Sean Thomas Keely in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment, dated June 7, 2013.

cannot assume that there is a conflict.  Rather, as the Second Circuit has held, the district court sitting in diversity must determine how the courts of the forum state would predict what the supreme court of the foreign state would decide regarding the relevant issue.

When undertaking that exercise, the Court should predict that California law would not differ in any way from New York law on the point.  As articulated by the Second Circuit, the underlying principle that supports the bad faith/gross negligence basis for a late notice defense is the principle underlying the entire reinsurance relationship, *i.e.*, the duty of utmost good faith owed by the reinsured to the reinsurer.  That same duty of utmost good faith is well grounded in California law.  Indeed, California drew directly from New York law when it wrote the duty of utmost good faith into its own California insurance statute.  There is, therefore, no basis to find that California law would differ from New York law when answering the question of what good faith requires in the context of notice.  ICSOP cannot be entitled to summary judgment at this time because both the Court and the parties expressly deferred to a subsequent phase of this action discovery on facts concerning whether ICSOP acted in bad faith or was grossly negligent with respect to its notice obligations.

In addition to trying to avoid the issue of bad faith or gross negligence, ICSOP argues that Argonaut has not suffered substantial prejudice as a result of ICSOP's late notice.  To the contrary, prejudice to Argonaut was inherent based on the unique factual situation here.  Not only did ICSOP fail to give Argonaut notice of the claim and the coverage action, but AIG conducted and settled that coverage action under conflicts of interest.  AIG made decisions regarding coverage positions and settlement that would benefit AIG as whole rather than focusing on the unique interests of the 1974 ICSOP Policy, which did not contain aggregate limits like the other policies issued by AIG to Kaiser.  ICSOP's failure to notify Argonaut of the

Kaiser claim until after it settled the claim prejudiced Argonaut by making it impossible for Argonaut to protect its interests.  At the very least, the facts of this case preclude summary judgment for ICSOP.

ICSOP's late notice also prejudiced Argonaut by causing it to commute retrocession it otherwise would have had to cover the Kaiser claim without being able to account for the exposure to that claim.  ICSOP argues such prejudice is a "collateral matter" that cannot support a late notice defense.  No court in California or New York has held that loss of retrocession is not cognizable prejudice.  Those are actual lost recoveries that are substantial since they could yet run into millions of dollars.

Accordingly, ICSOP's motion for partial summary judgment should be denied.

## FACTUAL BACKGROUND

The background facts relevant to this opposition are largely the same as those set forth in Argonaut's affirmative motion for summary judgment served on May 17, 2013.  In order not to burden the Court with duplicative briefing, we do not repeat the Factual Background here but instead respectfully incorporate it by reference.  *See* Argonaut Mot. at 2-14.  To the extent that there are additional facts relevant to the determination of ICSOP's motion or instances in which ICSOP has mischaracterized certain facts material to its motion, we address such facts below in the context of the arguments to which they are relevant.

## ARGUMENT

### I.    APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment only if it concludes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82 (2d Cir.

2004). A fact is material if it might affect the outcome of the case, and it is genuine if based on the evidence provided a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of proving that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323. The court's role is not "to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Electric Boat Co.*, 609 F.3d 537, 545 (2d Cir. 2010).

The court must "'resolve all ambiguities and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *N.R.D.C., Inc. v. F.D.A.*, 710 F.3d 71, 79 (2d Cir. 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001)). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party as to an issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford*, 39 F.3d at 82-83 (citations omitted). This standard remains applicable in cases where both parties applied for summary judgment. *Atlantic Mutual Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).

## II.   THERE IS NO SUBSTANTIVE CONFLICT BETWEEN THE LAW OF NEW YORK AND THE LAW OF CALIFORNIA REGARDING LATE NOTICE

Notwithstanding that the Facultative Certificate was issued in California, ICSOP decided to bring this action in New York. Based on statements by ICSOP's counsel at the preliminary conference in response to a question from the Court on whether there was a choice of law issue in this case, it appeared that the parties were agreed that there was no substantive conflict between the law of the jurisdiction where the reinsurance agreement was originally placed and the jurisdiction ICSOP chose for this action. But in its motion, ICSOP argues that a choice of law analysis is necessary because there is a "clear conflict" between the law of New York and

the law of California regarding the elements of a late notice defense under a reinsurance contract.

There is no dispute between the parties that this Court, sitting in diversity, applies the choice of law rules of New York as the forum state. *See* ICSOP Mot. at 12; *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co. (IBM)*, 363 F.3d 137, 143 (2d Cir. 2004). Under New York choice of law rules, where there is no substantive conflict between the laws of two different jurisdictions with an interest in the case, no choice of law analysis is necessary. *IBM*, 363 F.3d at 143-44 (finding no conflict between New York and California law regarding insurer's duty to defend). ICSOP claims a conflict between New York and California law on whether a showing of bad faith or gross negligence will support a late notice defense, but can point to no California decision (state of federal) rejecting or even addressing that proposition. As set forth below, such silence in California cannot support a conflict. "If the party advocating a choice of law analysis fails to demonstrate an actual conflict between New York and another state's laws, no choice of law analysis need be undertaken." *Park Place Entm't Corp. v. Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 408 (S.D.N.Y. 2002) (citing *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223, 613 N.E.2d 936, 937, 597 N.Y.S.2d 904, 905 (1993)).

Because there is no relevant decision from any state or federal court in California, this Court must predict what the California Supreme Court would determine on this issue. As the principles supporting the rule in New York are well recognized under California law as well, the Court should find that California law does not conflict with New York and no choice of law analysis is necessary.

### A.    There Is No "Clear Conflict" Between The Laws Of New York And California Regarding The Elements Of A Late Notice Defense

As ICSOP states in its motion, under New York law a showing of prejudice is not the only basis on which to support a defense of late notice in the reinsurance context. "[A]

reinsured's failure to provide timely notice 'may entitle the reinsurer to relief without showing prejudice if the reinsured acted in bad faith.'" ICSOP Mot. at 13 (citing *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 281 (2d Cir. 1992)). In an attempt to avoid this issue, ICSOP incorrectly argues that California law conflicts with New York law on this point.

The only case cited by ICSOP applying California law to a late notice defense in the reinsurance context is *Ins. Co. of State of Pa. v. Associated Int'l Ins. Co. (ICSOP)*, 922 F.2d 516, 524-25 (9th Cir. 1990). ICSOP cites *ICSOP* for the proposition that California law applies the notice-prejudice rule in the reinsurance context. But so does New York law. *See Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 79 N.Y.2d 576 (1992); *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993). The relevant question here is whether the laws of the two states differ on the additional basis for a late notice defense, *i.e.*, whether untimely notice by the reinsured was the result of bad faith or gross negligence. On that question, the Second Circuit has articulated New York law, but no court has addressed the issue under California law.

For this reason, ICSOP's attempted reliance on the Second Circuit's decision in *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278 (2d Cir. 1981) is misplaced. *See* ICSOP Mot. at 13. The court in *Factors* considered a situation in which the Sixth Circuit had directly addressed a question under Tennessee law, although the Tennessee Supreme Court had never done so. In that situation, the court determined it was appropriate to defer to the Sixth Circuit's prediction of Tennessee law.[2] But *Factors* does not apply in the situation presented by this case.

ICSOP argues, "[t]here is no California decision, state or federal, recognizing a 'bad

---

[2]   Notably, had certification of the question to the Tennessee Supreme Court been available, the court likely would have done so rather than rely upon the prediction of a coordinate federal circuit. *See Casey v. Merck & Co., Inc.*, 653 F.3d 95, 100 (2d Cir. 2011) *certified question answered*, 283 Va. 411, 722 S.E.2d 842 (2012).

faith' exception to California's notice-prejudice rule . . . ." ICSOP Mot. at 14.  By the same token, there is no decision under California law rejecting bad faith or gross negligence as a basis for the late notice defense.  ICSOP is, therefore, wrong when it says, "[a]ccordingly, there is a conflict between the laws of California and New York with respect to late notice under a reinsurance contract . . . ." *Id.*  Its citation to this Court's decision in *Travelers Cas. and Sur. Co. v. Dormitory Auth.*, No. 07 Civ. 6915 (DLC), 2008 WL 4861910, at *2 (S.D.N.Y. Nov. 5, 2008) is inapposite.  In that case, the Court considered an issue presented under New Jersey law, which expressly applied the notice-prejudice rule in the direct insurance context, and New York law, which at that time expressly rejected the notice-prejudice rule in the direct insurance context. *Id.* at *2.  In contrast, here ICSOP has simply presumed from the fact that no court in California has considered the question, that California would reject the bad faith/gross negligence basis for a late notice defense and that "accordingly" there must be a conflict.  The Second Circuit has expressly rejected this type of argument.

Where there is no decision on point from a relevant foreign jurisdiction, the Second Circuit has acknowledged that *Factors* does not apply and that the federal court sitting in New York must instead apply a two-step inquiry to determine (1) how the courts of the forum state would predict (2) what the supreme court of the foreign state would decide regarding the relevant issue. *See Rogers v. Grimaldi*, 875 F.2d 994, 1002, n.10 (2d Cir. 1989) (distinguishing *Factors*). In *Rogers*, the Second Circuit confronted an issue involving a right of publicity where under New York law such claims are governed by the plaintiff's domicile, which in that case was Oregon. *Id.* at 1002.  However, Oregon courts had not determined the scope of the common law right of publicity. *Id.*  The court therefore engaged in the task of "predicting what the New York courts would predict the Oregon courts would rule as to the contours of a right of publicity under

7

Oregon law." *Id.*  In undertaking that task, the court explained the approach of New York courts:

> We believe that New York courts would, as a matter of substantive interpretation, presume that the unsettled common law of another state would resemble New York's but that they would examine the law of the other jurisdiction and that of other states, as well as their own, in making an ultimate determination as to the likely future content of the other jurisdiction's law.

875 F.2d at 1003.

When the Second Circuit is presented with such questions, it can either certify the disputed issue to the relevant state supreme court or predict how that court would decide if it were presented with the issue.  *See Executive Plaza, LLC v. Peerless Ins. Co.*, No. 12-1470-cv, 2013 WL 2249134, at *1-2 (2d Cir. May 23, 2013); *Holmes v. Grubman*, 568 F.3d 329, 339-40 (2d Cir. 2009).  While the California Supreme Court has a rule permitting presentation of certified questions from federal courts of appeal, it does not accept such questions from federal district courts.  *See* Cal. Ct. R. 8.548.  Accordingly, it falls to this Court to predict how the California Supreme Court would address the bad faith/gross negligence basis for a late notice defense under a reinsurance contract.

### B.    California Law Would Recognize Bad Faith Or Gross Negligence On The Part Of A Reinsured As A Basis To Support A Defense Of Late Notice

Since this Court's task begins with a presumption that unsettled common law in California would resemble the law in New York and then involves an examination of the law of California to make an ultimate determination, *Rogers*, 875 F.2d at 1003, the Court should begin by considering the rule in New York and its animating principle.  The New York Court of Appeals announced the notice-prejudice rule applicable to reinsurance in *Unigard*.  *See* 79 N.Y.2d at 581.  Shortly thereafter, the Second Circuit had occasion to apply the rule in *Christiania*, and stated that "a reinsured's failure to provide prompt notice may entitle the reinsurer to relief without showing prejudice if the reinsured acted in bad faith."  *Christiania*,

979 F.2d at 281 (cited in *Unigard*, 4 F.3d at 1069).  The following year, the Second Circuit

further explained what bad faith means in the context of notice and confirmed that it can be the

basis for a successful late notice defense by a reinsurer:

> We thus think that the proper minimum standard for bad faith
> should be gross negligence or recklessness.  If a ceding insurer
> deliberately deceives a reinsurer, that deception is of course bad
> faith.   However, if a ceding insurer has implemented routine
> practices and controls to ensure notification to reinsurers but
> inadvertence causes a lapse, the insurer has not acted in bad faith.
> But if a ceding insurer does not implement such practices and
> controls, then it has willfully disregarded the risk to reinsurers and
> is guilty of gross negligence.  A reinsurer, dependent on its ceding
> insurer for information, should be able to expect at least this level
> of protection, and, if a ceding insurer fails to provide it, the
> reinsurer's late loss notice defense should succeed.

*Unigard*, 4 F.3d at 1069; *see also Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 09 Civ.

10607 (RKE), 2012 WL 1520851, at *3 (S.D.N.Y. Apr. 30, 2012) (applying *Unigard* to permit

discovery in support of late notice defense regarding not only the existence of reinsured's notice

procedures but also whether such procedures were adequate and reasonable).

The principle underpinning New York law regarding bad faith or gross negligence as a

basis for a late notice defense is a principle that goes to the heart of the reinsurance relationship:

the duty of utmost good faith or *uberrima fidei*.  *See Unigard*, 4 F.3d at 1066 ("The good faith

and fair dealing implied in all contracts also required notice.   In reinsurance, we have

characterized the duty in dicta as one of 'utmost good faith.'" (citing *Christiania*, 979 F.2d at

278)).  This duty of utmost good faith is embedded in New York law on reinsurance; courts have

recognized that the reinsurance industry could not function if such good faith did not apply.  *See*

*Christiania*, 979 F.2d at 278 ("The relationship between a reinsurer and a reinsured is one of

utmost good faith, requiring the reinsured to disclose to the reinsurer all facts that materially

affect the risk of which it is aware...."); *Unigard*, 4 F.3d at 1054 ("[R]einsurers are dependent on

their ceding insurers for prompt and full disclosure of information concerning pertinent risks."). There is no question, therefore, that the reinsurance relationship under New York law is governed by the principle of utmost good faith.  Instead, as the Second Circuit explained, "The question, then, is what good faith requires of a ceding insurer in the notice context." *Unigard*, 4 F.3d at 1069.  That question has been answered under New York law holding that it requires, at a bare minimum, adequate practices and controls to ensure prompt notice as required by a reinsurance contract. *Id*.

In this sense, the bad faith/gross negligence basis for a late notice defense is a natural corollary of the prejudice requirement.  Both are meant to ensure that late notice does not result in a technical forfeiture by the reinsured but rather that coverage is lost only if there is a material breach of the reinsurance contract.  A reinsurer can establish such a material breach either by showing prejudice flowing from the untimely notice or by showing the untimely notice was the result of a breach of the fundamental good faith obligations necessary to make the contract work.

While no California court has addressed the same question of what good faith requires in the context of notice, the animating principle of utmost good faith that answered the question under New York law applies with equal if not greater strength under California law.  The Second Circuit has found no difference between California and New York law on the doctrine of utmost good faith. *See Gerling Global Reinsurance Co.-U.S. Branch v. ACE Prop. & Cas. Ins. Co.*, 42 F. App'x 522, 524, n.2 (2d Cir. 2002) (noting the parties "have not identified, and we have not found, any substantive difference between New York and California law regarding the doctrine of *uberrima fides*.").  In fact, the concept of utmost good faith in reinsurance is not merely a part of the common law of California, it is also written into California statute.  The California Insurance Code provides, "Where an insurer obtains reinsurance, he must communicate all the

10

representations of the original insured, and also all the knowledge and information he possesses, whether previously or subsequently acquired, which are material to the risk." Cal. Ins. Code § 622. *Compare Unigard*, 4 F.3d at 1069 (2d Cir. 1993) ("[T]he duty of good faith requires the ceding insurer to place the reinsurer 'in the same [situation] as himself [and] to give him the same opportunity of judging the value of the risks.'" (quoting *Christiania*, 979 F.2d at 280)).

        As one noted commentator on reinsurance law has explained in an article on California law, "A contract of reinsurance is therefore a contract of *uberrimae Fidei*. That standard seems to be reflected in section 622 and is accepted in the commercial world." Graydon S. Staring, *The Law of Reinsurance Contracts in California in Relation to Anglo-American Common Law*, 23 U.S.F. L. Rev. 1, 7 (1988). Indeed, the California legislature copied its provisions on reinsurance, including section 622, from New York law. *Id.* at 2 ("The California Civil Code sections [on reinsurance] had been copied in 1872 from sections of the New York Civil Code of 1865, commonly referred to as the Field Code."). As Professor Staring explained, Section 622 regarding the duty of utmost good faith "is derived from Duer [an American commentator] and an early New York case . . . ." *Id.* at 5.

        Accordingly, when this Court examines California law, there is no basis to predict that the California Supreme Court would decide the issue of bad faith or gross negligence in the late notice context any differently than the Second Circuit articulated the question and answer in *Unigard*. In fact, because California law on good faith in the reinsurance context is in accord with (and actually based upon and copied from) New York law, the only reasonable conclusion is that California law would be the same as New York law on this point and the Court should make that determination.

        Where there is no conflict of law, no choice of law analysis is needed and New York

courts are free to apply New York law. *IBM*, 363 F.3d at 143. Here, whether under New York law or California law, the Court should find that Argonaut's late notice defense should succeed if ICSOP's late notice was the result of bad faith or gross negligence.

### III.   ICSOP'S MOTION MUST BE DENIED PENDING DISCOVERY REGARDING WHETHER IT HAS ACTED IN BAD FAITH OR WAS GROSSLY NEGLIGENT WITH RESPECT TO ITS NOTICE OBLIGATIONS

ICSOP's motion assumed *arguendo* that its notice of the Kaiser claim to Argonaut was late. *See* ICSOP Mot. at 1. The motion does not attempt any argument to establish that ICSOP's notice was timely – coming as it did decades after ICSOP first learned of the claims, years after the underlying coverage action began and critical motion practice, appeals, and decisions were made, and even after a settlement was negotiated. To the contrary, as Argonaut set out in its affirmative motion for summary judgment, ICSOP's notice of the claim was woefully late as a matter of law. *See* Argonaut Mot. at 17-20.

There is no small irony in the fact that the only California case ICSOP cites regarding late notice in the reinsurance context is *ICSOP* (although in its motion, ICSOP refers to it as *Associated*). In that case – involving the very same AIG member company at issue here represented by the very same California lawyers (Lynberg & Watkins) who represented it on the underlying Kaiser claim at issue here (*see ICSOP*, 922 F.2d at 518) – the court held that ICSOP had breached its notice obligations to its facultative reinsurer. The late notice in that case and this one were not isolated incidents. In addition to the *ICSOP* case, the AIG member companies have been the focus of numerous late notice cases. *See, e.g., AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052 SHS, 2013 WL 1195258, at *13 (S.D.N.Y. Mar. 25, 2013) (AIU's three-year delay in giving notice to its reinsurer held unreasonable); *Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 09 Civ. 10607 RKE, 2012 WL 1520851 (S.D.N.Y. Apr. 30, 2012) (late notice alleged against Granite State); *Am. Home Assur. Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 443, 684 N.E.2d

14, 18 (1997) (sustaining defense based on late notice provided by American Home); *Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993) (American Home's delay in giving notice to excess insurer held untimely), *cert. denied*, 508 U.S. 973 (1993); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Affiliated FM Ins. Co.*, 974 F.2d 1343 (9th Cir. 1992) (affirming district court's finding that defendant-insurer was prejudiced by National Union's six-year delay in giving notice of claim). Indeed, in noting that "courts applying New York law routinely hold that delays for one or two months are unreasonable," this Court used an AIG member company's delay as an example. *Atlantic Cas. Ins. Co. v. Value Waterproofing,* Inc., No. 11 Civ. 7565 DLC, 2013 WL 152854, at *7 (S.D.N.Y. Jan. 15, 2013) (citing, *inter alia*, *Am. Home Assur., Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993).

In addition, while ICSOP might claim that its late notice in this case (and the many others) was simply inadvertent, Argonaut has a good-faith basis to believe that the persistent late notice by ICSOP and its fellow AIG member companies stems from systemic issues. Both Argonaut witnesses testified that Argonaut had long had difficulties with AIG reporting claims late and that AIG reinsurance executives had acknowledged that the problems needed to be addressed systemically. *See* Keely Decl. Ex. 2 (Hollender Dep.) at 61-62, 123-125; Ex. 4 (Stuhr Dep.) at 95-96. As Chris Hollender wrote to an AIG reinsurance executive in 2008, "While we've heard over the past year that AIG has been discussing internally ways to improve reinsurance reporting, it has yet to come to fruition." *Id.* Ex. 17 at ARG00003660.

ICSOP's motion for summary judgment must, therefore, be denied because there are material questions of fact regarding whether ICSOP's late notice was the result of its bad faith or gross negligence. The Court expressly limited discovery in the initial phase of this case to the issue of prejudice resulting from ICSOP's notice. *See* Docket No. 9. Discovery regarding issues

of ICSOP's bad faith or gross negligence was reserved for a subsequent phase.  The parties relied upon this phasing when conducting discovery.  ICSOP objected to certain discovery requests from Argonaut and Argonaut agreed that ICSOP need not respond to those requests in the initial phase on the basis of the Court's scheduling order.  *See* Keely Opp. Decl. Ex. A.  In this posture, ICSOP's motion must be denied pending further discovery on the issue of bad faith or gross negligence, including with respect to ICSOP's procedures and controls for ensuring prompt notice.  *See* Fed. R. Civ. P. Rule 56(d); *Peele v. Mattingly*, No. 06 Civ. 13423(LBS), 2007 WL 2509766, at *1 (S.D.N.Y. Sept. 5, 2007) ("The Supreme Court has stressed [Rule 56(d)] as an important safety valve to prevent nonmovants from being 'railroaded' by a premature summary judgment motion." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986))).

## IV.  ICSOP'S MOTION MUST BE DENIED BECAUSE ARGONAUT SUFFERED SUBSTANTIAL PREJUDICE AS A RESULT OF ICSOP'S LATE NOTICE

ICSOP argues that it is entitled to summary judgment because Argonaut cannot establish that it suffered "actual and substantial prejudice as required under California law."  ICSOP Mot. at 16.  Initially, ICSOP's singular focus on California law in its prejudice analysis is mistaken because, unlike with respect to the bad faith/gross negligence standard, ICSOP has not contended that the notice-prejudice rule in California differs in any way from the notice-prejudice rule in New York.  Indeed, the case on which ICSOP relies for the notice-prejudice rule in California found New York law on notice-prejudice "instructive and noteworthy."  *ICSOP*, 922 F.2d at 523 (citing *Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*, 745 F. Supp. 150 (S.D.N.Y. 1990)).  Because there is no conflict – either in fact or asserted by ICSOP – the Court is free to apply New York law and can refer to the law of both states.  *See IBM*, 363 F.3d at 143.

ICSOP's motion must be denied because Argonaut has presented evidence establishing substantial prejudice cognizable under both California law and New York law.  ICSOP's late

notice caused prejudice to Argonaut in two main ways.  First, by delaying notice until after ICSOP had litigated all of the main issues in the underlying coverage action and settled the case, ICSOP denied Argonaut the ability to protect its interests both in the litigation and the settlement.  While prejudice will not be presumed merely from the fact that notice was late, in certain factual scenarios prejudice is inherent in the denial of the reinsurer's ability and right to be involved in the investigation and defense of the claim.  The unique facts of this case give rise to such prejudice.  Second, ICSOP's late notice caused specific pecuniary prejudice to Argonaut because Argonaut commuted (*i.e.*, released) retrocessional coverage it otherwise would have had available for the Kaiser claim without being able to incorporate the liability for the Kaiser claim in the pricing for such commutations.  The record on these two bases of prejudice entitles Argonaut to summary judgment.  At the very least, the record presents material issues of fact that preclude summary judgment in favor of ICSOP.

### A.   AIG's Inherent Conflicts In Handling And Settling The Kaiser Claim Substantially Prejudiced Argonaut

There are aspects of this case that are unique and make the prejudice analysis particularly sensitive to the facts here.  As ICSOP notes at the outset of its Statement of Facts, the 1974 ICSOP Policy "provided coverage of $5,000,000 per occurrence excess of the 1974 Truck Policy with no general aggregate limit."  ICSOP Mot. at 5.  This lack of a general aggregate limit was a distinct and dangerous feature of the policy.  It was distinct because the AIG member companies issued more than a dozen policies to Kaiser with total limits of more than $170 million.  *See* Keely Decl. Ex. 27 at ICSOP0007340 – 7341.  But all of those policies contained general aggregate limits except for the 1974 ICSOP Policy and one other ICSOP policy in the same layer of coverage.  *Id*.  It was a dangerous feature of the 1974 ICSOP Policy because it exposed the policy to potentially unlimited liability.  While the policies with a general aggregate limit would

pay their one aggregate limit regardless of how many occurrences Kaiser's asbestos claims were determined to be, the 1974 ICSOP Policy would have to make as many limits available as there were occurrences.

The lack of an aggregate limit in the 1974 ICSOP Policy gave rise to another unique aspect of this case. AIG, in handling the Kaiser claims against its many different policies, had inherent conflicts of interest. *See* Argonaut Mot. at 6-7, 21-24. The conflicts were neither hypothetical nor speculative. AIG's own counsel in the underlying coverage action, Lynberg & Watkins, admitted the conflicts and that they affected AIG's strategy when the critical question of the number of occurrences was presented to the court in the coverage action:



Keely Decl. Ex. 14 at ARG00001206 – 1207 (emphasis in original by Lynberg & Watkins). This admission by AIG's counsel is clear; AIG had interests beyond those of the 1974 ICSOP Policy and actually in conflict with that policy. Since the 1974 ICSOP Policy was the only policy reinsured by Argonaut, AIG's interests conflicted with Argonaut's.

This factual scenario contrasts with the assumptions in decisions articulating the notice-prejudice rule for reinsurance that the interests of the reinsured and its reinsurer would generally be aligned in the defense and settlement of the underlying claim. *See Unigard*, 79 N.Y.2d at 583 ("the interests of a reinsurer and the ceding primary insurer with respect to a pending claim are generally identical"); *ICSOP*, 922 F.2d at 523 (quoting *Christiania* for the proposition that "the issues in reinsurance were sufficiently distinguishable from those in primary insurance to justify

a different notice rule"). It is against this backdrop of generally identical interests that the court in *ICSOP* stated, "Indeed, prejudice is not established *merely* because the late notice prevented the insurer from 'contemporaneously investigat[ing] the claim,' nor does it arise from the *mere* 'denial of the opportunity to make an early settlement of the claim.'" *ICSOP*, 922 F.2d at 524 (emphasis supplied) (quoting *Northwestern Title Sec. Co. v. Flack*, 6 Cal. App. 3d 134, 141 (1970)). The use of "mere" by the court cannot be overlooked. The court ruled that late notice would not *by itself* establish prejudice. *Accord Unigard*, 4 F.3d at 1069 (rejecting argument that "the loss of contractual rights is prejudicial in and of itself").

But in certain factual scenarios the loss of such contractual rights will inherently support a finding of prejudice. This proposition was acknowledged by the very case relied upon by the Ninth Circuit in *ICSOP*. In *Northwestern Title*, the court explained how the Supreme Court had previously recognized circumstances where "prejudice must be presumed from a violation of the cooperation clause" because under the circumstances "prejudice naturally, inherently and necessarily existed." *Northwestern Title*, 6 Cal. App. 3d at 140-41 (discussing *Purefoy v. Pacific Auto. Indem. Exchange*, 5 Cal. 2d 81, 88 (1935)). *See also Earle v. State Farm Fire & Cas. Co.*, 935 F. Supp. 1076, 1080 (N.D. Cal. 1996); *Fireman's Fund Ins. Co. v. Nat'l Bank for Cooperatives*, 849 F. Supp. 1347, 1368 (N.D. Cal. 1994).

This case presents just such a factual scenario in which prejudice naturally existed when ICSOP failed to give Argonaut notice of the underlying claim and of ICSOP's inherent conflicts. Indeed, in the direct insurance context it is well settled that – even where the insurer has the right and duty to control the defense of a claim – when the interests of the insured and its insurer conflict regarding some aspect of the defense of a claim, the insured is entitled to independent counsel to protect its interests. *See San Diego Fed. Credit Union v. Cumis Ins. Society, Inc.*, 162

Cal. App. 3d 358 (1984), *superseded by statute*, Cal. Civ. Code § 2860; *Public Service Mutual Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 401-02, 442 N.Y.S.2d 422, 427, 425 N.E.2d 810, 815 (1981); *Prashker v. U.S. Guar. Co.*, 1 N.Y.2d 584, 593, 154 N.Y.S.2d 910, 917, 136 N.E.2d 871, 876 (1956).   The fact of the conflict necessitates independent counsel lest the insured be prejudiced.  By failing to give Argonaut notice of the Kaiser claim until AIG had made all of the litigation decisions and settled the case, ICSOP denied Argonaut the ability to engage its own counsel to associate and protect the interests of Argonaut and the 1974 ICSOP Policy.

ICSOP argues, "Argonaut cannot credibly claim that it was prejudiced because it would have associated in the defense of the California Coverage Litigation had it received notice from ICSOP sooner." ICSOP Mot. at 17.  This argument ignores critical facts here.  **First,** ICSOP says that Argonaut admits it did not exercise its right to associate with ICSOP in defense of the claim.  *Id.*  But by the time ICSOP gave Argonaut notice of the claim, all of the critical coverage issues had been lost by ICSOP in the court and ICSOP had already struck its settlement.  The only remaining proceeding was the appeal (on which the settlement was conditioned) in which ICSOP was attempting to convince the appellate court that losses from the multiple occurrences should be spread horizontally across all of Kaiser's primary insurance policies rather than allocated solely to the 1974 year and ICSOP's umbrella policy. At that point and on that issue, Argonaut's interests were aligned with ICSOP's.  When ICSOP refers to Chris Hollender's deposition testimony saying "I think basically that the position that they've taken is correct" (ICSOP Mot. at 17, quoting Hollender Dep. at 165:6-10), that is the issue Mr. Hollender was referencing – ICSOP's position "in terms of horizontal exhaustion." *See* Amer Dec. Ex. 1 at 164:24-25. When asked what position Argonaut would have wanted to see advanced, he went on to testify, "[I]t's difficult to say because we didn't have a full understanding.  You know, we

18

didn't know early on what was going on with the case." *Id.* at 165:2-5.  While ICSOP attempts to condemn this as "speculative," it is the direct and prejudicial result of ICSOP's own late notice.  *See Earle*, 935 F. Supp. 1080 (sustaining insurer's late notice defense under California law even though "any attempt to demonstrate what would have happened had State Farm received timely tender is necessarily speculation"); *Ethicon, Inc., v. Aetna Cas. and Surety Co.*, 805 F. Supp. 203, 205 (S.D.N.Y. 1992) (sustaining late notice defense under notice-prejudice rule under New Jersey law even though "the potential twists that the case might have taken had Aetna been involved are impossible to reconstruct."), *aff'd*, 993 F.2d 1532 (2d Cir. 1993).

**Second,** ICSOP's citation of Mr. Hollender's testimony that he could not recall any other instance where Argonaut exercised a right to associate under any of its facultative certificates, *see* ICSOP Mot. at 17, ignores the unique facts here.  As Mr. Hollender testified, the Kaiser claim was the largest claim he had ever seen under any of Argonaut's facultative certificates. Keely Decl. Ex. 2 at 210-211.  This fact alone indicates Argonaut would have treated it differently.  But there is an additional fact unique to this case relating to the critical issue of the lack of an aggregate limit in the 1974 ICSOP Policy.  The potential for the existence of multiple occurrences coupled with a lack of aggregate limits was an issue that Argonaut was particularly alive to because of its experience with a policyholder in its direct book of business called Western MacArthur.  Argonaut had issued direct insurance policies to a predecessor of Western MacArthur, and by 1995 MacArthur had sought coverage from Argonaut for asbestos liabilities. *See, e.g., Argonaut Ins. Co. v. MacArthur Co.*, No. C 012–03878 WHA, 2002 WL 145400, at *1 (N.D. Cal. Jan 18, 2002).  Argonaut was involved in coverage actions with MacArthur in the 1990s and the early 2000s.  MacArthur argued that Argonaut faced potentially uncapped exposure in relation to asbestos liabilities because aggregate limits would not apply.  Ultimately,

Argonaut settled the claims for many multiples of its policy limits.  *See* Keely Opp. Decl. Ex. B at 28.

As Chris Hollender testified at his deposition, because of Argonaut's experience with Western MacArthur, learning that there were claims against the 1974 ICSOP Policy – a low-layer umbrella policy without an aggregate limit – would have been a significant event:

> So something above a million dollar or a half million dollar policy is definitely a red flag.
>
> The fact that it was written without an occurrence limit is even more so, and I base that on the fact that Argonaut and its direct book has had its fair share of unaggregated exposure from asbestos claims from Thorpe, for example, Western MacArthur.

Keely Decl. Ex. 2 (Hollender Dep.) at 209.  *See also* Keely Opp. Decl. Ex. C (Hollender Dep.) at 226 ("This would have been in the era of our settling Western MacArthur, maybe shortly after. Very sensitive to potential exposure on policies or contracts that have no aggregate limit.").

Thus, while it is necessarily impossible to say with certainty what the results of the coverage action might have been if Argonaut had notice, there is nothing speculative about what Argonaut's reaction would have been based on its very relevant experience with Western MacArthur.  Notice of the Kaiser claim would have been a red flag giving Argonaut the ability to address the issue of the number of occurrences in the coverage action and also to associate with ICSOP to explore earlier settlement – rather than after ICSOP had lost the coverage issues in the court.  *See Nat'l Union Fire Ins. Co. v. Gen. Star Indem. Co.*, 216 F. App'x 273, 281 (3d Cir. 2007) (affirming decision under California law granting summary judgment to excess insurer on late notice defense finding substantial prejudice where late notice "deprived [excess insurer] of any opportunity to assess whether [primary insurer's] failure to explore settlement was reasonable and prevented [excess insurer] from participating in, and perhaps effecting, a better outcome.").  Common sense indicates that Argonaut would have heeded that red flag to act on its

rights particularly if ICSOP had also disclosed – as it should have – that it had a conflict in asserting coverage positions because AIG policies with aggregate limits would benefit from coverage findings that would increase the exposure to the 1974 ICSOP Policy.

ICSOP argues that Argonaut cannot articulate prejudice from the settlement that ICSOP ultimately struck with Kaiser and London Market Insurers because Argonaut "fails to articulate what different contribution agreement it would have sought to negotiate with London Market Insurers had it been given notice sooner."  ICSOP Mot. at 18-19.  Again, ICSOP attempts to leverage its own late notice as a basis for arguing Argonaut cannot articulate a specific alternative result.  AIG's own corporate representative regarding the settlement negotiations could not even testify about what went on at the negotiations.  *See* Keely Decl. Ex. 1 (DiCaprio Dep.) at 119-120.  ICSOP should not be permitted to argue that "a party must show that it would have negotiated a better outcome," ICSOP Mot. at 20, when ICSOP has not even explained how it got to the outcome it reached.

What also appears to be undisputed is that, while the settlement negotiations involved sharing by London Market Insurers, ICSOP never attempted to obtain similar contribution from its fellow AIG member companies or even the two other ICSOP policies sitting in exactly the same layer as the 1974 ICSOP Policy.  *See* Keely Decl. Ex. 1 (DiCaprio Dep.) at 117-120.  If Argonaut had notice, it would have advocated that position.  As Mr. Hollender testified on this issue in connection with the settlement, "Based on principles of contribution, ICSOP would have had that right anyway in California.  And so it's somewhat amazing to me that they seem to suggest that contribution is now a foregone conclusion, yet they've got all their other policies at their own layer from which to seek contribution."  Keely Opp. Decl. Ex. C (Hollender Dep.) at 172-173.  Of course, this was another consequence and necessary prejudice resulting from those

inherent conflicts of interest in which AIG did what it considered best for AIG as a whole rather than advocating and negotiating solely in the interest of the 1974 ICSOP Policy reinsured by Argonaut.

Accordingly, at the very least, the record presents material issues of fact precluding summary judgment for ICSOP regarding the prejudice to Argonaut flowing from ICSOP's late notice following AIG's conduct of the coverage action and unilateral pursuit of its own interests in the settlement agreement.

### B.   Argonaut Suffered Substantial Prejudice Because It Commuted Its Own Retrocessional Protection Without Notice From ICSOP Of The Kaiser Liabilities

ICSOP argues that Argonaut cannot establish substantial prejudice as the result of its commutations of its own retrocession because such prejudice is "legally irrelevant" and "pure speculation." *See* ICSOP Mot. at 20-23. Both contentions are incorrect.

ICSOP argues that a commutation such as those Argonaut entered into with its retrocessionaires is a "'collateral matter' irrelevant to the prejudice analysis in California." *Id.* at 21 (citing *ICSOP*, 922 F.2d at 525). ICSOP's argument overstretches its namesake case. The court in *ICSOP* began its discussion of prejudice by stating "no categorical definition of prejudice has been found" under California law. 922 F.2d at 524. Moreover, ICSOP carefully refrains from saying that the Ninth Circuit *held* that commutations cannot constitute actual and substantial prejudice. This is for at least two reasons. First, the Ninth Circuit was not presented in *ICSOP* with an argument based on a commutation agreement.[3] Second, the court's discussion

---

[3]  In *ICSOP*, Associated argued that it was unable to assert a claim for its own reinsurance against a retrocessionaire, Mission Insurance Company, that had gone insolvent in 1985, the year before ICSOP settled the underlying claim and then gave notice to Associated. *ICSOP*, 922 F.2d at 525, 522. That situation differs markedly from a commutation because the ceding reinsurer has no control of when its retrocessionaire goes insolvent. In contrast, with a commutation the ceding reinsurer has control over whether to enter into the agreement and

of "collateral matters" was *dicta*.  922 F.2d at 525 ("It is not necessary, however, for this court to decide this question since, based on the record, there is no factual basis for concluding that Associated suffered the alleged collateral losses, or that, had they been sustained, they would have resulted from the delayed notice.").  Lost retrocessional recoveries resulting from late notice are legally relevant because they are "actual" prejudice measured in dollars and cents and here they are substantial because the recoveries currently run into the hundreds of thousands of dollars and could run into the millions depending upon how many more occurrences get billed by Kaiser to the 1974 ICSOP Policy.[4]

ICSOP attempts to argue that Argonaut's prejudice from the commutations is speculative because the commutations contained a component for IBNR (*i.e.*, losses incurred but not reported) and that "Argonaut ignores the fact that it received additional compensation from each retrocessionaire as part of each commutation" as the result of IBNR.  ICSOP Mot. at 21.  This argument ignores the testimony of Chris Hollender regarding the way in which the commutation prices were calculated, including the portion of the price relating to IBNR.  The IBNR portion was based on the inventory of paid claims and case reserves for noticed claims that Argonaut had on its books.  *See* Keely Decl. Ex. 2 (Hollender Dep.) at 206.  The IBNR figure "was really grounded on looking at claims that are open and going year by year."  *Id.* at 231-233.  As Mr. Hollender discussed, the problem here is that Kaiser "was a big unknown at the time" Argonaut

---

what price to charge for it.  Prompt notice would give it the opportunity to refrain from the commutation or control how the noticed claim gets accounted for in the commutation price.

[4]  ICSOP argues that Mr. Hollender's explanation of prejudice as the result of lost tax benefits is also legally irrelevant and speculative.  Like the commutation amounts, they are not legally irrelevant because they constitute actual monetary losses.  However, unlike the commutation amounts, they are as Mr. Hollender testified relatively small.  Accordingly, Argonaut has focused its presentation on economic prejudice on commutations entered into during the period ICSOP should have but did not give Argonaut notice.

entered into the commutations. *Id.* at 207.  Kaiser was bigger than any facultative reinsurance claim on Argonaut's books and, thus, multiples for IBNR built off of what was "open and going" on Argonaut's facultative book were necessarily inadequate to account for the Kaiser loss.

The Kaiser loss was also qualitatively different from other accounts because of its exposure resulting from the lack of aggregate limits in the 1974 ICSOP Policy.  While Argonaut's Western MacArthur experience on the direct side of the book meant that Kaiser – if noticed to Argonaut – would have "definitely [been] a red flag," *id.* at 209, nothing on the facultative reinsurance side of the book would have built that type of unaggregated exposure into IBNR before Argonaut received notice.  The fact that IBNR at the time the Kaiser claim was unknown was not sufficient to compensate Argonaut is also supported by the fact that Argonaut's pricing for commutations increased after it received notice of the claim.  *See id.* at 231 (the retrocessionaire in those commutation discussions "were trying to figure out why our price is so high.  And part of that is because there is something in there for [Kaiser]").

Accordingly, Argonaut's prejudice in connection with its commutations is not speculative.  The pricing of those commutations was directly and adversely affected by Argonaut's inability to factor in the Kaiser losses because of ICSOP's years-late notice.  On these facts, ICSOP is not entitled to summary judgment dismissing Argonaut's late notice defense.

## CONCLUSION

For the reasons set forth herein and in the papers submitted in support of Argonaut's affirmative motion for summary judgment, Argonaut respectfully requests that the Court deny ICSOP's motion for partial summary judgment.

New York, New York
June 7, 2013

Respectfully Submitted,

By: _____

Sean Thomas Keely
Benjamin J.O. Lewis
Pooja Boisture
875 Third Avenue
New York, New York 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
sean.keely@hoganlovells.com
ben.lewis@hoganlovells.com
pooja.boisture@hoganlovells.com

*Attorneys for Defendant*
*Argonaut Insurance Company*

25