UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE INSURANCE COMPANY OF THE STATE  :
OF PENNSYLVANIA,                    :
                                    :  1:12-cv-06494-DLC
           Plaintiff,               :
                                    :
     vs.                            :
                                    :
ARGONAUT INSURANCE COMPANY,         :
                                    :
           Defendant.               :
                                    :
------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Plaintiff The Insurance Company of the State of Pennsylvania*

Andrew S. Amer,
Rae C. Adams,
    *Counsel.*

## Table of Contents

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. THERE IS NO "BAD FAITH" EXCEPTION TO CALIFORNIA'S LONG-STANDING NOTICE-PREJUDICE RULE | 2 |
| A. California Courts Are Clear That Absent A Showing Of Actual And Substantial Prejudice, A Late Notice Defense Will Fail | 2 |
| B. In Any Event, The California Supreme Court Would Not Follow *Unigard* Based On California's Strong Public Policy Against Technical Forfeitures | 4 |
| II. ARGONAUT HAS FAILED TO PROVE ACTUAL AND SUBSTANTIAL PREJUDICE AS A MATTER OF LAW | 6 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**CASES**

*Argo Corp. v. Greater New York Mut. Ins. Co.*, 4 N.Y.3d 332 (2005) ............................................. 5

*Bollinger v. Nat'l Fire Ins. Co.*, 25 Cal.2d 399 (1944) ...................................................................... 4

*Campbell v. Allstate Ins. Co.*, 60 Cal. 2d 303 (1963) ....................................................................... 3

*Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865 (1978) ...................................................................... 3

*Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278 (2d Cir. 1981) ................................................. 3, 4

*Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 5 N.Y.3d 742 (2005) ....................................... 5

*Ins. Co. of the State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516 (9th Cir. 1990) ......... 3, 4, 8, 9

*Northwestern Title Sec. Co. v. Flack*, 6 Cal App. 3d 134 (1970) ................................................. 3, 8

*Pacific Employers Ins. Co. v. Superior Court*, 221 Cal. App. 3d 1348 (1990) ............................... 3

*Steadfast Ins. Co. v. Dobbas,* No. CIVS05-0632FCD JFM, 2006 WL 89512 (E.D. Cal. Jan. 11, 2006) ............................................................................................................................ 8

*Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993) ............................. 2

*Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 79 N.Y.2d 576 (1992) .................................... 5

*Zenith Ins. Co. v. Employers Ins. of Wausau*, 141 F.3d 300 (7th Cir. 1998) ................................ 5, 6

**STATUTES**

N.Y. Ins. Law §3420(a) .................................................................................................................... 4

**OTHER AUTHORITIES**

Ostrager & Newman, *Handbook on Insurance Coverage Disputes* (16th ed. 2013) ....................... 4

## **PRELIMINARY STATEMENT**

For 50 years California courts have uniformly held that an insurer must establish actual and substantial prejudice to succeed on a late notice defense based on California's strong public policy against technical forfeitures, and the Ninth Circuit has held that this unbroken line of cases applies with full force to contracts of reinsurance. Based on this precedent, the Court should reject Argonaut's contention that California law is unsettled on this issue and that the California Supreme Court would recognize a "bad faith" exception to California's notice-prejudice rule to allow a forfeiture of reinsurance coverage in the absence of prejudice.

Applying California's notice-prejudice rule, the Court should conclude Argonaut's evidence falls far short of establishing the requisite actual and substantial prejudice to succeed on a late notice defense.[1] With respect to Argonaut's purported lost opportunity to associate in the defense of the California Coverage Litigation, Argonaut's argument fails because Truck vigorously advanced Argonaut's single occurrence position before the California courts, and after full consideration of that position the appellate court ruled each asbestos claim was a separate occurrence. Accordingly, it is certain that Argonaut's involvement in the coverage litigation would not have affected the outcome. Nor is there any basis to conclude that Argonaut would have achieved any better settlement terms had it received earlier notice. Argonaut's 30(b)(6) witness conceded as much at his deposition, and the settlement ICSOP did achieve was more favorable than the outcome under the court's coverage rulings. Finally, Argonaut's claim of prejudice resulting from various commutations is too indirect and speculative to establish actual and substantial prejudice as a matter of California law.

---

[1] The defined terms in this reply brief are the same as those used in ICSOP's opening brief.

## ARGUMENT

I. **THERE IS NO "BAD FAITH" EXCEPTION TO CALIFORNIA'S LONG-STANDING NOTICE-PREJUDICE RULE**

Argonaut does not dispute that if there is a conflict between the laws of California and New York with respect to late notice, then California law should apply under New York's choice-of-law rules. Rather, Argonaut maintains that California law is unsettled on the question of whether a reinsurer may succeed on a late notice defense in the absence of prejudice, and that the California Supreme Court would adopt the rule announced by the Second Circuit in *Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993).[2] Argonaut is wrong on both counts. California law is settled; there is no exception to California's long-standing notice-prejudice rule. And even if the Court were to find that the question is a matter of first impression in California, the California Supreme Court would not follow *Unigard* because California has long applied the notice-prejudice rule in the direct insurance context to protect insureds based on a strong public policy against technical forfeitures of insurance coverage, whereas New York has long followed a "no prejudice" rule in the direct insurance context to protect insurers, which has resulted in the technical forfeiture of coverage regardless of prejudice to the insurer.

    A. **California Courts Are Clear That Absent A Showing Of Actual And Substantial Prejudice, A Late Notice Defense Will Fail**

For 50 years it has been settled under California decisional law that an insurer must prove actual and substantial prejudice to avoid liability under a late notice defense. *Campbell v. Allstate Ins. Co.*, 60 Cal. 2d 303, 305-06 (1963); *see also Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 882 (1978); *Northwestern Title Sec. Co. v. Flack*, 6 Cal App. 3d 134, 142-43 (1970);

---

[2] In its brief opposing Argonaut's summary judgment motion (which is incorporated by reference herein), ICSOP also points out that California law differs from New York law in two other respects: (i) California law provides that an insured may satisfy its notice obligation by giving constructive notice; and (ii) California courts impose stricter prejudice requirements than New York courts. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment ("ICSOP Opp. Br.") at Point I.A.

*Pacific Employers Ins. Co. v. Superior Court*, 221 Cal. App. 3d 1348, 1357 (1990). In *Ins. Co. of the State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516 (9th Cir. 1990) ("*Associated*"), the Ninth Circuit predicted the California Supreme Court would apply this well-established "notice-prejudice rule" to reinsurance contracts. *Id.* at 524. The Ninth Circuit's decision in *Associated* is binding on this Court under the Second Circuit's opinion in *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2d Cir. 1981). Based on this precedent, prejudice is the *sine qua non* of a reinsurer's late notice defense under California law, without exception.

Argonaut argues that because no California court has ever expressly rejected a "bad faith" exception to this notice-prejudice rule, the matter is an open question and therefore *Factors* does not apply and this Court is free to predict how the California Supreme Court would rule on the issue. *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Argonaut Opp. Br.") at 6-7. But by repeatedly holding that an insurer must prove actual and substantial prejudice, California courts have *implicitly* rejected any and all exceptions, whether it be for "bad faith" or some other reason. By Argonaut's logic, an insurer could contend that the need to prove actual and substantial prejudice on a late notice defense remains an open question unless and until the California Supreme Court has expressly rejected all possible exceptions that arguably could apply. That is nonsensical. The California courts have spoken over the past 50 years in a clear and uniform voice, and their pronouncement means what it says: an insurer must prove actual and substantial prejudice. The cases do not say, as Argonaut urges, that an insurer must prove actual and substantial prejudice *unless the insurer can point to some other basis for an exception*. Because California law allows no exceptions to the notice-prejudice rule, this Court must follow the Ninth Circuit's application of that rule to reinsurance contracts under *Factors*. 652 F.2d at 283.

### B. In Any Event, The California Supreme Court Would Not Follow *Unigard* Based On California's Strong Public Policy Against Technical Forfeitures

Even if the Court were to conclude that California law is somehow unsettled on whether a "bad faith" exception to the notice-prejudice rule exists, California precedent leaves little doubt that the California Supreme Court would decline to follow the Second Circuit's decision interpreting New York law in *Unigard*.

There is a fundamental and stark contrast between New York law and California law with respect to late notice. California has long applied the notice-prejudice rule to require insurers to prove actual and substantial prejudice based on a strong public policy against "'technical forfeitures.'" *Associated*, 922 F.2d at 524 (*quoting Bollinger v. Nat'l Fire Ins. Co.*, 25 Cal.2d 399, 405 (1944)). New York has long rejected the notice-prejudice rule in favor of a "no prejudice" rule - treating notice as a condition precedent to coverage, the breach of which will relieve an insurer of liability without any showing of prejudice.[3] *Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 79 N.Y.2d 576, 581 (1992) (New York Court of Appeals answering certified question from the Second Circuit) ("*Unigard II*"); *see also Argo Corp. v. Greater New York Mut. Ins. Co.*, 4 N.Y.3d 332, 339-40 (2005); *Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 5 N.Y.3d 742, 743-44 (2005); *see generally* Ostrager & Newman, *Handbook on Insurance Coverage Disputes*, at § 4.05[a] (16th ed. 2013). In contrast to the reliance by California courts on strong public policy protecting policyholders against technical forfeitures, New York courts apply the "no prejudice" rule to protect the insurer's right to investigate claims and prevent insurance fraud. *Unigard II*, 79 N.Y.2d at 581-82.

Argonaut argues that the California Supreme Court would follow *Unigard* because both New York and California recognize that reinsurance is governed by the duty of utmost good faith

---

[3] In 2008, the New York Legislature amended the New York Insurance Code to require insurers to prove prejudice on a late notice defense, but only as to policies delivered in New York on or after the effective date of the amendment. *See* N.Y. Ins. Law §3420(a) (amended July 21, 2008).

(Argonaut Opp. Br. at 10), but this argument ignores the fundamental difference in the approach taken by courts in each jurisdiction in the direct insurance context. Given California's *pro-policyholder* approach in the direct insurance context premised upon strong public policy against technical forfeitures of coverage, there is no reason to believe the California Supreme Court would choose to water down the notice-prejudice rule in the reinsurance context with a "bad faith" exception, thereby allowing a technical forfeiture of coverage where the reinsurer has suffered no prejudice as a result of delayed notice.

The decision in *Zenith Ins. Co. v. Employers Ins. of Wausau*, 141 F.3d 300 (7th Cir. 1998), is instructive. In *Zenith*, the reinsured defended its policyholder in an underlying tort action but delayed notice to its facultative reinsurer "until after the jury had returned a whopping verdict" against the policyholder. *Id.* at 302. The reinsurer denied coverage, asserting *inter alia* breach of the certificate's notice provision. *Id.* at 304. Wisconsin law governed the reinsurance contract, and in the absence of any controlling authority addressing late notice in the reinsurance context (unlike here where controlling authority – *Associated* – holds the direct insurance rule applies to reinsurance), the district court assumed the Wisconsin Supreme Court would follow the Second Circuit's decision in *Unigard*. *Id.* Accordingly, although Wisconsin law requires in the direct insurance context a "showing of prejudice in all cases in which an insurance company receives late notice" (*id.* at 307), the district court held that prejudice did not matter based upon the "bad faith" exception adopted in *Unigard*, and upon finding that the reinsured's late notice was in bad faith entered summary judgment in favor of the reinsurer. *Id.* at 307-08.

In reversing the district court, the Seventh Circuit began its analysis by concluding the lower court had improperly assumed the Wisconsin Supreme Court would follow the Second Circuit's decision in *Unigard;* the circuit court held the district court "moved too hastily to New York law, as the Second Circuit understands it, and did not fully take into account the

information we do have about the way Wisconsin handles insurance contracts." *Id.* at 304. After citing to a Wisconsin statute and a Wisconsin Supreme Court decision requiring a showing of prejudice to succeed on a late notice defense in the direct insurance context, the Seventh Circuit held there was "no analog" to "New York's bad faith exception to the prejudice requirement" in Wisconsin law, and remanded the case for a determination on whether the reinsurer had suffered prejudice. *Id.* at 308.

In the event the Court concludes the applicability of a bad faith exception to the notice-prejudice rule remains an open question in California (notwithstanding *Associated*), the Court should follow the same analysis as the *Zenith* court to conclude there is no analog to the *Unigard* bad faith exception in California law, and should therefore hold that the California Supreme Court would require Argonaut to prove actual and substantial prejudice.

## II.   ARGONAUT HAS FAILED TO PROVE ACTUAL AND SUBSTANTIAL PREJUDICE AS A MATTER OF LAW

Argonaut contends it was prejudiced by delay in notice because it was denied "the ability to engage its own counsel to associate and protect the interests of Argonaut and the 1974 ICSOP Policy." Argonaut Opp. Br. at 18. To the extent Argonaut suggests it would have actually exercised its right to associate here despite never having done so before (ICSOP Opening Br. at 17), it is certain such association would not have changed the outcome in the California Coverage Litigation, and therefore there can be no resulting prejudice.

Argonaut contends that if it had been given the opportunity to exercise its right to associate sooner, then it would have sought to urge ICSOP to advocate that Kaiser's asbestos claims arose from one occurrence. Argonaut Opening Br. at 22. Indeed, the "number of occurrences" issue is the only issue in the California Coverage Litigation on which Argonaut contends ICSOP's interests and Argonaut's interests were not aligned and required Argonaut's involvement to adequately protect Argonaut's interest under the Excess Policy. *Id.* Argonaut

cannot possibly establish prejudice, however, because the very position Argonaut purportedly would have asserted if it had been able to exercise its right to associate sooner – that Kaiser's asbestos claims arose from one occurrence – was, in fact, forcefully advanced by Truck and was ultimately rejected by the California appellate court. ICSOP Opp. Br. at 16. Notably, Argonaut fails to point to any argument it would have sought to advance in support of the single occurrence position that had not already been considered and rejected by the California appellate court. Accordingly, Argonaut has failed to establish that it suffered any prejudice as a result of a purported lost opportunity to exercise its right to associate in the defense of the California Coverage Litigation. *See Associated*, 922 F.2d at 524; *Steadfast Ins. Co. v. Dobbas,* No. CIVS05-0632FCD JFM, 2006 WL 89512, at *3 (E.D. Cal. Jan. 11, 2006) (holding that "while plaintiffs present evidence of what they would have done if they had notice of the claim, plaintiffs do *not* present evidence that, if these steps had been taken, it was substantially likely that the arbitrator would have found for the insured").

Argonaut also argues that delay in notice resulted in prejudice because it was deprived of the ability to pursue earlier settlement discussions. Under California law, "prejudice is not established . . . from the mere 'denial of the opportunity to make an early settlement of the claim.'" *Associated*, 922 F.2d at 524 (*quoting Flack*, 6 Cal.App.3d at 142-43). The reinsurer must demonstrate "a substantial likelihood that it could have . . . settled the case for a smaller sum than that for which its [reinsured] ultimately settled the claim." *Associated*, 922 F.2d at 524. As pointed out in ICSOP's opening brief, Argonaut cannot make such a showing; indeed, Argonaut's Mr. Hollender was unable to articulate what better settlement terms Argonaut could have achieved despite his full knowledge of the various rulings that had been issued in the California Coverage Litigation and his review of ICSOP's claim files, including memoranda

from ICSOP's coverage counsel.[4]  Amer Opp. Decl., Ex. 3 at 173:10-174:4; ICSOP Opening Br. at 9.

Moreover, putting aside Mr. Hollender's damaging testimony, there is simply no basis to conclude that Argonaut could have achieved any better result. ICSOP Opening Br. at Point II.B. The adverse coverage rulings placed the obligation to reimburse Kaiser for asbestos liability squarely on the shoulders of Truck and ICSOP and *the 1974 policy year*. There is no evidence to suggest that other insurers issuing policies in other years would have voluntarily agreed to contribute.[5]  Nor was it the case, as Argonaut misleadingly suggests, that ICSOP waived its right to contribution from others or gave the issue no consideration. ICSOP determined that it made more sense from the standpoint of efficiency to defer any effort to seek contribution from others (which might be costly) until after its appeal was decided. Amer Opp. Decl., Ex. 8 ("We plan on securing contribution from other policies. The first step in this process is to appeal the Court's ruling so that claims can be spread to additional policy years.")

Finally, Argonaut contends that it has suffered prejudice as a result of commutations it entered into with its retrocessionaires before receiving notice. As pointed out by ICSOP in its opening brief, the inability of a reinsurer to collect reinsurance from its retrocessionaire is a "collateral matter" irrelevant to the prejudice analysis in California. ICSOP Opening Br. at 21 (*quoting Associated*, 922 F.2d at 525). Argonaut contends that *Associated* is distinguishable

---

[4]    Argonaut seeks to downplay Mr. Hollender's testimony by contending that even ICSOP's witness, Patrick DiCaprio, was unable to "testify about what went on at the negotiations." Argonaut Opp. Br. at 21.  As explained by Mr. DiCaprio, ICSOP and its affiliates were represented at the 2009 mediation by Ron Ryan, who has since passed away. Declaration of Andrew S. Amer, dated June 14, 2013, Ex. 1 at 47:12-17; 48:11-18. And while Mr. DiCaprio stated that he could not testify about specific discussions that took place during the mediation because he was not there, he did confirm that in preparation for his deposition he had reviewed documents in the file relating to the negotiations and that he did have discussions with Mr. Ryan about the negotiations; Argonaut's counsel chose not to follow up on what Mr. DiCaprio and Mr. Ryan discussed. *Id.*, Ex. 1 at 120:10-122:4; 122:9-11.

[5]    Argonaut notes that "two other ICSOP policies sit[] in exactly the same layer as the 1974 ICSOP Policy." Argonaut Opp. Br. at 21. Argonaut ignores a critical point; what was obviously driving the settlement terms was not the "layer" of coverage but the year of coverage. Based on the court rulings, the 1974 policy year was obligated to pay and policies in other years – regardless of the layer – were not. ICSOP Opening Br. at Point II.A.

because there the reinsurer was unable to collect not because of a commutation but because the retrocessionaire had become insolvent. This is a distinction without a difference. The Ninth Circuit was clearly grouping together as "collateral matters" all types of alleged prejudice other than those arising in situations where the insurer demonstrates a substantial likelihood that it could have either defeated the claim or settled the case for a smaller sum. 922 F.2d at 524. So whether a reinsurer is unable to collect from a retrocessionaire because of insolvency or because of a commutation is irrelevant; under the Ninth Circuit's holding, it is still a "collateral matter" that is insufficient to "relieve an insurer from its liability under an insurance contract." *Id.*

In any event, even if prejudice resulting from commutations was legally relevant, Argonaut is clearly measuring such prejudice with the wrong yardstick. Argonaut maintains the prejudice should be "measured in dollars and cents" based on the amounts it would have collected from the retrocessionaires absent commutation. Argonaut Opp. Br. at 23. Not so. As Argonaut's Mr. Hollender conceded at his deposition, he was unaware of any commutation Argonaut would have avoided if Argonaut had received notice sooner. Amer Opp. Decl., Ex. 3 at 207:17-23. Rather, he acknowledged any prejudice related solely to the "pricing" issue. Amer Opp. Decl., Ex. 3 at 208:13-209:2. Accordingly, the prejudice to Argonaut, if any, should be measured by the difference between the compensation Argonaut actually obtained for any given commutation and the compensation it would have obtained for the commutation had Argonaut received prior notice of the Kaiser claim under the Fac Cert.

Argonaut has failed to establish any likelihood that it would have asked for, or received, a higher price for any commutation; indeed, the record establishes to the contrary. Argonaut acknowledges there was already a component for IBNR in the commutation prices paid by its retrocessionaires, but seeks to downplay the significance of that component in monetary terms because Kaiser "was a big unknown at the time" and IBNR was "built off of what was 'open and

going.'" Argonaut Opp. Br. at 23-24. But Mr. Hollender concedes at the time Argonaut was aware of large asbestos exposures such as Thorpe and Western MacArthur from its own book of assumed direct business (*id.* at 20), it carried a bulk IBNR reserve on its book for asbestos covering all unknown exposures (ICSOP Opp. Br. at 22), and it used an IBNR factor for commutation pricing as much as ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*id.*). The critical factual assertion in Argonaut's brief – that the IBNR "on Argonaut's facultative book [was] necessarily inadequate to account for the Kaiser loss" (Argonaut Opp. Br. at 24) – lacks any citation to the record and therefore should be disregarded by the Court. What the record does establish, through Mr. Hollender's deposition testimony, is that Argonaut would not have achieved any better commutation pricing had it received earlier notice from ICSOP about Kaiser. ICSOP Opp. Br. at 21-23.

## CONCLUSION

For the reasons set forth above, the Court should grant ICSOP's motion for partial summary judgment in its entirety, along with such other and further relief deemed necessary and appropriate by the Court.

Dated: June 14, 2013
      New York, New York

                              SIMPSON THACHER & BARTLETT LLP

                              By: /s/ Andrew S. Amer
                                  Andrew S. Amer
                                  Rae C. Adams

                              425 Lexington Avenue
                              New York, N.Y. 10017-3954
                              Telephone: (212) 455-2000
                              Facsimile: (212) 455-2502

                              *Attorneys for Plaintiff The Insurance Company of*
                              *the State of Pennsylvania*